IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

BAYAAN ACADEMY, INC.; ISLAMIC §
SERVICES FOUNDATION; THE EAGLE §
INSTITUTE; LAYLA DAOUDI; MUNA §
HAMADAH; FARHANA QUERISHI, §
§
    *Plaintiffs*, §
§                       CIVIL NO. 4:26-CV-1960
v. §
§
KELLY HANCOCK, in his official §
capacity as Acting Comptroller of Public §
Accounts; THE OFFICE OF THE TEXAS §
COMPTROLLER OF PUBLIC §
ACCOUNTS; MARY KATHERINE §
STOUT, in her official capacity as Program §
Director over the Education Savings §
Accounts Program, §
§
    *Defendants*. §               JURY TRIAL DEMANDED

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THIS COURT:**

COME NOW, Plaintiffs BAYAAN ACADEMY INC., ISLAMIC SERVICES FOUNDATION, THE EAGLE INSTITUTE, LAYLA DAOUDI, MUNA HAMADAH, and FARHANA QUERISHI (collectively, "Plaintiffs"), by and through their undersigned counsel, and file this Original Complaint against (i) KELLY HANCOCK, in his official capacity as the Acting Comptroller of the State of Texas; (ii) MARY KATHERINE STOUT, in her official capacity as Program Director over the Education Savings Accounts Program; and (iii) THE OFFICE OF THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS (collectively, the "Defendants"), and in support thereof respectfully show the Court as follows:

The Constitution does not permit the State to open a public benefit program to private schools and then close the door when Muslim schools seek to enter. Government may not deny a generally available benefit because of a school's religious character, because of the faith it teaches, or because public officials disfavor the religious community seeking equal treatment. That is precisely what Defendants have done here. Plaintiffs do not challenge a neutral rule, a lawful eligibility standard, or a reasoned finding of noncompliance. They challenge religious discrimination: the State's unexplained exclusion of otherwise qualified Islamic schools from a program that remains open to thousands of other private schools, including schools affiliated with other faith traditions.

Texas created the Texas Education Freedom Accounts Program ("TEFA") to give parents the ability to direct their children's education, including by enrolling them in private schools of their choice. The Program's statutory design is simple: when a private school, even a religious one, meets the objective requirements of Texas Education Code Section 29.358(b), the Comptroller **"shall approve"** that school as an education service provider. Criteria to include a school in the TEFA program are faith-neutral, such that religious schools are on equal footing with secular schools. The statute leaves no discretion to deny preapproval once the criteria are satisfied, and it contemplates no waiting period or secondary review at that point, either.

But Defendants have failed to abide by their statutory duty. Defendants have refused to approve Islamic schools for inclusion despite their eligibility. They have removed approved Islamic schools without notice or explanation. Defendants have created a system where Muslim families cannot even select their schools in the application portal, while thousands of non-Islamic private schools remain approved and eligible. The Constitution forbids such denominational line-drawing. A state cannot proclaim equal access in theory while administering exclusion in practice.

Plaintiffs are otherwise qualified Islamic schools and parents who seek to participate in TEFA on the same terms as all other schools and families. What makes the exclusion especially grave is that it is not tied to any adjudicated wrongdoing, any statutory disqualification, or any neutral enforcement process. Defendants have refused to let K through 12 Islamic schools through the door to TEFA participation, while holding the door open to thousands of other similarly situated private schools across Texas. Parent applications are contingent on choosing from a preapproved list. But that list conspicuously omits all eligible K through 12 Islamic schools, including School Plaintiffs. Parents cannot complete applications for Islamic schools absent those schools' presence on the list. When the parent application deadline passes, the exclusion of Islamic schools becomes outcome-determinative for the year.

The injury is immediate and concrete. Parents who seek an Islamic education for their children are forced to choose between their faith and a public benefit that the State offers to others on equal terms. Islamic schools and students are denied the same opportunity afforded to their religious and secular peers. Unless this Court intervenes, the State will cement that discrimination through the Program's deadline and lottery process, keeping Muslim families out of the inaugural year of this general program solely because a public official singled out their faith. That is unconstitutional. The Free Exercise Clause forbids the government from imposing special disabilities on the basis of religious status. The Establishment Clause forbids government hostility and denominational preference. And the Equal Protection Clause forbids singling out one religious community for disfavored treatment under a facially neutral public program.

At stake in this case are bedrock American commitments to religious liberty, equal treatment of all denominations, and civic pluralism. No law-abiding religious community may be stigmatized or sidelined from a generally available program. Plaintiffs seek an injunction from this

Court requiring Defendants to uphold their constitutional obligations. Unless enjoined, the consequence is plain. Because Islamic schools—unlike other religious schools—are excluded from Defendants' preapproved-school list, parents cannot select them, and schools cannot participate. The March 17, 2026 application deadline is being used to cement the exclusion. Because Defendants' refusal to carry out their ministerial duties threatens imminent irreparable harm by foreclosing Islamic schools and Muslim families from participating in TEFA for the program's inaugural year, Plaintiffs respectfully request immediate temporary relief, needed before the program's first set of deadlines on **March 17, 2026**.

## I.    PARTIES

1.    Plaintiff Bayaan Academy Inc. ("Bayaan") is a for-profit corporation organized under Maryland law and registered as a foreign corporation in Texas with a principal place of business in Galveston County. Bayaan may be contacted through undersigned counsel.

2.    Plaintiff Islamic Services Foundation ("ISF") is a non-profit corporation organized under Texas law with a principal place of business in Dallas County. ISF may be contacted through undersigned counsel.

3.    Plaintiff The Eagle Institute d/b/a Excellence Academy ("Excellence Academy") is a non-profit corporation organized under Texas law with a principal place of business in Collin County. Excellence Academy may be contacted through undersigned counsel. Bayaan, ISF, and Excellence Academy are together referred to herein as the "School Plaintiffs."

4.    Plaintiff Layla Daoudi is a natural person and a Texas citizen who resides in Harris County, Texas. She may be contacted through counsel.

5.    Plaintiff Muna Hamadah is a natural person and a Texas resident who resides in Dallas County, Texas. She may be contacted through counsel.

6.      Plaintiff Farhana Querishi is a natural person and a Texas resident who resides in Collin County, Texas. She may be contacted through counsel.

7.      Ms. Daoudi, Ms. Hamadah, and Ms. Querishi are collectively referred to herein as the "Parent Plaintiffs."

8.      Defendant Kelly Hancock is named in his official capacity as the Acting Comptroller of the State of Texas (the "Comptroller") and may be served with process at the LBJ Building, 111 E. 17th Street, Austin, Texas 78774.

9.      Defendant Mary Katherine Stout is named in her official capacity as Program Director over the Education Savings Accounts Program (the "Program Director") and may be served with process at the LBJ Building, 111 E. 17th Street, Austin, Texas 78774.

10.      Defendant Office of the Texas Comptroller of Public Accounts is a Texas agency with its principal office located at the LBJ Building, 111 E. 17th Street, Austin, Texas 78774.

## II.    JURISDICTION AND VENUE

11.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States, including claims brought under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United States Constitution. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4), which confer jurisdiction over civil actions brought to redress the deprivation, under color of state law, of rights secured by the Constitution and federal law and to secure equitable relief under federal civil-rights statutes. Plaintiffs further seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.      Defendants the Comptroller and the Program Director are state officials sued in their official capacities for prospective and injunctive relief to remedy ongoing violations of federal law. Sovereign immunity does not bar Plaintiffs' claims under 42 U.S.C. § 1983 seeking

prospective injunctive, declaratory, and individual capacity relief against the Comptroller or the Program Director in their official capacities. *See Ex parte Young*, 209 U.S. 123 (1908); *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

13.    At all relevant times, Defendants acted under color of state law in administering and implementing the TEFA Program. The Comptroller and the Program Director each have a specific statutory duty to administer, implement, and enforce the Program, including receiving, reviewing, approving, or denying applications for participating schools and administering the Program's funding and participation requirements. Each Defendant therefore has a direct connection to, and responsibility for, the enforcement and administration of the provisions and practices challenged in this lawsuit. Because Plaintiffs seek prospective relief to prevent ongoing violations of federal law in the administration of the Program, these claims fall squarely within the doctrine of *Ex parte Young*.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and resulting injuries giving rise to Plaintiffs' claims occurred in this district. Plaintiff Layla Douadi resides in the Houston Division of the Southern District of Texas and intends to enroll her children at Houston Quran Academy - Katy. Plaintiff Layla Daoudi also intends to use funds from the Texas Education Freedom Account Program to pay for that education if the school is approved to participate in the Program. Defendants' refusal to process or approve Islamic schools prevents Plaintiff Layla Daoudi from using the Program to fund her children's enrollment at the school of her choice and forces Plaintiff Layla Daoudi to choose between forgoing the Program's benefits or abandoning the religious educational option she seeks for her children. The resulting injury is concrete, immediate, and suffered by Plaintiff Layla Daoudi in this district.

15.     Additionally, Plaintiff Bayaan Academy Inc.'s school is based in this district (namely in Galveston County, Texas).

### III.    STATUTORY BACKGROUND

16.     In 2025, the Legislature enacted Senate Bill 2 creating the Education Savings Account Program—also known as Texas Education Freedom Accounts (TEFA)—to expand educational choice for Texas families and to provide public funds for approved education-related expenses for participating children. See Tex. Educ. Code §§ 29.352–.359 (codified from S.B. 2).

17.     The Comptroller must "establish and administer a program to provide funding for approved education-related expenses of children participating in the program." TEX. EDUC. CODE § 29.352(a). The Comptroller must accept parent applications, administer accounts, and preapprove schools as "education service providers." Id. §§ 29.356–.358.

18.     The Comptroller "shall approve" an education service provider if the school: (i) is accredited by an organization recognized by the Texas Private School Accreditation Commission or Texas Education Agency; (ii) if serving grades 3–12, annually administers a nationally norm-referenced assessment or a Chapter 39, subchapter B test; and (iii) has operated at least two school years before seeking approval. TEX. EDUC. CODE § 29.358(b)(2); see also 34 TEX. ADMIN. CODE § 16.404(a). The provider must be in Texas. TEX. EDUC. CODE § 29.358(c). The statutory "shall approve" directive imposes a purely ministerial duty where the criteria are met.

19.     After preapproval, participation continues unless the school no longer meets the requirements or violates the subchapter or other relevant law, in which case the Comptroller may suspend participation, with notice and a 30-day opportunity to respond and take corrective action. TEX. EDUC. CODE §§ 29.358(h), 29.3585(a), 29.3858(c); see also 34 TEX. ADMIN. CODE § 16.405. Preapproval is mandatory when criteria are satisfied; post-approval suspension is the locus for any compliance action.

20.    In September 2026, the Comptroller appointed Mary Katherine Stout as the Program Director over the TEFA Program.

21.    Acting Comptroller Kelly Hancock has emphasized that TEFA is "about empowering families, expanding opportunity and making sure every child can learn in the environment that works best for them."[1]

22.    The Program operates through a limited pool of state funds. If the number of eligible applicants exceeds available Program capacity, the Comptroller must allocate participation through a lottery among eligible applicants, subject to statutory priority categories. *See* TEX. EDUC. CODE § 29.357. Parents seeking to participate in the Program must therefore submit an application identifying the education service provider their child intends to attend.

23.    The statute requires the Comptroller to set the deadline for parents applying to the Program, functionally beginning the Program's generally available public benefit but otherwise does not set any specific requirements about this deadline. TEX. EDUC. CODE § 29.356(a). The Comptroller has announced that the Program will begin operating for the upcoming school year beginning March 17, 2026, at which time parent applications will be processed and participation determined. Schools must be preapproved as education service providers in order for parents to identify and select those schools as part of the Program application process.

24.    Although parents may identify or finalize their child's selected education service provider after participation is awarded, parents must decide now whether to apply for the Program and how to plan their child's education for the upcoming school year. Because Defendants have refused to process or approve the School Plaintiffs' applications, or any applications from other

---

[1]    *See* https://www.texastribune.org/2025/10/06/texas-school-vouchers-odyssey/.

Islamic schools, parents who wish to enroll their children in those Islamic schools reasonably understand that those schools are not available within the Program. As a result, some parents are choosing not to apply for the Program at all, others are altering their enrollment decisions and considering non-Islamic schools that may participate in the Program, and others are being forced to choose between pursuing Islamic education for their children and seeking TEFA funding. When the application window closes, the lottery will be conducted using only the applications already submitted, and families who declined to apply because their preferred Islamic schools were excluded will not be included in the applicant pool. Defendants' actions therefore distort parents' application and enrollment decisions and impose pressure on parents to forgo their preferred religious educational choices in order to participate in the Program.

## IV.    FACTUAL BACKGROUND

### A.    Bayaan Academy

25.     Plaintiff Bayaan Academy Inc. is a for-profit corporation organized under Maryland law, registered to do business in Texas, and managed by a board of directors composed entirely of American citizens who reside in Texas.

26.     Founded in 2017 in Maryland, Bayaan relocated to Texas in 2022. It provides education for grades 3–12 and currently educates approximately 1,200 students.

27.     Among 110 twelfth-grade completers, graduates have attended Columbia, NYU, Illinois Institute of Technology, University of Houston, George Mason, Worcester Polytechnic Institute, and University of Miami; alumni work across many fields.

28.     Bayaan annually administers the nationally recognized DORA (Diagnostic Online Reading Assessment) Test and provides opportunities for civic and community engagement for its students.

29.     Bayaan is accredited by Middle States Association and Cognia, both recognized by the Texas Private School Accreditation Commission, and it has operated for more than two school years.

30.     On or about January 10, 2026, Bayaan submitted a preapproval application through the Comptroller's online Google form that was made available to certain schools for submission. On January 11, 2026, Bayaan's application was marked as approved in Defendants' online portal. Later, a newspaper published a story about most Islamic schools not yet being approved, though it referenced Bayaan as one of the exceptions. On that same day, and without notice, Defendants removed Bayaan as an approved school and blocked Bayaan's access to the portal. Despite multiple inquiries, Bayaan remains excluded from the approved list, and the Comptroller refuses to answer questions about Bayaan's removal.

31.     Bayaan's application provided all requested information and shows compliance with Section 29.358. Neither Bayaan nor its school is owned or controlled by any foreign entity, and it does not raise funds from foreign entities, foreign political organizations, or organizations designated as foreign terrorist organizations. Funding is through tuition and/or capital contributions by its ownership. Plaintiff Bayaan's school exists solely for educational purposes in Texas.

### B.     Islamic Services Foundation, Brighter Horizons, and Little Horizons

32.     Plaintiff Islamic Services Foundation (ISF) is a Texas non-profit corporation governed by a board of directors composed entirely of American citizens who reside in Texas.

33.     ISF operates two accredited private schools: Brighter Horizons Academy (grades 1–12) and Little Horizons Academy (pre-K and kindergarten). Both schools are accredited by organizations recognized by the Texas Private School Accreditation Commission and have been in operation for more than two school years.

34.     Brighter Horizons serves more than 1,000 students, has been recognized as an AP Honor School with a dual-credit partnership with Dallas College, and maintains a 100% graduation rate, with graduates attending universities including Yale, Duke, Rice, MIT, Case Western Reserve, SMU, Baylor, Texas A&M, and UT Austin.

35.     Brighter Horizons annually administers the NWEA MAP Test, a nationally norm-referenced assessment instrument; Little Horizons serves pre-K and kindergarten students. The schools comply with the Education Code's objective criteria and applicable law.

36.     Neither ISF nor its schools are owned or controlled by any foreign entity. They do not raise funds from foreign entities, foreign political organizations, or any organization designated as a foreign terrorist organization. Operations are funded through tuition, grants, and local community donations; all revenue is used for educational purposes (teacher salaries, academics, financial aid, facilities, safety).

37.     ISF's schools exist solely for educational and charitable purposes in Texas.

38.     On December 9, 2025, ISF submitted applications to preapprove both schools. ISF provided all requested information and satisfies § 29.358's criteria.

39.     Despite satisfying the criteria, ISF's schools have not been placed on the preapproved list. ISF has received no notice of deficiency or request for additional documentation. The delay is impairing ISF and its schools' reputations, planning for the 2026–27 year, and enrollment opportunities that cannot be remedied by money damages.

### C.     Plaintiff Excellence Academy

40.     Plaintiff The Eagle Institute d/b/a Excellence Academy is a Texas non-profit corporation governed by a board of directors composed entirely of American citizens who reside in Texas (and one director in the State of Illinois).

41.     Founded in 2008 in Texas, Excellence Academy opened up its school in McKinney, Texas in 2012. It provides education for grades pre-K to 12 and currently educates approximately 150 students.

42.     This year, Excellence Academy will be graduating its first class of seniors. Alumni of the school will attend The University of Texas at Austin and the University of Texas at Dallas, among other higher education institutions.

43.     Excellence Academy has administered (and will administer in the upcoming school year) the IXL LevelUp Diagnostic Test, a nationally norm-referenced assessment instrument. The school provides opportunities for civic and community engagement for its students.

44.     Excellence Academy is accredited by Cognia, which is recognized by the Texas Private School Accreditation Commission, and it has operated for more than two school years.

45.     Excellence Academy exists solely for educational and charitable purposes in Texas.

46.     Despite repeated requests to Defendants and its agent Odyssey, Excellence Academy was not allowed to apply to the TEFA Program or submit its application.

47.     Despite satisfying the criteria for approval, Excellence Academy has not been placed on the preapproved list. Excellence Academy has received no notice of deficiency or request for additional documentation. The delay is impairing Excellence Academy's reputation, planning for the 2026–27 year, and enrollment opportunities that cannot be remedied by money damages.

### D.     Parent Plaintiffs Layla Daoudi, Muna Hamadah, and Farhana Querishi & similarly situated parents

48.     Plaintiff Layla Daoudi is a Texas citizen residing in Harris County. Her children attend Houston Quran Academy - Katy, and she wishes to use TEFA funds at her children's school

for the upcoming academic year. Houston Quran Academy – Katy timely submitted an application to participate in the TEFA program, but its application has not been approved.

49.     Plaintiff Muna Hamadah is a Texas citizen residing in Dallas County. Her children attend ISF's schools, and she wishes to use TEFA funds at her children's schools for the upcoming academic year.

50.     Plaintiff Farhana Querishi is a Texas citizen residing in Collin County. Her children attend Excellence Academy in McKinney, Texas, and she wishes to use TEFA funds at her children's school for the upcoming academic year. Excellence Academy timely requested to apply to participate in the TEFA program, but its application has not been accepted or approved.

51.     Daoudi, Hamadah, and Querishi—and similarly situated parents—depend on the preapproved list to complete the parent application. If a desired school is not selectable, parents cannot submit an application consistent with the Program's design.

52.     Defendants have announced March 17, 2026 as the parent-application deadline. Once that deadline passes, the lottery begins and the applicant pool is fixed. Exclusion of Islamic schools prior to the deadline effectively precludes parents from selecting them for the year.

53.     As a practical matter, families, including the Parent Plaintiffs, who intend to enroll their children in Islamic schools are responding to the State's exclusion of those schools from the approved-provider list by choosing not to apply for the program at all during the current application window. Because the application portal requires parents to identify an approved education service provider when submitting their application, parents who intend for their children to remain at those schools understand that they cannot direct program funds to those schools if they apply. Rather than apply for funding tied to a school their children will not attend, many parents are simply refraining from submitting applications before the deadline.

54.     Parents who intend to keep their children enrolled at Islamic schools are therefore faced with a practical dilemma during the application window. If they submit an application before the March 17 deadline, they must anticipate attending a school from the State's approved-provider list even though they do not intend to enroll their children there. If they decline to apply because their preferred Islamic schools are excluded, their children will not be included in the applicant pool used to allocate TEFA accounts through the statutory lottery.

55.     Those parental decisions directly affect the composition of the applicant pool that will be used to allocate program benefits. Once the application window closes, the State conducts a lottery among the applications that were submitted. Because families intending to enroll their children in Islamic schools are refraining from applying while those schools remain excluded from the approved-provider list, those families will not be included in the lottery. The result is that the pool of applicants from which program participants are selected will already exclude many families who prefer Islamic schools, including the families of the Parent Plaintiffs.

56.     Once the lottery occurs, the program's participants and waiting list for that school year will be fixed based on the applications received during the window. At that point, even if the State later adds or restores Islamic schools to the approved-provider list, the families who declined to apply during the application period because their choice of school was not listed as an approved provider will not be included in the lottery pool and will have effectively lost their opportunity to compete for program funding during that cycle. At that point, even if the State were later to add or restore Islamic schools to the approved-provider list, families who declined to apply during the application window because those schools were excluded would not be included in the lottery pool and would have effectively lost their opportunity to compete for TEFA funding for that school year.

### E.    Defendants' implementation of TEFA and exclusion of Islamic schools

57.    The parent application requires selecting a school from a preapproved drop-down list. Islamic schools—including the School Plaintiffs—do not appear on the list. Thousands of private schools appear online as approved, including hundreds of schools affiliated with other religious traditions,[2] but no K through 12 Islamic schools appear on the list.

58.    Defendants have provided no explanation, no notice of deficiency, and no process for challenging denial or removal (as with Bayaan's unexplained removal). Indeed, ISF has even followed up on the status of its application, including through a letter sent on February 17, 2026, and still received no response. The School Plaintiffs are not listed on any federal or state divestment list. No School Plaintiff has been notified of any deficiency in the information provided; nor have they received any request for additional documentation. This unexplained silence in the face of the School Plaintiffs' repeated efforts to obtain approval, combined with the complete absence of any Islamic school from the Program, supports an inference that the School Plaintiffs have been excluded because of their Islamic religious identity.

59.    The unexplained silence is also damaging School Plaintiffs' reputations, interfering with decision-making for the upcoming school year, and causing immediate loss of enrollment opportunities that cannot be adequately remedied through monetary damages. Defendants' refusal to perform this ministerial duty to approve the School Plaintiffs and other Islamic Schools is also harming the hundreds of Texas families (including the Parent Plaintiffs) who should have their

---

[2] For instance, the TEFA website (Schoolfinder) reflects that, to date, in the Houston and Dallas-Fort Worth areas alone, 128 schools with the word "Christian" in their name and another 67 with the word "Catholic" in their name have been approved for the program.

religious choices and practices respected by the government and who need to know whether their choice to enroll their children in an Islamic school will be honored by Defendants.

60.     While Defendants' silence is formally unexplained, the current posture suggests alignment with recent rhetoric linking all Islamic organizations to "terrorism." In November 2025, the Governor issued public statements announcing that he was "designating" the Council on American-Islamic Relations ("CAIR") as a foreign terrorist organization. Shortly thereafter, the Comptroller asked the Texas Attorney General for guidance on providing funds to (unnamed) schools "with ties to a foreign terrorist organization, a transnational criminal network, or any adversarial foreign government," citing in that same letter the Governor's November 2025 designation of CAIR. The Comptroller subsequently announced in his campaign for re-election that he successfully "excluded schools with terrorist ties from Texas Education Freedom," again citing CAIR, and stated that "[n]o Texas tax dollars will be funneled to bad actors that are hostile to our country, undermine our values, or seek to do us harm." The Comptroller provided no evidence, and cited no finding consistent with due process, that the School Plaintiffs are "hostile to our country, undermine our values, or seek to do us harm." No such evidence or finding exists.

61.     The combined effect is to deny otherwise qualified Islamic schools access to a generally available public program and to prevent parents from choosing those schools, causing immediate and irreparable harm to reputation, enrollment, and the exercise of religious education choices. Parents who seek to enroll their children in Islamic schools are also being denied access to generally available public funds based on their faith-based choices.

62.     Defendants have announced March 17, 2026 as the parent-application deadline. Once that deadline passes, the lottery begins and the applicant pool is fixed. Exclusion of Islamic schools prior to the deadline effectively precludes parents from selecting them for the year and

effectively begins a program that unconstitutionally discriminates against Islamic entities and individuals.

63.     The Defendants' failure to approve the School Plaintiffs' applications (and those of other Islamic schools that meet the objective criteria) is not a mere administrative delay—it is, in practical effect, a denial. The statute imposes no waiting period, no secondary review, and no discretion once the objective criteria are satisfied. A failure to approve that extends past the operative deadline is therefore not mere delay of a pending application. It is completed exclusion accomplished through inaction—inaction that conspicuously targets Islamic schools, but not other faith-based schools.

64.     There is no secular, non-discriminatory criterion that would explain the blanket exclusion of every eligible Islamic school generally, or the School Plaintiffs particularly, while schools of other religious affiliations have been approved through the same process, under the same statutory criteria. This uniform exclusion of schools sharing a single religious identity, and only that identity, is an unconstitutional preference towards non-Islamic religions, standing alone. It further gives rise to a reasonable inference that Defendants' refusal to approve the School Plaintiffs and other Islamic schools is based on their Islamic religious affiliation.

65.     The resulting harm is real and immediate. Private schools compete with one another for the same limited pool of teachers and other educational resources. In that market, teacher compensation represents one of the largest operating expenses for most private schools, including the School Plaintiffs.

66.     When public funding is introduced into a private market, it often affects the price of shared inputs within that market. Schools receiving new public funding can increase salaries, expand facilities, or invest additional resources in their programs. Schools that do not receive the

same funding nevertheless compete in the same labor market for teachers and staff and must respond to those increased costs in order to retain employees.

67.    TEFA will introduce new public funding into the Texas private school market. Schools that participate in the program will receive substantial additional revenue through program accounts used to pay tuition and related educational expenses. Those schools can use that revenue to increase teacher compensation and make other investments designed to attract students and staff. Schools that do not receive TEFA funds, including the School Plaintiffs, will continue to compete with those participating schools for teachers and other personnel in the same labor market.

68.    As a result, increases in teacher compensation or other costs driven by TEFA-funded schools will affect the entire private school market. Schools that do not receive TEFA funding must either increase salaries and operating expenditures without receiving additional revenue or risk losing teachers and staff to schools that do receive those funds.

69.    These effects are already understood by families and school administrators in the private school community. Parents and school officials recognize that TEFA funding will influence tuition levels, teacher compensation, and other costs across the private school market, including at schools that do not receive TEFA funds. Plaintiffs therefore bring this action to remedy Defendants' unlawful refusal to process and approve the School Plaintiffs' applications and the general exclusion of Islamic schools from the Program.

70.    Defendants' conduct violates the constitutional guarantees of religious neutrality, equal treatment, and freedom of worship secured by the First and Fourteenth Amendments to the United States Constitution. By refusing to process or approve the School Plaintiffs' and other Islamic schools' applications while administering a generally available public program, Defendants are discriminating against Islamic schools and the parents who seek to enroll their

children in them on the basis of religion. Defendants' same acts and omissions violate the Religious

Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., by substantially burdening Plaintiffs' free

exercise of their faith, without any justifiable, non-discriminatory reason for doing so.

## V.    CAUSES OF ACTION

### COUNT I
**Violation of the First Amendment to the United States Constitution**
**(42 U.S.C. § 1983 – Free Exercise, Establishment, and Equal Protection)**
**(All Defendants)**

70.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth

herein.

71.    At all relevant times, Defendants acted under color of state law in administering

and implementing the Texas Education Freedom Account Program ("TEFA" or the "Program").

72.    The First Amendment to the United States Constitution, applicable to the States

through the Fourteenth Amendment, prohibits government action that discriminates against

individuals or institutions on the basis of religion and forbids the State from denying generally

available public benefits solely because of a participant's religious status or religious exercise.

73.    The State has created TEFA as a generally available public program through which

eligible schools may be approved to participate and eligible parents may select participating

schools for their children's education.

74.    Under the governing statutory framework, schools that satisfy the statutory

eligibility criteria are entitled to have their applications reviewed and processed in accordance with

the procedures established by law, including notice of any deficiencies and an opportunity to

respond before exclusion from the Program.

75.    The School Plaintiffs, and the additional schools in which the Parent Plaintiffs intend to enroll their children, submitted applications seeking approval to participate in the Program.

76.    Defendants have refused to act on those applications, have failed to provide any notice of alleged deficiencies, and have denied the schools the procedural protections ordinarily afforded to applicants seeking participation in the Program.

77.    At the same time, Defendants have approved or processed applications from other faith-based schools participating in the Program while refusing to process or approve the applications submitted by the School Plaintiffs and other Islamic schools.

78.    By refusing to process or approve schools' applications because the schools provide education grounded in the Islamic faith, Defendants have excluded Plaintiffs from a generally available public benefit on the basis of religion.

79.    The exclusion of the School Plaintiffs from participation in the Program because they provide Islamic religious education constitutes discrimination based on religious status and religious exercise in violation of the Free Exercise Clause of the First Amendment.

80.    When a State provides a generally available public benefit, it may not disqualify otherwise eligible participants because they are religious or because they engage in religious instruction. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017); *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464 (2020); *Carson v. Makin*, 596 U.S. 767 (2022).

81.    Defendants' conduct also violates the Establishment Clause of the First Amendment because it prefers certain religious denominations or secular education over Islamic religious education within a government program.

82.     By allowing participation by non-Islamic schools while refusing to process or approve applications from Islamic schools, Defendants are preferring some religious viewpoints over others and thereby discriminating among religious denominations.

83.     Defendants' actions additionally violate the Equal Protection Clause of the Fourteenth Amendment because Plaintiffs are being treated differently than similarly situated applicants on the basis of religion.

84.     Defendants' refusal to process the School Plaintiffs' applications, refusal to communicate with School Plaintiffs, and failure to provide notice or an opportunity to respond also deprive the School Plaintiffs of a protected entitlement created by state law without due process of law, in violation of the Fourteenth Amendment.

85.     As a direct and proximate result of Defendants' unconstitutional conduct, the School Plaintiffs are being excluded from participation in the Program, and the Parent Plaintiffs are being prevented from selecting otherwise eligible Islamic schools for their children's education.

86.     Defendants' unconstitutional actions are ongoing and will cause immediate and irreparable harm when the Program begins full implementation on March 17, unless enjoined by this Court.

87.     Pursuant to 42 U.S.C. § 1983 and the doctrine of *Ex parte Young*, Plaintiffs seek declaratory and prospective injunctive relief prohibiting Defendants from excluding the School Plaintiffs from participation in the Program or otherwise discriminating against them on the basis of religion.

88.     Plaintiffs therefore request declaratory relief that Defendants' actions violate the First and Fourteenth Amendments to the United States Constitution and request temporary,

preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with those constitutional guarantees.

## COUNT II
### Violation of the Fourteenth Amendment – Procedural Due Process
### (42 U.S.C. § 1983)
### (All Defendants)

89.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

90.    The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law.

91.    The Texas Education Freedom Account Program establishes objective statutory criteria governing the approval of schools as "education service providers." Under the governing statute, the Comptroller must approve an education service provider that satisfies the statutory eligibility requirements.

92.    Because the statutory framework mandates approval when those criteria are met, it creates a legitimate claim of entitlement for schools that satisfy the statutory requirements and apply for participation in the Program.

93.    The School Plaintiffs, and the additional schools in which certain Parent Plaintiffs desire to enroll their children, submitted completed applications seeking approval as education service providers under the Program and satisfied the statutory criteria for approval.

94.    Defendants have refused to process or approve those applications and have failed to provide notice of any alleged deficiency, explanation for the refusal to approve, or opportunity to respond.

95.     By refusing to process or approve the School Plaintiffs' applications and by failing to provide notice and an opportunity to respond, Defendants have deprived Plaintiffs of a protected property interest created by state law without due process of law.

96.     Defendants' actions also deprive the Parent Plaintiffs of the ability to participate in the Program on equal terms by using Program funds for the education of their children at Islamic schools.

97.     Defendants' unconstitutional conduct is ongoing and will continue to deprive Plaintiffs of their due process rights unless enjoined by this Court.

98.     Pursuant to 42 U.S.C. § 1983, Plaintiffs seek declaratory and prospective injunctive relief prohibiting Defendants from refusing to process or approve the School Plaintiffs' applications without providing the procedural protections required by the Fourteenth Amendment.

99.     Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the Due Process Clause of the Fourteenth Amendment.

### COUNT III
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
**(42 U.S.C. § 1983)**
**(All Defendants)**

100.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

101.    The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny any person within its jurisdiction the equal protection of the laws.

102.    Defendants administer the Texas Education Freedom Account Program and are responsible for receiving, reviewing, and approving applications from private schools seeking to participate in the Program as education service providers.

103.    The statutory framework governing the Program establishes objective criteria for approval of private schools seeking to participate as education service providers.

104.    The School Plaintiffs and the additional Islamic schools in which the Parent Plaintiffs intend to enroll their children satisfy the statutory requirements for approval, including accreditation by a recognized accrediting organization, operation for the required period of time, and administration of the required assessments for applicable grade levels.

105.    These schools are therefore similarly situated to other private schools that satisfy the statutory requirements for approval as education service providers under the Program.

106.    Defendants have approved, processed, or otherwise allowed participation by other private schools—including other religious schools—that satisfy the statutory requirements for participation in the Program.

107.    Defendants have refused to process or approve the School Plaintiffs' applications, or the applications of other Islamic Schools in which the Parent Plaintiffs intend to enroll their children, while allowing similarly situated private schools, including other religious schools, to participate in the Program.

108.    Defendants' refusal to approve or process these applications is based on the religious character of the applying schools and the fact that they provide Islamic faith-based education.

109.    By treating Islamic schools differently from other similarly situated private schools seeking participation in the Program, Defendants have created and applied a classification based on religion.

110.    Classifications based on religion are inherently suspect and are subject to the most exacting scrutiny under the Equal Protection Clause. A State may not treat similarly situated

entities differently on the basis of religion unless the classification is narrowly tailored to serve a compelling governmental interest.

111.    Defendants' exclusion of the School Plaintiffs and other Islamic schools from participation in the Program cannot satisfy that constitutional standard. This disparate treatment is not supported by any compelling governmental interest and is not narrowly tailored to serve any legitimate governmental objective.

112.    As a result of Defendants' discriminatory conduct, the School Plaintiffs have been excluded from participation in the Program, and the Parent Plaintiffs have been denied the opportunity to use Program funds for their children's education at Islamic schools.

113.    Defendants' unconstitutional conduct is ongoing and will continue to deny Plaintiffs equal protection of the laws unless enjoined by this Court.

114.    Pursuant to 42 U.S.C. § 1983, Plaintiffs seek declaratory and prospective injunctive relief prohibiting Defendants from discriminating against the School Plaintiffs and the Parent Plaintiffs on the basis of religion in the administration of the Program.

## VI.    REQUESTS FOR TEMPORARY RELIEF (TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION)

115.    The TEFA Program was enacted to expand educational opportunities for Texas families by allowing parents to direct public education funds to schools that meet the Program's statutory requirements. But as the Program approaches its initial implementation, Defendants have refused to process or approve applications submitted by Islamic schools that satisfy every statutory criterion for participation.

116.    This refusal has immediate consequences. Parents who wish to enroll their children in those schools must now decide whether to apply for TEFA benefits while the schools remain excluded from the Program, to abandon the religious educational choices they would otherwise

make for their children, or to forgo applying for the benefits of the Program altogether. As a result, Defendants' conduct is already distorting parental application decisions and pressuring families to choose between accessing a generally available public benefit and pursuing Islamic education for their children.

117.    Without emergency relief, the Program's initial implementation will proceed while Islamic schools remain excluded. Once the March 17, 2026 application deadline passes and participation decisions are made, the effects of Defendants' unlawful exclusion will be fixed in the Program's first year before this Court can determine the legality of Defendants' actions.

118.    The Constitution does not permit the State to administer a generally available public program in a manner that discriminates on the basis of religion or burdens the free exercise of religious belief. Plaintiffs therefore respectfully request that the Court enter a temporary restraining order preserving the status quo until the Court can hear and decide Plaintiffs' request for a preliminary injunction.

119.    Plaintiffs seek a temporary restraining order preventing enforcement of the March 17, 2026 deadline for parent applications and preventing any determinations regarding participation, funding status, or allocation of benefits under TEFA until the Court rules on Plaintiffs' request for a preliminary injunction.

120.    Plaintiffs further seek a preliminary injunction enjoining Defendants from implementing or enforcing the Program—including enforcement of the March 17, 2026 parent application deadline, any determinations regarding participation or funding status, and any allocation or disbursement of Program funds—until this litigation is resolved or until Defendants cease excluding the School Plaintiffs, and the additional Islamic Schools in which the Plaintiff Parents intend to enroll their children, from participation in the Program.

121.   Emergency relief is necessary to prevent the TEFA Program from being implemented in a manner that unlawfully excludes Islamic schools and the families who wish to attend them before this Court can review the legality of Defendants' conduct. Without immediate judicial intervention, the Program's initial implementation will occur while Islamic schools, including the School Plaintiffs and other schools in which the Parent Plaintiffs intend to enroll their children, remain excluded from participation, distorting parental application decisions and imposing ongoing constitutional injury.

### LEGAL STANDARD

122.   The standard for issuing a temporary restraining order is the same as the standard governing preliminary injunctions. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). Under Federal Rule of Civil Procedure 65, a plaintiff must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent relief; (3) that the threatened injury outweighs any harm the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

### PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

123.   Plaintiffs are likely to succeed on the merits because Defendants are administering a generally available public program in a manner that discriminates on the basis of religion and burdens Plaintiffs' free exercise of religion. The School Plaintiffs and the additional Islamic Schools in which the Parent Plaintiffs intend to enroll their children satisfy all statutory requirements for participation in the Program, yet Defendants have refused to process or approve their applications while allowing other schools—including other religious schools—to participate.

124.     By excluding Islamic schools from a generally available public benefit and thereby pressuring parents to abandon their preferred religious educational choices in order to participate in the Program, Defendants are violating the First and Fourteenth Amendments to the United States Constitution and federal law.

### PLAINTIFFS FACE IMMEDIATE AND IRREPARABLE HARM

125.     Plaintiffs will suffer immediate and irreparable harm absent temporary relief. Defendants' refusal to process or approve Islamic schools' applications is already distorting parental decision-making. Parents, including the Parent Plaintiffs, who wish to enroll their children in the Islamic schools, including the School Plaintiffs, are being forced to decide whether to apply for TEFA benefits while those schools remain excluded, or to abandon their preferred religious educational choices in order to pursue Program funding. This irreparably harms Islamic schools' reputation as well. Not to mention, being forced into this quandary against their faith irreparably harms all Plaintiffs' rights under the Constitution.

126.     Once the March 17, 2026 application deadline passes and the Program proceeds to determine participation and allocate benefits, the effects of Defendants' unlawful exclusion will be fixed in the Program's initial implementation. At that point, the constitutional injuries inflicted on Plaintiffs cannot be fully remedied after the fact.

127.     Because the lottery will be conducted using only the applications submitted before the deadline, the exclusion of Islamic schools during the application window is already shaping the composition of the applicant pool. Parents who refrain from applying because their preferred Islamic schools are not listed as approved providers will be excluded from the lottery altogether. Once the lottery occurs, the resulting allocation of TEFA accounts and waiting list for the upcoming school year will be fixed based on that distorted applicant pool.

128.    Violations of constitutional rights—including the free exercise of religion and equal protection of the laws—constitute irreparable injury as a matter of law. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)). The U.S. Supreme Court reiterated this principle just last week. *See Mirabelli v. Bonta*, No. 25A810, 2026 WL 575049, at *3 (U.S. Mar. 2, 2026) (citing *Roman Catholic Diocese*, 592 U.S. at 19) ("The denial of plaintiffs' constitutional rights during the potentially protracted appellate process constitutes irreparable harm.").

### THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR RELIEF

129.    The balance of equities strongly favors temporary relief. Preserving the status quo while this Court considers the legality of Defendants' conduct will impose no meaningful burden on Defendants, especially since the upcoming parent-application deadline is not mandated by law at any specific date. By contrast, allowing the Program to proceed while Islamic schools remain excluded will impose immediate constitutional injury on Plaintiffs.

130.    The public interest likewise favors relief. The public has a strong interest in the neutral administration of generally available public programs and in ensuring that government officials do not discriminate on the basis of religion in the distribution of public benefits.

131.    Plaintiffs are prepared to post security in an amount determined by the Court. Because the requested relief will merely preserve the status quo and will not impose financial harm on Defendants, Plaintiffs respectfully request that the Court set the bond at a nominal amount.

### VII.    JURY DEMAND

132.    Plaintiffs demand a jury on all issues so triable.

## VIII.  CONCLUSION AND REQUESTS FOR RELIEF

133.    For the foregoing reasons, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

### A.  Temporary Relief

1.  Issue a Temporary Restraining Order preventing enforcement of the March 17, 2026 deadline for parent applications and preventing any determinations regarding participation, funding status, or allocation of benefits under the Texas Education Freedom Account Program until the Court rules on Plaintiffs' request for preliminary injunctive relief.

2.  After notice and hearing, issue a Preliminary Injunction requiring Defendants to administer the Program in a manner consistent with the United States Constitution and federal law, including by:

    i.   enjoining enforcement of the March 17, 2026 parent application deadline and any determinations regarding participation, funding status, or allocation or disbursement of Program funds; and

    ii.  prohibiting Defendants from excluding the School Plaintiffs and the additional schools in which the Parent Plaintiffs intend to enroll their children from participation in the Program on the basis of religion, pending final resolution of this litigation.

### B.  Final Relief

1.  After trial on the merits, enter a Declaratory Judgment declaring that Defendants' actions and policies described herein violate the United States Constitution and federal law.

2.  Issue a Permanent Injunction prohibiting Defendants from administering the Texas Education Freedom Account Program in a manner that discriminates on the basis of religion or excludes Islamic schools and Muslim families from participation in the Program on grounds other than those that are statutorily enumerated.

3.  Issue a Permanent Injunction requiring Defendants to process and evaluate the School Plaintiffs' applications for participation in the Program, and the applications of those additional schools in which the Parent Plaintiffs intend to enroll their children, in accordance with the statutory criteria and the procedural protections required by the Due Process Clause of the Fourteenth Amendment.

4.  Declare that Defendants have a mandatory duty under Texas Education Code § 29.358(b) to approve education service providers that satisfy the statutory criteria.

## C. Fees and Costs

1.  Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law.

## D. Other Relief

1.  Grant such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

**Dated:** March 11, 2026.

Respectfully submitted,

**ARAMBULA TERRAZAS PLLC**

1001 S. Capital of Texas Highway, Bldg. L, Suite 250
Austin, Texas 78746
512.904.0200

By:  /s/ *Eric A. Hudson*
Eric A. Hudson
State Bar No. 24059977
Fed. Id. No. 1000759
ehudson@atlawpllc.com
Cole P. Wilson
State Bar No. 24122856
Fed. Id. No. 3864133
cwilson@atlawpllc.com

**Attorney-in Charge**

**WRIGHT, CLOSE, BARGER & GUZMAN LLP**

**By:** /s/ *Maha Ghyas*
Maha Ghyas
State Bar No. 24138115
Fed. Id. No. 3863190
mghyas@wcbglaw.com
Bradley W. Snead
State Bar No. 24049825
Fed. Id. No. 1127744
bsnead@wcbglaw.com
Michael Adams-Hurta
adams-hurta@wcbglaw.com
State Bar No. 24097860
Fed. Id. No. 3290975
One Riverway Dr., Suite 2200
Houston, TX 77056

**ATTORNEYS FOR PLAINTIFFS ISLAMIC
SERVICES FOUNDATION, BAYAAN ACADEMY
INC. AND MUNA HAMADAH**

**EDWARDS SUTARWALLA SAMANI LLP**

*/s/ M.F. Sutarwalla*

By: _____
Murtaza F. Sutarwalla
State Bar No. 24056398
Fed. Id. No. 2589991
Mansoor Broachwala
Illinois State Bar No. 6326633
Fed. Id. No. 3943228
602 Sawyer St., Suite 490
Houston, Texas 77007
Phone: (713) 565-1353
Email: murtaza@esslawpartners.com
Email: mansoor@esslawpartners.com

**LAW OFFICES OF OMAR KHAWAJA PLLC**

By: */s/ Omar Khawaja (with permission)*
Omar Khawaja
State Bar No: 24072181
Fed. Id. No. 3521501
Abdul Rahman Farukhi
State Bar No. 24065220
Fed. Id. No. 3291830
5177 Richmond Ave.
Suite 1065
Houston, Texas 77056
Telephone: (281) 888-2339
Fax: (281) 888-2421
Email: omar@attorneyomar.com
Email: abdul@attorneyomar.com

**ATTORNEYS FOR PLAINTIFFS BAYAAN
ACADEMY INC., THE EAGLE INSTITUTE,
FARHANA QUERISHI, AND LAYLA DAOUDI**

*/s/ Ayesha Najam (with permission)*
Ayesha Najam
Attorney-In-Charge
State Bar No. 24046507
Federal ID: 605948
anajam@gibbsbruns.com

Gibbs & Bruns LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: (713) 650-8805
Fax: (713) 750-0903

OF COUNSEL:

Michael Davis
Federal ID: 3588027
mdavis@gibbsbruns.com
Gibbs & Bruns LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002

**ATTORNEYS FOR PLAINTIFFS THE EAGLE INSTITUTE, FARHANA QUERISHI, AND LAYLA DAOUDI**