IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BAYAAN ACADEMY, INC.; ISLAMIC SERVICES FOUNDATION; THE EAGLE INSTITUTE; LAYLA DAOUDI; MUNA HAMADAH; FARHANA QUERISHI,<br><br>*Plaintiffs*,<br><br>v.<br><br>KELLY HANCOCK, in his official capacity as Acting Comptroller of Public Accounts; THE OFFICE OF THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS; MARY KATHERINE STOUT, in her official capacity as Program Director over the Education Savings Accounts Program,<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § § | CIVIL NO. 4:26-CV-1960<br><br><br><br><br>JURY TRIAL DEMANDED |

## APPLICATION FOR TEMPORARY RESTRAINING ORDER, EXPEDITED HEARING, AND, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION

TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

FACTUAL BACKGROUND ........................................................................................................ 2

    I.    THE TEFA PROGRAM REQUIRES PARENTS TO SELECT AN APPROVED SCHOOL AND ALLOCATES BENEFITS THROUGH A LOTTERY ......................................................................... 2

    II.    THE ISLAMIC SCHOOLS AT ISSUE SATISFY THE STATUTORY CRITERIA FOR TEFA PARTICIPATION ...................................................................................................................... 3

    III.    DEFENDANTS HAVE REFUSED TO APPROVE THE SCHOOLS WITHOUT EXPLANATION OR PROCESS ................................................................................................................................. 4

    IV.    ISLAMIC SCHOOLS ARE ENTIRELY ABSENT FROM THE APPROVED-PROVIDER LIST .... 5

    V.    PARENTS ARE BEING FORCED TO CHOOSE BETWEEN THEIR FAITH AND PROGRAM PARTICIPATION ...................................................................................................................... 6

ARGUMENT AND AUTHORITIES ........................................................................................... 8

    I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS ........................ 8

    A.    DEFENDANTS' EXCLUSION OF ISLAMIC SCHOOLS FROM TEFA VIOLATES THE FREE EXERCISE CLAUSE ................................................................................................................. 8

    B.    THE CONSTITUTION FORBIDS THE STATE'S DENOMINATIONAL DISCRIMINATION ......... 12

    C.    ASSOCIATION-BASED EXCLUSION VIOLATES BASIC CONSTITUTIONAL PRINCIPLES ......... 13

    D.    PLAINTIFFS ARE BEING DENIED THE RIGHT TO COMPETE ON EQUAL TERMS .................... 14

    II.    PLAINTIFFS FACE IMMEDIATE AND IRREPARABLE HARM ................................................. 16

    A.    CONSTITUTIONAL HARM ..................................................................................................... 16

    B.    ECONOMIC HARM ................................................................................................................ 17

    C.    REPUTATIONAL HARM ........................................................................................................ 18

    III.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR RELIEF ........................ 19

    IV.    REQUESTED RELIEF ............................................................................................................. 19

    V.    RULE 65 CERTIFICATION AND SECURITY ......................................................................... 20

PRAYER ...................................................................................................................................... 20

CERTIFICATE OF SERVICE AND CERTIFICATE OF CONFERENCE ...................................... 23

## TABLE OF AUTHORITIES

### Cases

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009) .......................................................... 11

*Carson v. Makin*, 596 U.S. 767 (2022) ............................................................................ 4

*Carson v. Makin*, 596 U.S. 767 (2022) .......................................................................... 13

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ........................ 16

*Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987) .......................................................... 11

*Elrod v. Burns*, 427 U.S. 347 (1976) ...................................................................... 11, 20

*Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020) ...................................................... 4

*Espinoza v. Montana Department of Revenue*, 591 U.S. 464 (2020) .......................................... 13

*Healy v. James*, 408 U.S. 169 (1972) ........................................................................ 17

*Larson v. Valente*, 456 U.S. 228 (1982) ................................................................. 15, 16

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ...................................................... 17

*Northeastern Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656
  (1993) .................................................................................................. 19

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) ................................. 11, 12, 20

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017) .................................. 4

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017) ................................. 13

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ................................................ 11

*Allied Marketing Group, Inc. v. CDL Marketing Inc.*, 878 F.2d 806 (5th Cir. 1989) .................. 23

*Cherkaoui v. Paxton, et al.*, No. 4:26-cv-01675 ....................................................... 25, 27

*Mirabelli v. Bonta*, No. 25A810, 2026 WL 575049 (U.S. Mar. 2, 2026) .................................... 23

*Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012) ............................ 20

*Pfeiffer v. Ajamie PLLC*, 469 F. Supp. 3d 752 (S.D. Tex. 2019) ........................................ 23

*Sherbert v. Verner*, 374 U.S. 398 (1963) .................................................................. 19

*Valley v. Rapides Parish School Board*, 118 F.3d 1047 (5th Cir. 1997) .................................. 23

### Statutes

TEX. EDUC. CODE § 29.356 ..................................................................................... 19

TEX. EDUC. CODE § 29.357 ............................................................................... 6, 12, 19

TEX. EDUC. CODE § 29.358(b) ............................................................................. 7, 8, 14

TEX. EDUC. CODE § 29.358(b)(2)(A) ........................................................................ 7, 8

iii

TEX. EDUC. CODE §§ 29.352–.359 ................................................................................. 6

TEX. EDUC. CODE §§ 29.356–.357 .................................................................. 10, 12, 14, 20

## INTRODUCTION

When a State makes a public benefit available to private schools, it cannot exclude participants because of their religion. The Supreme Court has said so repeatedly. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017); *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020); *Carson v. Makin*, 596 U.S. 767 (2022). But Texas administers its Texas Education Freedom Accounts Program ("TEFA") in a manner that allows many religious schools to participate while Islamic schools remain absent from the approved-provider list.

Plaintiffs' schools satisfy the statutory criteria to participate. They are accredited, administer nationally norm-referenced academic assessments, and have operated for decades. Yet Defendants refuse to approve any Islamic schools while approving numerous other religious schools and without identifying any statutory deficiency in Plaintiffs' applications.

That exclusion is already distorting the operation of the program. TEFA distributes limited education accounts through a lottery among parents who apply before the March 17 deadline. Because Islamic schools do not appear on the approved-provider list, many Muslim families who intend to keep their children enrolled in those schools are declining to apply rather than submit applications that do not reflect their children's actual schools. When the application window closes, those families will be excluded from the pool of applicants eligible to compete for TEFA accounts during the program's inaugural year.

The Constitution does not permit a public program that welcomes religious participation generally while excluding one faith from the competition for benefits. Plaintiffs are therefore likely to succeed on the merits of their Free Exercise and Equal Protection claims. They face immediate and irreparable harm because the March 17 application deadline functionally denies Islamic schools' applications and will permanently exclude many Muslim families from the program's lottery pool. The loss of First Amendment freedoms—even briefly—constitutes irreparable injury.

The balance of equities and the public interest likewise favor relief because ensuring religious neutrality imposes little burden on Defendants while preventing ongoing constitutional injury.

A temporary restraining order is therefore necessary to preserve the status quo until the Court can consider Plaintiffs' request for preliminary injunctive relief.

FACTUAL BACKGROUND

### I.    The TEFA Program Requires Parents to Select an Approved School and Allocates Benefits Through a Lottery

The Texas Education Freedom Accounts ("TEFA") Program provides public funds that parents may use to pay for private school tuition and other educational expenses. *See* TEX. EDUC. CODE §§ 29.352–.359. Participation is limited by available funding. If the number of eligible applicants exceeds program capacity, the State allocates accounts through a lottery among parents who submit applications during the application window. TEX. EDUC. CODE § 29.357.

Parents are not required to select a school when they initially submit a TEFA application. But Muslim parents who intend to keep their children enrolled in Islamic schools currently have no way to accurately reflect that educational choice because not a single K to 12 Islamic school appears on the Comptroller's approved-provider list. Ex. A (Balkhi Decl.) ¶¶ 21–25; Ex. B (Aljumaily Decl.) ¶¶ 14–18; Ex. C (Sayed Decl.) ¶¶ 10–14; Ex. D (Hamadah Decl.) ¶¶ 9–14; Ex. E (Daoudi Decl.) ¶¶ 12–13, 16; Ex. F (Querishi Decl.) ¶¶ 11–13; Ex. G (Khatib Decl.) ¶¶ 8–10, 15–17; Ex. R (Ghazali Decl.) ¶¶ 18–20..

The State has announced that the deadline for submitting parent applications for the upcoming school year is March 17, 2026. *See* Texas Education Freedom Accounts, *Applications Now Open*, https://educationfreedom.texas.gov/ (last visited Mar. 11, 2026). Once the application window closes, the State conducts a lottery among the submitted applications to determine which families receive accounts and establishes a waiting list for remaining applicants. *Id.*

2

Although parents are not required to select a school when submitting a TEFA application, the portal allows parents to identify a school only from the Comptroller's list of approved providers. As a result, parents who intend to keep their children enrolled in schools that do not appear on that list cannot reflect their intended school in the application system. The practical effect is straightforward: when a school is excluded from the approved-provider list, families intending to enroll their children in that school are effectively excluded from the applicant pool.

## II. The Islamic Schools at Issue Satisfy the Statutory Criteria for TEFA Participation

*Plaintiff Islamic Services Foundation ("ISF")*: ISF operates two accredited private schools in Texas: Brighter Horizons Academy ("BHA"), which serves students in grades 1 through 12, and Little Horizons Academy ("LHA"), which serves pre-kindergarten and kindergarten students. Ex. B ¶¶ 3–5; Ex. H (Kayed Decl.) ¶¶ 3, 16; Ex. I (Campbell Letter) at 1–2. Both schools satisfy the statutory criteria required for participation in the TEFA program. Both schools are accredited by Cognia, an accrediting organization recognized by the Texas Private School Accreditation Commission that satisfies the statutory accreditation requirement for participation in the TEFA program. Ex. B ¶¶ 11–12; Ex. I at 2–3; TEX. EDUC. CODE § 29.358(b)(2)(A). BHA has operated in Texas since 1989 and currently serves more than one thousand students, while LHA provides early-childhood education as part of the same educational program. Ex. B ¶¶ 4–5; Ex. I at 1–2; Ex. H ¶ 16. BHA annually administers the NWEA MAP Growth assessment, a nationally norm-referenced academic test used to measure student achievement and academic growth. Ex. B ¶ 4; Ex. H ¶ 15. LHA serves pre-kindergarten and kindergarten students and operates as part of the same educational program. Ex. I at 1–2.

*Plaintiff Bayaan Academy ("Bayaan"):* Bayaan is a private accredited online school based in League City, Texas providing instruction for students in grades 3–12, with a current enrollment

3

of approximately 1,200 students. Ex. A ¶¶ 4, 6, 9. Bayaan also satisfies the statutory criteria required for TEFA participation. The school has continuously operated a campus in Texas for over three years, *id*. ¶¶ 5–6; it annually administers the DORA test, a nationally norm-referenced assessment, *id*. ¶ 7; and is accredited by the Middle States Association and Cognia, both accrediting organizations recognized by the Texas Private School Accreditation Commission, *id.* ¶ 10; TEX. EDUC. CODE § 29.358(b)(2)(A).

*Plaintiff The Eagle Institute, d/b/a Excellence Academy ("Excellence"):* Excellence operates an accredited Montessori school in Texas, currently serving 124 students in grades pre-kindergarten through 12. Ex. F ¶¶ 3, 6. Excellence satisfies the statutory criteria required for participation in the TEFA program. It is accredited by Cognia, *id.* ¶ 8; the school has operated continuously in Texas since 2012, *id*. ¶ 6; and it annually administers the IXL LevelUp Diagnostic test, a nationally norm-referenced assessment, *id.* ¶ 8.

The statute provides that the Comptroller **"shall approve"** an education service provider that satisfies the statutory criteria. TEX. EDUC. CODE § 29.358(b). As a result, once those criteria are met, approval is a ministerial duty.

### III.   Defendants Have Refused to Approve the Schools Without Explanation or Process

On December 9, 2025, ISF submitted TEFA applications for both BHA and LHA through the program's online system. Ex. B ¶ 6; Ex. H ¶ 4. Odyssey—the private vendor contracted by the State to administer portions of the program—confirmed receipt of the applications and informed the schools that further instructions would follow. Ex. J (Odyssey Email (Dec. 9, 2025)). In January 2026, Odyssey informed ISF's schools that their applications were subject to a "temporary review" and that further application links were being withheld pending completion of that review. Ex. K (Odyssey Email (Jan. 26, 2026)). Odyssey later advised that "direct approval from the Texas

Comptroller's Office" was required before the schools could proceed. Ex. L (Odyssey Email (Jan. 29, 2026)). Despite repeated inquiries from the schools and their representatives, Defendants never identified any statutory deficiency, requested additional documentation, or issued a decision on the applications. Ex. B ¶¶ 6–9; Ex. H ¶¶ 11–13; Ex. R ¶¶ 16-17..

Pursuant to the TEFA requirements for education providers seeking participation, Excellence Academy should have received a registration invite email from Odyssey but never received such email, despite meeting all statutory requirements. Ex. F ¶ 9. In late December 2025, the school emailed the Comptroller's office, Odyssey, TEA and Cognia requesting a registration invitation link, to which Odyssey soon responded that such links were pending completion of a "temporary review." *Id.* Despite repeat inquiries, to date, Excellence has heard no response or update, and it has not been granted access to participate in the TEFA program. *Id*. ¶¶ 9–10. The school has not received any information from Odyssey or otherwise been provided a reason why its application has not been granted, nor has the school been asked to provide any additional information or documentation. *Id*. ¶ 10.

Bayaan's experience was different, but the result is the same. It was initially listed as approved in the program's online system but was later removed after the Comptroller instructed Odyssey to disable the school "pending further review." Ex. M (Odyssey Email (Feb. 19, 2026)); Ex. A ¶¶ 12–13. Bayaan's unexplained and unnoticed removal came immediately after a newspaper story wrote that it had been approved, even as other Islamic schools had not.[1]

## IV.    Islamic Schools Are Entirely Absent From the Approved-Provider List

The current TEFA approved-provider list includes numerous private schools affiliated with

---

[1] https://www.houstonchronicle.com/politics/texas/article/private-school-voucher-islamic-schools-21332095.php

other religious traditions. For example, the State's TEFA school search portal lists large numbers of Christian and Catholic schools as approved education service providers.[2] But Islamic schools' administrators have confirmed that **no K–12 Islamic schools appear on the approved-provider list**, despite meeting the statutory criteria. Ex. B ¶¶ 14–17; Ex. F ¶ 11; Ex. A. ¶ 18; Ex. R ¶¶ 18–20. Parents have reached the same conclusion. Ex. C ¶¶ 10–11; Ex. E ¶ 13; Ex. G ¶¶ 13-14.

## V.   Parents Are Being Forced to Choose Between Their Faith and Program Participation

The current exclusion of Islamic schools from the approved-provider list has immediate consequences for Muslim families. Although parents are not required to select a school when submitting a TEFA application, Muslim parents who wish to enroll their children in Islamic schools cannot submit TEFA applications that accurately reflect their educational choices because those schools do not appear as selectable providers in the application portal. Ex. A ¶ 22; Ex. G ¶¶ 8–26; Ex. E ¶¶ 12, 15–16, 19; Ex. F ¶¶ 11–13. As a result, families face a dilemma: whether to apply for the program, Ex. C ¶¶ 13–16, or to forego the application to avoid the risk of being awarded funds that can only be used at a different, non-Islamic school, Khatib Decl. ¶¶ 14–26 .

Once the application deadline passes and the State conducts the statutory lottery, the applicant pool is fixed for the program year and participation is determined from among the applications submitted during that window. *See* TEX. EDUC. CODE §§ 29.356–.357; Compl. ¶¶ 52–56, ECF No. 1. Families who decline to apply because their preferred Islamic schools are excluded from the approved-provider list will therefore be absent from the lottery pool entirely and will have no opportunity to compete for TEFA accounts during the inaugural cycle. *Id*.; Ex. D ¶¶ 14–18; Ex.

---

[2] https://finder.educationfreedom.texas.gov/?_gl=1*16de1xd*_ga*MTY2OTAxOTE4NC4xNzcz MzIzMDc5*_ga_LZEHWSYNG9*czE3NzMzMjMwNzgkbzEkZzAkdDE3NzMzMjMwNzgkaj YwJGwwJGgw*_gcl_au*MTMyMjEwNDg3NC4xNzczMzIzMDc5

C ¶¶ 14–20; Ex. N (Almasri Decl.) ¶¶ 10–16; Ex. B ¶¶ 21, 25–26; Ex. A ¶¶ 22–25. Even if Islamic schools are later approved, those families will remain outside the lottery pool and their exclusion cannot be undone. *Id*. Because the denial of First Amendment rights "for even minimal periods of time" constitutes irreparable injury, the exclusion of Muslim families from the program's lottery pool inflicts a constitutional harm that cannot be remedied after the fact. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020).

The injury is structural: by excluding Islamic schools from the program before the application deadline, Defendants have reshaped the composition of the applicant pool itself, ensuring that families who seek Islamic education are excluded from the competition for benefits before the lottery is ever conducted. The Program will effectively begin with Islamic education excluded. The injury is also the point.  In a public statement on X after learning that Islamic schools had been excluded from participating in TEFA based on denominational status, Governor Greg Abbott doubled down on the State's unlawful, discriminatory exclusion. *See* Ex. Q (Abbott Post on X, Mar. 12, 2026) (responding to a Washington Post article identifying the religious exclusion with the statement, 'That's right.').[3]

## LEGAL STANDARD

A temporary restraining order is governed by the same standard as a preliminary injunction. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). A plaintiff must show (1) a substantial likelihood of success on the merits, (2) irreparable harm absent relief, (3) that the balance of equities favors relief, and (4) that an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Because the loss of First Amendment freedoms "for even minimal periods of time" constitutes

---

[3] https://x.com/GregAbbott_TX/status/2032175450156605810

7

irreparable injury, temporary relief is appropriate where constitutional rights are threatened before the Court can consider preliminary relief. *at*; *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020).

### ARGUMENT AND AUTHORITIES

I.  Plaintiffs Are Likely To Succeed On The Merits of Their Claims

The State has created a public benefit program that distributes limited educational funding through a lottery among parents who apply before a fixed deadline. TEX. EDUC. CODE § 29.357. But in administering that program, Defendants have excluded Islamic schools from participation while approving other religious schools that meet the same statutory criteria. The result is not merely unequal treatment of schools; it is the systematic exclusion of Muslim families from the program's benefit-allocation process.

Parents seeking to participate in TEFA must apply before March 17. TEX. EDUC. CODE §§ 29.356–.357. Once the application window closes, the State conducts a lottery among those applicants and fixes the pool of program participants for the school year. *Id*. Because Islamic schools do not appear on the approved-provider list, parents who intend to keep their children enrolled in those schools cannot apply on equal terms. Many families are therefore declining to apply at all rather than apply for funding tied to schools their children will not attend.

The consequence is predictable. By the time the lottery occurs, the applicant pool will already exclude many Muslim families who would otherwise apply if Islamic schools were permitted to participate. The State has therefore structured the program so that the exclusion of Islamic schools becomes the exclusion of Muslim families from the competition for benefits. That result violates multiple constitutional guarantees.

A.  Defendants' Exclusion of Islamic Schools from TEFA Violates the Free Exercise Clause

8

The Free Exercise Clause forbids the government from denying a public benefit because of religion. Once a State opens a public program to private participants, it may not exclude institutions because they are religious or because they provide religious instruction.

A State violates the Free Exercise Clause when it excludes a religious institution from a generally available public benefit "solely because it is a church." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 460–61 (2017). Such discrimination is not a minor defect in administration. It is a constitutional injury because it forces a religious institution to choose between participation in a public program and adherence to its faith. *Id*. at 462. Once a State elects to subsidize private education, it "cannot disqualify some private schools solely because they are religious." *Espinoza v. Montana Department of Revenue*, 591 U.S. 464, 486 (2020). A rule that excludes religious participants from public benefits "penalizes the free exercise of religion." *Id*. at 484. That prohibition extends to discrimination based on religious use as well as religious status. *Carson v. Makin*, 596 U.S. 767, 781–82 (2022). When a State allows parents to direct public funds to private schools, it may not exclude schools that provide religious instruction while permitting secular or other religious schools to participate. *Id*. at 786.

Taken together, these decisions establish a simple and controlling rule. Once a State creates a generally available public benefit program open to private institutions, it cannot exclude participants because of their religion.

That is precisely what has occurred here. Plaintiffs' schools satisfy the statutory requirements for participation in the TEFA program. All of them are accredited by at least Cognia; BHA, Excellence, and Bayaan administer a nationally norm-referenced assessment; and all have continuously operated a campus for the period required by statute. *See* TEX. EDUC. CODE § 29.358(b)(2). Yet Defendants have refused to approve those schools while approving other

9

schools that meet the same criteria. Ex. H ¶¶ 4–13; Ex. B ¶¶ 6–9, 14–17; Ex. A ¶¶ 18–21.

The disparity is unmistakable. The State's approved-provider list includes numerous schools affiliated with other faith traditions, including Christian schools and other faith-based institutions. Islamic schools do not appear on that list. Nor have Defendants identified any neutral eligibility defect that would explain that result. To the contrary, the record shows repeated applications, repeated follow-up inquiries, and repeated silence. Ex. B ¶¶ 6–9; Ex. H ¶¶ 4–13; Ex. I at 3–4; Ex. A ¶¶ 11–17, 32; Ex. F ¶¶ 9–10.

This exclusion does not stop with the schools. TEFA distributes a limited number of accounts through a lottery among parents who apply before the March 17 deadline. *See* TEX. EDUC. CODE §§ 29.356–.357; Ex. B ¶ 19; Ex. A ¶ 25; Ex. D ¶¶ 12–13. Because Islamic schools are excluded from the approved-provider list, Muslim parents who intend to keep their children in those schools cannot apply on equal terms. Ex. A ¶ 22; Ex. B ¶ 18. Many families are thus declining to apply at all rather than submit applications tied to schools their children will not attend. Ex. B ¶¶ 21, 25–26, 34; Ex. D ¶¶ 14, 17–18, 21–24; Ex. C ¶¶ 14–20; Ex. N ¶¶ 10–16, 18–20; Ex. G ¶¶ 8, 10, 16–17, 22–26.

That consequence is neither accidental nor abstract. It is the predictable operation of a practice that conditions access to a public benefit on the abandonment of a religious educational choice. The State has structured TEFA so that the exclusion of Islamic schools becomes the exclusion of Muslim families from the lottery itself. Families who remain faithful to their choice of Islamic education are pushed out of the competition for benefits before the drawing ever occurs. The Free Exercise Clause does not tolerate that kind of religious penalty. *See Trinity Lutheran*, 582 U.S. at 462; *Espinoza*, 591 U.S. at 484; *Carson*, 596 U.S. at 785–86.

Nor is this a case about a neutral rule applied evenhandedly. It is about a State that opened

a public program to religious participation, approved schools affiliated with favored faiths, and then closed the door when Islamic schools sought the same treatment. The Constitution does not permit a public benefit program that is open to religion generally but closed to a particular faith.

The record contains no neutral explanation for the exclusion. Instead, the available evidence suggests that the exclusion reflects animus directed specifically at Islamic institutions. In December 2025, the Acting Comptroller wrote to the Attorney General seeking guidance about whether schools could be disqualified from TEFA based on "affiliation," "shared facility use," or "organized association" with entities that state officials had linked, without process, to terrorism. Ex. O (Letter from K. Hancock to K. Paxton (Dec. 12, 2025). That request did not identify any statutory eligibility deficiency in the Plaintiff schools and did not cite any adjudicated wrongdoing. Rather, it proposed exclusion based simply on association based on religious belief.

Against that backdrop, the result is stark. The State's approved-provider list includes numerous schools affiliated with other religious traditions, including Christian and Catholic institutions. Islamic schools do not appear on that list. When government approves schools affiliated with some religions but excludes those affiliated with another, the inference of denominational discrimination is unavoidable. *See Larson v. Valente*, 456 U.S. 228, 244 (1982).

Defendants' exclusion of Islamic schools has not gone unnoticed. Members of the Texas Legislature warned the Comptroller that the "current delay or exclusion of" accredited Muslim private schools from the TEFA program raised "profound constitutional concerns." Ex. P (Letter from Members of Tex. House and Senate to K. Hancock (Feb. 19, 2026)) at 1. Legislators further noted reports that Muslim schools had been "denied or removed from TEFA eligibility despite having no affiliation with CAIR or any designated organization," and cautioned that categorical exclusion or "association-based screening" would risk violating the First Amendment and the

11

Supreme Court's decision in *Carson v. Makin*. *Id*. at 1–2. These warnings reinforce what this record already demonstrates. The exclusion of Islamic schools was not the product of neutral statutory criteria. It reflects a pattern of religious gatekeeping incompatible with the Constitution. The Free Exercise Clause forbids that discrimination. It cannot stand.

B.  The Constitution Forbids the State's Denominational Discrimination

The Constitution forbids the State from preferring one religious denomination over another. The Supreme Court has repeatedly emphasized that "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). When government action draws distinctions among religions, it is presumptively invalid and must withstand the most exacting judicial review. *Id.* at 246–47. Such denominational discrimination is suspect and can survive only if it is narrowly tailored to serve a compelling governmental interest. *Id.*; *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532–33 (1993) (laws targeting particular religions are subject to strict scrutiny).

That rule governs here. The TEFA program permits parents to direct public funds to private schools, including religious schools. But the State has approved numerous schools affiliated with other faith traditions while excluding Islamic schools from participation altogether. The approved-provider list includes large numbers of Christian and Catholic schools, yet no K–12 Islamic schools appear on that list. A program that welcomes Christian and other faith-based schools while excluding Islamic schools is the very definition of denominational discrimination.

Nor can the disparity be explained by neutral eligibility criteria. Plaintiffs' schools satisfy the statutory requirements for participation in TEFA. Despite meeting those objective criteria, Defendants have refused to approve Plaintiffs' schools while approving other religious schools

12

that meet the same standards. The inference of denominational preference is therefore unavoidable. When the government approves schools affiliated with some religions but excludes those affiliated with another, the Constitution demands strict scrutiny. *See Larson*, 456 U.S. at 246; *Lukumi*, 508 U.S. at 532–33. Defendants cannot satisfy that demanding standard. They have identified no compelling governmental interest, and certainly none that would justify a categorical exclusion of Islamic schools from a public program open to other religious institutions.

C.  Association-based exclusion violates basic constitutional principles

The record also indicates that Defendants' actions may rest on an impermissible theory of guilt by association. The Acting Comptroller's December 2025 request seeking clarification from the Texas Attorney General did not identify any statutory deficiency in the Plaintiff schools' applications or identify any adjudicated misconduct by those schools. Instead, it raised the possibility that schools might be excluded from a public program based on associations with organizations connected to the broader Islamic community.

That reasoning runs headlong into well-established constitutional limits. The Supreme Court has consistently rejected government attempts to impose penalties based solely on association with disfavored groups. In *NAACP v. Claiborne Hardware Co.*, the Court held that liability cannot be imposed merely because an individual or entity is associated with others unless there is proof that the defendant specifically intended to further unlawful conduct. 458 U.S. 886, 918 (1982). Likewise, in *Healy v. James*, the Court held that "guilt by association alone" is an impermissible basis on which to deny First Amendment rights. 408 U.S. 169, 186 (1972). The Constitution protects not only freedom of speech but also the freedom to associate with others to advance shared beliefs. *Id*.; *Claiborne Hardware*, 458 U.S. at 907–08.

*Healy* is particularly instructive. There, a state college denied recognition to a student

13

organization because of concerns about its association with a controversial national group. The Supreme Court reversed, explaining that denial of recognition burdens the right of association and cannot rest on speculation or generalized fears about an organization's affiliations. 408 U.S. at 181–84. Once an organization has applied for recognition in accordance with the governing rules, the burden rests on the government to justify its refusal to grant recognition. *Id*. at 184. A denial based on mere association with an unpopular organization violates the First Amendment. *Id*. at 186. The same principle applies here. Plaintiffs' schools have satisfied the statutory eligibility criteria for participation in the TEFA program, yet Defendants have not identified any statutory violation, regulatory deficiency, or unlawful conduct that would justify denying approval. Instead, the only articulated concern is whether schools might have associations with organizations that some officials have criticized.

The First Amendment does not permit such exclusion of otherwise eligible participants from a public program based on speculation about their associations. Nor does it permit the State to treat religious schools as suspect simply because they belong to a religious community that officials view with suspicion. As the Supreme Court has repeatedly explained, the Constitution protects the right to associate freely, and the government may not deny rights or privileges solely because of a citizen's association with an unpopular organization. *Healy*, 408 U.S. at 186. This guilt-by-association reasoning reflected in the Comptroller's request therefore cannot justify the exclusion of Plaintiffs' schools from the TEFA program.

D. Plaintiffs are being denied the right to compete on equal terms

Independent of the Free Exercise violation, Defendants' actions deny Plaintiffs the equal opportunity to compete for a public benefit. When the government establishes a competitive process for allocating benefits, a constitutional injury occurs when participants are prevented from

14

competing on equal terms. *Northeastern Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993). A plaintiff "need not allege that he would have obtained the benefit but for the barrier," because the denial of equal competition constitutes the injury. *Id.*

TEFA distributes a limited number of education accounts through a lottery among parents who apply during the program's application window. TEX. EDUC. CODE § 29.357. Parents submitting an application must identify the education service provider their child intends to attend, and the application portal requires parents to select that school from the State's approved-provider list. TEX. EDUC. CODE § 29.356; Ex. A ¶ 22.Parents who wish to enroll their children in Islamic schools cannot participate in that lottery on equal terms because those schools do not appear on the State's approved-provider list. As a result, Muslim families face a forced choice: apply for funding tied to schools their children will not attend or decline to apply for the program altogether. Many families have chosen the latter and are refraining from entering the lottery rather than submit applications that do not reflect their children's schools.

The Constitution does not permit the government to impose such a choice. The Supreme Court has repeatedly held that the Free Exercise Clause is violated when participation in a public program is conditioned on abandoning religious practice. *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). Likewise, denying participation in a generally available public benefit because of religion "penalizes the free exercise of religion." *Espinoza*, 591 U.S. at 484. And when the State excludes religious institutions from a public program, it places them "to the choice between being a church and receiving a government benefit." *Trinity Lutheran Church of Columbia, Inc.*, 582 U.S. at 462.

That is precisely what has occurred here. By excluding Islamic schools from TEFA while approving other religious schools that satisfy the same statutory criteria, Defendants have structured the program so that Muslim families cannot compete for benefits without abandoning

15

their religious educational commitments. Because TEFA allocates accounts through a lottery among parents who apply during the application window, the exclusion of Islamic schools necessarily excludes many Muslim families from the lottery pool before it is even drawn. Unequal access to a government program's competitive process is itself a constitutional injury. *Northeastern Fla.*, 508 U.S. at 666. By preventing families seeking Islamic education from competing for TEFA funding on equal terms, Defendants have erected precisely such a barrier. The Constitution does not permit the State to operate a public program that welcomes religious participation generally while excluding one faith from the competition for benefits.

## II.    Plaintiffs Face Immediate And Irreparable Harm

### A. Constitutional Harm

Violations of First Amendment rights constitute irreparable injury as a matter of law. The Supreme Court has long held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020). The Fifth Circuit follows the same rule because constitutional injuries cannot be adequately remedied after the fact. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012).

That principle applies with particular force here. The TEFA program distributes limited education accounts through a lottery among parents who submit applications before the March 17, 2026 deadline. TEX. EDUC. CODE §§ 29.356–.357. Because Islamic schools do not appear on the State's approved-provider list, many Muslim families who intend to keep their children enrolled in those schools are declining to apply rather than submit applications that do not reflect their educational choices. Ex. B ¶¶ 21, 25–26, 34; Ex. D ¶¶ 14–18; Ex. C ¶¶ 14–20; Ex. N ¶¶ 10–16, 18-20.

16

Once the application window closes, the composition of the applicant pool will be fixed and the State will allocate TEFA accounts through a lottery among those submitted applications. Families who refrained from applying because their schools were excluded will not appear in that pool and will have no opportunity to compete for program participation during the inaugural year. Islamic schools' applications will have been functionally denied, and the TEFA Program will begin without their presence. Even if Islamic schools are later approved, the composition of the lottery pool cannot be retroactively reconstructed. The resulting constitutional injury therefore occurs during the application window itself and cannot be remedied after the fact.

Because the State's administration of TEFA is already forcing Muslim families to choose between participating in a public program and staying faithful to their religious educational beliefs, the injury is immediate and irreparable. Temporary relief is necessary to preserve Plaintiffs' ability to compete for program benefits before the Court can resolve constitutional merits.

**B. Economic Harm**

The financial harm to the Plaintiff schools from the ongoing absence from the list of approved ESA providers is immediate and irreparable. Enrollment decisions made during the TEFA application period affect student placement, staffing decisions, classroom planning, and financial projections for the upcoming school year. Ex. F ¶ 23; Ex. A ¶ 29. Parents are uncertain on whether they should apply for TEFA funding given that their chosen Islamic schools are not on the approved list, and/or are not submitting TEFA applications based on these exclusions. Ex. C ¶¶ 13–16; Ex. G ¶¶ 8, 14–26; Ex. B ¶ 25.

Not only does this uncertainty threaten reduced enrollment at Plaintiffs' schools, Ex. A ¶¶ 26–27, it sets the schools on an alternate financial path for purposes of academic planning that cannot be walked back. Ex. F ¶¶ 20–24; Ex. B ¶¶ 28–33; Ex. A ¶¶ 26–27, 29. The Plaintiffs'

17

schools' absence from the list of providers has resulted in parents not applying to the TEFA program, causing the schools to miss out on anticipated funds on which they were relying, causing them to fall behind other private (non-Islamic) schools whose students will receive ESA assistance and can thus plan to charge higher tuition, pay teachers higher salaries, hire more qualified teachers and provide additional services they would otherwise not be providing. *Id*. If families decide not to apply for TEFA funds or choose to enroll their children in other schools because Islamic Schools are not listed as approved providers, the school's financial decisions (e.g., foregoing hiring new teachers or offering higher salaries) cannot be reversed later in the year. Ex. F ¶¶ 20–23. Because parents seek to minimize switching between schools, it would be difficult for the Plaintiff Schools to gain students back even if they are later approved (outside the current TEFA window). *Id*. ¶ 23.

### C. Reputational Harm

The omission of the Plaintiffs' schools from TEFA's approved list also threatens irreparable reputational harm. Families of enrolled and potential students are likely to assume (and some have assumed) that the schools failed to meet eligibility requirements or were otherwise denied on the schools' merits, threatening the schools' reputations. Ex. A ¶ 28; Ex. B ¶¶ 23–24; Ex. F ¶¶ 24–25. The schools have already received several inquiries and criticisms regarding whether they have been approved, and if not, why not—and expressed concerns regarding the schools' ability to function, going forward, absent TEFA participation. Ex. A ¶ 26; Ex. B ¶¶ 25–26, 32. While it is apparent that the exclusion is based on the schools' faith, Defendants have not explicitly provided any specific explanations to the schools that can be passed onto the parents.

This kind of reputational injury satisfies the irreparable harm requirement for the entry of temporary injunctive relief. *See Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1056 (5th Cir. 1997) ("the threat of injury to [an employee's] reputation and her ability to procure comparable

18

employment" was "sufficient to satisfy irreparable injury"); *Allied Marketing Group, Inc. v. CDL Marketing Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989) ("the damage to the goodwill of [the corporation's] customers" satisfied the irreparable harm prong); *Pfeiffer v. Ajamie PLLC*, 469 F. Supp. 3d 752, 764 (S.D. Tex. 2019) ("The loss of reputation, goodwill, and clients that [law firm] and [law partner] himself may face further establishes irreparable harm.").

## III.   The Balance of Equities and the Public Interest Favor Relief

The balance of equities and the public interest strongly favor temporary relief. Plaintiffs seek only limited relief to preserve the status quo while this Court determines whether Defendants' administration of the TEFA program violates the Constitution. Courts routinely grant such relief where government action threatens constitutional rights, because even brief infringements of First Amendment freedoms constitute irreparable injury. *See Mirabelli v. Bonta*, No. 25A810, 2026 WL 575049, at *3 (U.S. Mar. 2, 2026). Absent relief, the State will conduct the program's inaugural application cycle and lottery while Islamic schools remain excluded, forcing Muslim families to choose between abandoning their religious educational commitments or foregoing participation in the program altogether. Once the application window closes and the lottery is conducted, those families will be permanently excluded from the pool of applicants eligible for the program's first year. By contrast, Defendants face little burden from maintaining the status quo pending judicial review, as government entities suffer no cognizable harm from being required to comply with constitutional requirements. *See Roman Catholic Diocese*, 592 U.S. at 19. Because the Constitution does not permit the State to administer a public program and disperse public funds in a manner that excludes a religious community from participation, the balance of equities and the public interest decisively favor temporary injunctive relief.

## IV.   Requested Relief

Plaintiffs respectfully request that the Court enter the Temporary Restraining Order submitted by Plaintiffs that preserves the status quo until the Court can conduct a hearing on Plaintiffs' request for a preliminary injunction. Because of the impending deadline, Plaintiffs also ask this Court to order expedited discovery including regarding the process by which the Comptroller has identified these schools.

## V.    Rule 65 Certification and Security

Plaintiffs certify pursuant to Federal Rule of Civil Procedure 65(b) that Defendants have received notice of this motion. All Defendants have been served with the Complaint or have otherwise agreed to waive service. Counsel for all parties have been provided with a copy of this motion and the accompanying materials, and Plaintiffs will promptly file the returns of service once received. Plaintiffs further certify that counsel for the parties have been notified of Plaintiffs' request for temporary restraining order relief and have been copied on the correspondence regarding this motion.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that the Court grant this Application for Temporary Restraining Order and enter an order temporarily enjoining Defendants, and all persons acting in concert with them, from enforcing or implementing the challenged actions described herein pending further order of the Court. Plaintiffs further request that the Court set this motion for hearing at the Court's earliest convenience, and, if the Court deems appropriate, consider coordinating the hearing with the temporary restraining order proceedings currently scheduled in the related case, *Cherkaoui v. Paxton, et al.*, No. 4:26-cv-01675. Plaintiffs also request that the Court set this matter for a prompt hearing on Plaintiffs' request for a preliminary injunction and grant such other and further relief to which Plaintiffs may

be justly entitled.

Respectfully submitted,

**ARAMBULA TERRAZAS PLLC**

1001 S. Capital of Texas Highway, Bldg. L, Suite 250
Austin, Texas 78746
512.904.0200

By:  /s/ *Eric A. Hudson*
Eric A. Hudson
State Bar No. 24059977
Fed. Id. No. 1000759
ehudson@atlawpllc.com
Cole P. Wilson
State Bar No. 24122856
Fed. Id. No. 3864133
cwilson@atlawpllc.com

**Attorney-in Charge**

| WRIGHT, CLOSE, BARGER & GUZMAN LLP | EDWARDS SUTARWALLA SAMANI LLP |
|---|---|
| By: */s/ Maha Ghyas (w/ permission)*<br>Maha Ghyas<br>**Attorney-in-Charge**<br>State Bar No. 24138115; Fed. ID 3863190<br>mghyas@wcbglaw.com<br>Bradley W. Snead<br>State Bar No. 24049825; Fed ID1127744<br>bsnead@wcbglaw.com<br>Michael Adams-Hurta<br>State Bar No. 24097860; Fed. ID 3290975<br>adams-hurta@wcbglaw.com<br>One Riverway Dr., Suite 2200<br>Houston, TX 77056<br><br>**ATTORNEYS FOR PLAINTIFFS ISLAMIC SERVICES FOUNDATION, BAYAAN ACADEMY INC. AND MUNA HAMADAH** | By:  */s/ Murtaza  Sutarwalla  (w/ permission)*<br>Murtaza F. Sutarwalla<br>**Attorney-in-Charge**<br>State Bar No. 24056398; Fed. ID 2589991<br>Mansoor Broachwala<br>Illinois State Bar No. 6326633; Fed. ID 3943228<br>602 Sawyer St., Suite 490<br>Houston, Texas 77007<br>Phone: (713) 565-1353<br>Email: murtaza@esslawpartners.com<br>Email: mansoor@esslawpartners.com<br><br>**ATTORNEYS FOR PLAINTIFFS BAYAAN ACADEMY INC., THE EAGLE INSTITUTE, FARHANA QUERISHI, AND LAYLA DAOUDI** |
| **GIBBS & BRUNS, LLP**<br><br>By: */s/ Ayesha Najam (with permission)*<br>Ayesha Najam<br>**Attorney-in-Charge**<br>State Bar No. 24046507; Fed. ID 605948<br>anajam@gibbsbruns.com<br>Michael Davis<br>State Bar No. 24109793; Fed. ID 3588027<br>mdavis@gibbsbruns.com<br>Gibbs & Bruns LLP<br>1100 Louisiana, Suite 5300<br>Houston, Texas 77002<br>Tel.: (713) 650-8805<br>Fax: (713) 750-0903<br><br>**ATTORNEYS FOR PLAINTIFFS THE EAGLE INSTITUTE, FARHANA QUERISHI, AND LAYLA DAOUDI** | **LAW OFFICES OF OMAR KHAWAJA PLLC**<br><br>By: */s/ Omar Khawaja (with permission)*<br>Omar Khawaja<br>**Attorney-in-Charge**<br>State Bar No: 24072181; Fed. ID 3521501<br>omar@attorneyomar.com<br>Abdul Rahman Farukhi<br>State Bar No. 24065220; Fed. ID 3291830<br>abdul@attorneyomar.com<br>5177 Richmond Ave., Suite 1065<br>Houston, Texas 77056<br>Telephone: (281) 888-2339<br>Fax: (281) 888-2421<br><br>**ATTORNEYS FOR PLAINTIFFS BAYAAN ACADEMY INC., THE EAGLE INSTITUTE, FARHANA QUERISHI, AND LAYLA DAOUDI** |

22

**CERTIFICATE OF SERVICE AND CERTIFICATE OF CONFERENCE**

I certify that on March 12, 2026, a true and correct copy of the foregoing motion and all accompanying materials was served on Defendants' counsel via electronic mail. All Defendants have been served with the Complaint or have otherwise agreed, through counsel, to waive service on March 12, 2026. Plaintiffs will promptly file the returns of service once they are received.

I further certify that counsel for all parties have received notice of Plaintiffs' request for temporary restraining order relief and were copied on the correspondence concerning this motion, including the March 12, 2026 communications with the court coordinators for both Judge Alfred H. Bennett and Judge Andrew S. Hanen. Plaintiffs' counsel conferred with counsel for the State Defendants by email and telephone regarding the requested relief and the possibility of coordinating a temporary restraining order hearing with the related case scheduled for hearing at 1:30 p.m. on March 13, 2026 before Judge Bennett. Counsel for the State Defendants indicated that they oppose coordinating the hearing in this matter with the temporary restraining order hearing scheduled in the related case, *Cherkaoui v. Paxton, et al.*, No. 4:26-cv-01675. Counsel for Plaintiff Cherkaoui indicated that he does not oppose such coordination. All counsel for all parties in both matters were copied on the correspondence reflecting these communications with the respective court coordinators.

Plaintiffs therefore respectfully submit that the notice requirements of Federal Rule of Civil Procedure 65(b) have been satisfied.

/s/*Eric A. Hudson*_____
Eric A. Hudson