**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

BAYAAN ACADEMY, INC., ISLAMIC SERVICES
FOUNDATION; THE EAGLE INSTITUTE;
LAYLA DAOUDI; MUNA HAMADAH; and
FARHANA QUERISHI,

     *Plaintiffs*,

     v.

KELLY HANCOCK, in his official capacity as
Acting Comptroller of Public Accounts; THE
OFFICE OF THE TEXAS COMPTROLLER OF PUBLIC
ACCOUNTS; and MARY KATHERINE STOUT, in
her official capacity as Program Director over
the Education Savings Accounts Program,

*Defendants*.

     *Defendants*.

CASE NO. 4:26-CV-01960

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER**

---

If given their way, Plaintiffs, a coalition of Muslim schools and parents, would have this Court a temporary restraining order that would upset the delicate balance between state and federal government. They seek temporary and permanent injunctive relief preventing the Acting Texas Comptroller of Public Accounts and Texas Education Freedom Account program director from excluding Muslim schools from the TEFA program based on their religion. Notwithstanding their erroneous assumptions that the Comptroller is taking such an action, Plaintiffs have not experienced any sort of justiciable injury, dooming their case under both a ripeness and a standing analysis. Their request takes the fact-finding responsibilities out of the hands of the Comptroller, to whom those duties were assigned, and gives it to the federal court, creating a quasi-preclearance framework for eligibility in the TEFA program. This cannot stand, and for the reasons described below, the Court should deny Plaintiffs' application for temporary injunction and allow the Comptroller to complete his school verification process.

1

## BACKGROUND

Due to the related nature of the proceedings before this Court and in light of the expected consolidation of the two cases, Defendants incorporate by reference Defendants' Response in Opposition to Plaintiffs' Emergency Motion for Temporary Restraining Order at 8–11, *Cherkaoui v. Paxton et al.,* No. 4:26-cv-1675 (Mar. 11, 2026), which lays out the identical statutory and administrative background at issue in these two cases.

### I.    The Texas Education Freedom Account (TEFA) Program

In 2025, the Texas Legislature established a new education program that allows parents to use state-funded Education Savings Accounts for, *inter alia*, private school tuition. Tex. Educ. Code §§ 29.351–.374. The "Education Savings Account Program," also known as the Texas Education Freedom Accounts program, allows the state to create state-funded, user-managed accounts for students to use for private school tuition, homeschools, or specialized education services. Tex. Educ. Code § 29.352. TEFA sets out two separate application tracks that must be completed and approved before funding is released: one for the schools and one for the students. *E.g., id.* §§ 29.356–.358.

For student applications, the Texas Legislature has implemented a lottery system to select the students who will receive TEFA funds, prioritizing students with disabilities and those from low- to middle-income families. *See id.* §§ 29.356(b)(2)(A)–(D) (outlining priority within the lottery). Because of the lottery system, eligible applicants are not automatically warranted funds until official notification of lottery results in early April 2026. Ex. 1 at 1–2.[1] Parents do not have to select schools for their children as a prerequisite for lottery eligibility; indeed, tens of thousands have not. Ex. 2 at 2. To participate in the program, parents have until July 15, 2026, to select

---

[1] Exhibits 1 and 2 are the Verification of Murl E. Miller (Mar 10, 2026) and Affidavit of Mary Katherine Stout (Mar. 12, 2026). These sworn documents were drafted in relation to *Cherkaoui v. Paxton et al.,* No. 4:26-cv-1675 (S.D. Tex. 2026), and as such, the statements contained therein represent the data in the Comptroller's possession at the time of the affiant's statement. To the extent that these numbers have changed, the new data is contained within Exhibit 3 which is the Affidavit of Mary Katherine Stout (Mar. 16, 2026).

schools for their children. Ex. 1 at 2. Upon finalization of school enrollment, the Comptroller shall then make initial payments, for each participating child, to be deposited into an account established for that child. 34 Tex. Admin. Code § 16.407(c)(Comptroller of Public Accounts, Program Administration) (2025).

For school applications, the Legislature established various criteria that private school applicants for participation in the program must meet, and that Comptroller must verify prior to approval. *See* Tex. Educ. Code §§ 29.358(b)–(d), 29.358(h). Eligible accredited program applications are considered on a rolling basis. *Id.* § 29.358(a). Consideration of these applications is still ongoing. Ex. 3 at 2.

## II.    Factual background of the present case

Parent Plaintiffs Layla Doudi, Farhana Querishi, and Muna Hamadah have all submitted applications to participate in the ESA program, and each have received notifications that their children are eligible for TEFA funds. ECF 7-5 at ¶11 (Doudi); ECF 7-6 at ¶12 (Querishi); ECF 7-4 at ¶¶ 6–7 (Hamadah). As such, each Parent Plaintiff stands on equal footing with all other parents eligible for the lottery because selection of a school is immaterial to lottery eligibility.

During the private school verification and approval process, the Comptroller's office determined that Cognia-accredited schools require additional verification and approval due to several concerns brought to the Comptroller's attention. Ex. 3 at 2. Based on concerns relating to the accreditation of Cognia schools, the Comptroller made the decision to more thoroughly review Cognia schools and pause sending out registration links to Cognia schools. Ex. 3 at 2. This effort has resulted in a slowdown across all programs, as Cognia is one of the largest accreditors in Texas with roughly 700 non-public schools accredited in the state. Ex. 3 at 2. For example, in February alone, Cognia informed Odyssey of nine erroneously listed schools on TEPSAC for which Cognia had not completed final accreditation steps. Ex. 1 at 2–3.

Each of the Plaintiff Schools in this case, Bayaan Academy Inc., Islamic Services Foundation: Brighter Horizons Academy and Little Horizons Academy, and Excellence Academy

are listed as accredited by Cognia. *E.g.,* ECF 7-1 at ¶10; ECF 1 at ¶33; ECF 7-8 at ¶ 14. ECF 1 at ¶ 44; Ex. 3 at 2–3. Reviews for each of these schools that have submitted an application are still ongoing, as well as reviews for all other schools still awaiting approval. Ex. 3 at 2–3. The Comptroller has not set a deadline for submission of TEFA school program applications. Tex. Educ. Code 29.358(a). Schools that have not yet received application links will not be prejudiced in the selection of schools if it later deemed eligible to participate in the TEFA program prior to July 15, 2026. Ex. 3 at 2.

## **LEGAL STANDARD**

Injunctive relief "'is an extraordinary and drastic remedy,' and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). The party moving for a temporary restraining order must establish four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *See Jackson Women's Health Org. v. Currier,* 760 F.3d 448, 452 (5th Cir. 2014). "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or a preliminary injunction can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *see also PCI Transp. Inc. v. Fort Worth & W. R.R. Co.,* 418 F.3d 535, 545 (5th Cir. 2005) (noting that the court should not grant preliminary injunctive relief "unless the party seeking it has clearly carried the burden of persuasion on all four requirements" (internal citations omitted)). However, even if a movant satisfies each requirement, the decision to grant an injunction remains within the discretion of the trial court, which should issue them only under exceptional circumstances. *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985).

4

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.     Plaintiffs cannot show a likelihood of success on the merits.**

The Fifth Circuit has previously observed that "[t]he first factor—likelihood of success on the merits—is 'the most important.'" *Jackson v. Tarrant County, Tex.,* 158 F.4th 571, 581 (5th Cir. 2025) (quoting *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024)). And on this factor, the Plaintiffs do not pass muster. Despite the somewhat creative framing of their respective injuries, Plaintiffs claims not ripe, nor do Plaintiffs have standing to bring this action. Therefore, they cannot succeed on the merits and the Court should decline to issue a temporary restraining order.

**A.     Plaintiffs' claims are not ripe.**

"A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Companies, Inc. v. Griffin,* 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown & Root, Inc. v. Big Rock Corp.,* 3836 F.2d 662, 665 (5th Cir. 1967)). "Standing, mootness, and ripeness are jurisdictional issues that may be raised at any time." *DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified). "A party seeking a TRO cannot establish a 'substantial likelihood of success on the merits' of his claim if the court concludes that it lacks jurisdiction to adjudicate the claim altogether." *Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020). Neither the Parent Plaintiffs nor the School Plaintiffs have presented ripe claims to the Court.

**1.     Parent Plaintiffs**

Parent Plaintiffs' claims are not ripe for adjudication because additional contingent events must occur for them to establish any injury. They have not yet been denied any benefits under the TEFA program. At the outset, it is undisputed that each Parent Plaintiff submitted TEFA applications on behalf of their respective children and received a positive eligibility determination.

5

*See* ECF 7-5 at ¶ 11 (Plaintiff Doudi submitted on behalf of her two children and received notification that both are eligible); ECF 7-6 at ¶ 12 (Plaintiff Querishi submitted on behalf of her two children and received notification that both are eligible); ECF 7-4 at ¶¶ 6–7 (Plaintiff Hamdah submitted on behalf of her two children and received notification that both are eligible). They have not, therefore, suffered any injury due to nonparticipation in the TEFA application process.

Moreover, none of the schools that the Parent Plaintiffs wish for their children to attend have been denied participation in the TEFA program. Plaintiff Hamadah asserts that she wishes for her children to attend Brighter Horizons Academy and Little Horizons Academy. ECF 7-4 at ¶ 4. While neither of these schools are currently listed for selection currently, the Comptroller has not denied either school's TEFA program application. Ex. 3 at 3. Both of Plaintiff Doudi's children wish to attend Houston Quran Academy at the Katy, Texas campus. ECF 7-5 at ¶ 5. Similarly, the Comptroller has not denied Houston Quran Academy, Katy's application for TEFA program application. Ex. 3 at 3. And last, both of Plaintiff Querishi's children intend to attend the Excellence Academy. ECF 7-6 at ¶ 12. Strikingly, Excellence Academy has not yet submitted an application for TEFA program approval and the deadline for such an application has not expired. Ex. 3 at 2. Indeed, none of the schools to which the Parent Plaintiffs wish to send their children to have been denied.

The qualifications of Cognia-affiliated schools are still being reviewed to ensure that Cognia's accreditation issues are resolved before parents make the decision to direct funds to erroneously accredited schools. Ex. 3 at 2; Ex. 1 at 2–3. Because the final deadline for parents to select schools is July 15, 2026, there is still ample time for the Comptroller to make his decision on these schools' qualifications and for the relevant Parent Plaintiffs to select these schools. Ex. 1 at 2. As a result, the Parent Plaintiffs in this case stand in precisely the same shoes as Plaintiff Cherkaoui in a similar case before this Court. *See* Defs' Resp. in Opp. to Pls' Emergency Mot. for Temp. Restraining Order at 14–15, *Cherkaoui v. Paxton, et al.,* No. 4:26-cv-1675, ECF 17 (S.D. Tex., filed Mar. 11, 2026) (discussing ripeness issues and their implications on the federal court jurisdiction). Like Mr. Cherkaoui, Plaintiff Parents have all timely applied for TEFA student

funding and wish to apply to Cognia schools. Each of these Cognia schools are currently undergoing review and Plaintiff Parents have until July 15, 2026, to designate a school to receive funding. *See id.* ("Until the deadline for [the desired school] to be approved has passed, it is premature to say [the desired school] has been denied").

The only distinction note between Parent Plaintiffs and Mr. Cherkaoui pertains to Plaintiff Querishi's children who wish to direct TEFA funding to Excellence Academy. ECF 7-6 at ¶ 12. However, Excellence Academy's status remains functionally the same insofar as it affects the parental selection deadline of July 15, 2026, whether it has received a registration link or whether it has yet to have an application approved. *See* Tex. Educ. Code 29.358(a) (requiring the Comptroller to review applications on a rolling basis).

"The 'basic rationale [behind the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008) (alteration in original) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)). Because Plaintiffs' application deadlines have not passed and their desired schools have not been denied program approval, Plaintiffs' claims are not ripe. *Cf. New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 833 F.2d 583, 586 (5th Cir. 1987) ("A district court should dismiss a case for lack of ripeness when the case is abstract of hypothetical." (citation modified)).

It is also noteworthy that while Parent Plaintiffs' children are *eligible* for TEFA funding, they are not *guaranteed* to receive it. Funding is based upon a lottery system, and there is not guarantee that they will receive funding. Up to and until that point where their respective rights to the funding vest, Parent Plaintiffs cannot claim that their injury is anything more than hypothetical. *Rowan Companies, Inc.*, 876 F.2d at 28.

### 2.    School Plaintiffs

The School Plaintiffs likewise have a ripeness issue. That issue, at its core, is intertwined with the Parent Plaintiffs' issue; namely, the Comptroller is still actively reviewing School

Plaintiffs' eligibility along with many other schools. Ex. 3 at 2–3. Their injuries will only manifest if the Comptroller denies their respective applications or otherwise fails to determine eligibility by July 15. This is the definition of a contingent event required for School Plaintiffs to sustain a concrete injury. But craftily enough, School Plaintiffs have framed their alleged injuries in such a way that would strip the Comptroller, a *state* official, of his statutorily mandated fact-finding duty and place it in the hands of a *federal* court. Despite their creative approach, School Plaintiffs are doomed to failure.

The main thrust of School Plaintiffs' claim to injury is that some Muslim families will not even apply for TEFA funding. The School Plaintiffs' theory of injury relies upon rampant speculation. For their theory to work, at least some parents would have had to chose to refrain from filing an application. Those same parents would then need to be successful in the lottery. And *third,* those same successful parents would actually select the School Plaintiffs to receive their TEFA account funding. Such a downstream economic interest is too speculative and attenuated to be fit for adjudication. "A controversy, to be justiciable, must be such that it can *presently* be litigated and decided and not *hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop.*" *Rowan Companies, Inc.,* 876 F.2d at 28 (5th Cir. 1989) (emphasis added) (quoting *Big Rock Corp.,* 3836 F.2d at 665 (5th Cir. 1967)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified). Rather than waiting for the composition or the results of the lottery to be determined, Plaintiffs request that the Court issue emergency relief based upon what these results might be. Because the Court would be forced to speculate on the decisions of independent and hypothetical winners, the claim is unfit for adjudication as a matter of ripeness for federal court adjudication.

Further, the Defendants would emphasize that no Plaintiff School has been denied participation in the TEFA Program. The deadline for parents to select schools is July 15, 2026. Aside from conclusory allegations, School Plaintiffs' only evidence in support of their alleged injury is a single non-party declarant expressly conditioning their non-application decision upon

8

their predictions of whether the Comptroller will or will not approve their preferred school. *See* ECF 7-7 at ¶ 9. ("I do not believe that the Comptroller *will* approve any school that is an Islamic based school. . . . If I had reason to believe that the Comptroller would approve BHA or a comparable Islamic school for participation in the TEFA program, I would apply for the program.").

Predictions or speculation regarding what a state official may or may not do fail to establish cognizable cases under Article III. *See United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000) ("Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."). "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citation modified). For the aforementioned reasons, the School Plaintiffs claims are not yet suited for adjudication because it would require the court to engage in speculation not only to contingent events, but also to contingent effects. Ripeness is not simply prudential to avoid judicial embarrassment, instead it is "Article III of the federal Constitution [that] limits the jurisdiction of federal courts to live cases and controversies. . . . This actual case-or-controversy requirement gives rise to the justiciability doctrines of standing, mootness, political question, and ripeness." *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Texas*, 260 F. Supp. 3d 738, 766 (S.D. Tex. 2017), *aff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 F. App'x 916 (5th Cir. 2018) (first citing Const. art III, § 2; then citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (198); and then citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Because the claims of the Parent and School Plaintiffs are not ripe for adjudication and Article III of the Constitution prevents the adjudication of matters that are not live cases or

9

controversies, the Plaintiffs claims do not have a substantial likelihood of success on the merits because they must be dismissed for lack of jurisdiction.

### B.      Plaintiffs lack standing

Plaintiffs also cannot succeed on the merits because they lack standing. A plaintiff must allege the following three core elements in order to meet the "irreducible minimum" requirement of standing: (1) he has suffered or is about to suffer an "injury in fact" that is "concrete and particularized", and "actual or imminent"; (2) there must be "a causal relationship between the injury and the challenged conduct" that "fairly can be traced to the challenged action of the defendant"; and (3) "a likelihood that the injury will be redressed by a favorable decision." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 663–64 (1993); s*ee also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[T]hey are not mere pleading requirements but rather an indispensable part of the plaintiff's case . . . .").

The Parent Plaintiffs and the School Plaintiffs lack standing to sue because (1) their alleged injuries are not fairly traceable to nor redressable by the Comptroller, but rather to the educational decisions of other parents, and (2) because they have not suffered nor are they about to suffer an injury in fact.

### 1.      As to both the School and Parent Plaintiffs, any alleged lottery composition injury is neither traceable to nor redressable by the Comptroller.

Plaintiffs lack standing—and thus will not succeed on the merits of their claims as to the two Defendants—because their alleged injuries are not fairly traceable to any actions of the Comptroller or the Program Director. "[F]ederal plaintiffs must allege some threatened or actual injury . . . that fairly can be traced to the challenged action of the defendant." *Simon v. E. Kentucky Welfare Rts. Org.,* 426 U.S. 26, 41 (1976). The traceability inquiry is vital because otherwise the Court cannot provide redress by ordering the defendant to alter its actions. *E.g., Boating Indus. Ass'ns v. Marshall,* 601 F.2d 1376, 1380 (9th Cir. 1979). Here, the Parent Plaintiffs alleged injuries do not stem from the actions of the Defendants, but from the actions of other parents who have voluntarily chosen not to apply, in direct contravention to the Comptroller's guidance.

10

While Plaintiffs assert that the Comptroller's actions have effectuated an "exclusion of Islamic schools" which results in "the exclusion of Muslim families from the competition for benefits," this characterization is rooted in a fundamental mismatch between the application process, the Comptroller's public messaging about the program, and Plaintiff's allegations. ECF 7 at 12. Here, the Parent Plaintiffs' equal competition claim rests upon assumptions that are either untrue or negate the traceability requirement. *First*, take the false claim that "parents who wish to enroll their children in Islamic schools cannot participate in that lottery on equal terms because those schools do not appear on the State's approved-provider list." ECF 7 at 19. It is categorically untrue that any applicant's desired school has any bearing whatsoever on that applicant's eligibility for the TEFA lottery system because "[f]amilies do not need to select a school when they apply" for TEFA child participation. *See* Off. of Tex. Comptroller, *Texas Education Freedom Accounts Pass 160,00 Applicants as March 17 Deadline Approaches,* (Mar. 9, 2026) [hereinafter *TEFA Accounts Pass 160,000*, (Mar. 9, 2026)] https://comptroller.texas.gov/about/media-center/news/20260309-texas-education-freedom-accounts-pass-160000-applicants-as-march-17-deadline-approaches-1773069814202. Each of the Parent Plaintiffs have submitted an application. *See* ECF 7-5 at ¶ 11; ECF 7-6 at ¶ 12; ECF 7-4 at ¶¶ 6–7. As such, a line of direct traceability is severed at the outset because the composition of the lottery system and the Comptroller's review of schools are entirely unrelated. Even if the Comptroller had approved *zero* schools or instantly approved *every* school, parents' steps to completing and submitting an application are exactly the same and, therefore, they would compete on precisely the same terms.

Instead, recognizing this flaw, the Parent and School Plaintiffs rely upon a more attenuated theory of traceability: that of intervening parental decisions "distorting the operation of the program." ECF 7 at 5. Plaintiffs allege that "many Muslim families who intend to keep their children enrolled in [Islamic schools] are declining to apply rather than submit applications that do not reflect their children's actual schools." ECF 7 at 5. Defendants again reemphasize that submission of an application does not require selection of a school. To the heart of the issue, Plaintiffs theory is thus that their alleged injuries stem not from the decisions of the Comptroller,

but rather from non-parties making the choice to not apply based on highly subjective opinions on the Comptroller's actions thus far in the process. *See* ECF 7-7 at ¶¶ 7–9 ("I do not believe that the Comptroller will approve any school that is an Islamic based school . . . . If I had reason to believe that the Comptroller would approve BHA or a comparable Islamic school for participation in the TEFA program, I would apply for the program."). These beliefs are entirely subjective, and the declarant has used this conjecture as a rhetorically weak reason to go against the Comptroller's explicit guidance. *See e.g., supra TEFA Accounts Pass 160,000,* (Mar. 9, 2026) ("Families do not need to select a school when they apply, and more schools will join the program on a rolling basis."); Ex. 4 at 2 ("Don't see your favorite school? Don't worry. We're adding new schools each week. You'll have until later this summer to confirm your child's school. All you need to so on your application is tell us *if you intend to enroll them in a participating, accredited private school*." (emphasis added)); Ex. 5 at 2 ("If you chose the private school option, you do not have to select a specific school when you apply."). That some parents are deciding not to apply for participation in TEFA based upon speculation that their preferred schools will not be approved, before any deadlines have passed, and against the information and recommendations provided by the Comptroller, is the decision of **the parents** and not attributable to any action of the Defendants.

Indeed, this very attribution issue is the heart of the traceability doctrine. The traceability inquiry is vital because otherwise the Court cannot provide redress by ordering the defendant to alter its actions. *E.g., Marshall,* 601 F.2d at 1380 (9th Cir. 1979). The Plaintiffs alleged injury—a lottery pool that does not include parents who have refused to apply—is beyond the power of the Comptroller to rectify precisely because it is not traceable to the Comptroller. It is difficult to imagine a form of emergency relief that would remedy this injury other than ordering every parent that wishes their child to enroll in a private school, yet has declined to submit an application, to submit that application. *See e.g., Simon,* 426 U.S. at 41–42 (1976) ("In other words, the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from *the independent action of some third party* not before the court."); *Allen v. Wright,* 468 U.S. 737, 759

12

(1984) ("It is just as speculative whether any given parent of a child attending such a private school would decide to transfer the child to public school as a result of any changes in educational or financial policy . . . . The links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing."); *Lujan,* 504 U.S. at 570–71 ("The short of the matter is that redress of the only injury in fact respondents complain of requires action . . . by the individual funding agencies; and any relief the Distrct Court could have provided in this suit against the Secretary was not likely to produce that action."). In this case, there is no form of relief that the Court could order against the Comptroller that would remedy the alleged compositional injury precisely because the injury itself, as alleged, is traceable to non-applying parents rather than the Comptroller. Therefore, because the alleged injury cannot be fairly traced to a challenged action or conduct by the Defendants, there is no standing.

  **2.  The Parent Plaintiffs have not shown a cognizable injury sufficient to convey standing.**

  The Parent Plaintiffs have not suffered nor are they about to suffer, a concrete and particularized, actual and imminent "injury in fact" that is not merely conjectural or hypothetical. *Ne. Fla. Chapter of Associated Gen. Contractors of Am.,* 508 U.S. at 663. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation modified). The Parent Plaintiffs' alleged injury—an inability to compete in the lottery system on equal terms, is entirely without merit. Each of the Parent Plaintiffs' children is already determined to be eligible and can therefore compete on equal footing in the lottery system.

  Over 160,000 families have filed for participation in the TEFA-program, exceeding the allotted funds for the upcoming school year. *See supra TEFA Accounts Pass 160,000* (Mar. 9, 2026). A student that is not selected by the TEFA lottery system does not have a vested right to TEFA funds. As such, even if the preferred schools were approved, it is not guaranteed that Parent Plaintiffs would be entitled to TEFA funding absent being selected in the lottery process. "[T]he

risk of future harm on its own does not support Article III standing." *TransUnion LLC* 594 U.S. at 441; *see also Lujan*, 504 U.S. at 564 (citation modified) ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending'") Because any financial injury is downstream from success in the lottery system, the Parent Plaintiffs injury is merely hypothetical, and not concrete. There are currently enough applicants that funding in the lottery system will be exhausted within the first three tiers. (Ex. 2 at 2). Since Parent Plaintiffs have pled no facts that their applications will be placed within these first three tiers, they impliedly invite the court to rely upon mere speculation that they have any chance of receiving any funding. For much the same reasons that the Parent Plaintiffs injuries are not concrete, they are also not ripe.

3.      **The School Plaintiffs do not have standing because they have not suffered nor will they suffer an injury in fact**

The School Plaintiffs have not suffered, nor are they about to suffer, a concrete and particularized injury. The School Plaintiffs' theory of injury relies upon three degrees of separate contingent events. *First,* that some parents that have allegedly refrained from sending applications for TEFA student participation would have submitted applications but for the challenged actions of the Comptroller. *Second,* that these same parents would be successful in the lottery system and not offset other parents who would direct TEFA funding to the same school. And *third,* these successful parents would actually select the School Plaintiffs to receive their TEFA account funding. Such a downstream economic interest is too attenuated to constitute a concrete injury. Because the Court would be forced to speculate on the decisions of intendent and hypothetical winners, the claim is both unfit for adjudication as a matter of ripeness and lacks the 'actual or imminent' harm required for Article III standing.

That more than 450 schools have been designated as approved for participation in the TEFA program yet remain unselected by a single parent confirms that the School Plaintiffs' alleged injury is rooted in abstraction. Ex. 2 at 2. To find standing, this Court would have to speculate first that

14

these schools will be in fact be chosen. Mere hypothetical injuries are not sufficient to support Article III standing. *TransUnion LLC,* 594 U.S. at 441. Indeed, even if the Court were to require that the Plaintiff Schools be listed as approved TEFA Program participants, the alleged injury could only be remedied by the intervening actions of parents to select these schools, and many thousands of parents have not selected a school. Ex. 2 at 2. Because the School Plaintiffs' injury is not actual nor imminent, as it relies upon a chain of contingent events of which Plaintiffs have failed to demonstrate any likelihood will occur, the School Plaintiffs have not shown a cognizable injury sufficient to convey standing. Therefore, the School Plaintiffs have not demonstrated a substantial likelihood of success on the merits because their claims must be dismissed for lack of standing sufficient to invoke the Court's jurisdiction.

## II.    The balance of equities weighs in favor of a denial of Plaintiffs' request for a temporary restraining order.

Plaintiffs' requested emergency injunctive relief would disrupt the status quo rather than preserve it. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974) ("[U]nder federal law [TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm."); *see also e.g., Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984) ("The function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." (citation omitted)); *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 808–09 (9th Cir. 1963) (in a TRO proceeding, "it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial . . . [t]his is particularly true where the relief afforded, rather than preserving the status quo, completely changes it"). The TEFA Program is a newly enacted statute. S.J. of Tex., 89th Leg., R.S., 1762 (2025) (reporting that SB 2 was signed by the Governor on May 3, 2025). Under the statute, the Comptroller has been vested with a significant number of responsibilities to establish and administer the program. *See e.g.,* Tex. Educ. Code § 29.352. The 2026–2027 school year is the first year of implementation of the program; thus, no school has ever participated in the TEFA program prior to the passage of the statute. The

15

Comptroller has confirmed that more schools will join the program on a rolling basis, as applications are reviewed. *See supra TEFA Accounts Pass 160,000,* (Mar. 9, 2026). As such, the status quo would be irreparably disrupted rather than preserved by a court-ordered short-circuiting of the Comptroller's statutorily mandated thorough review of program applicants.

Currently, the TEFA program staff is being most attentive to the families who are applying to the program and assisting them with completing their applications before the application period is closed. The TEFA program has sent several notices to the public and every email address provided with an application or by email contact directing applicants to send in their family's TEFA application by 11:59 p.m. on March 17, 2026, to be eligible for the program, and that a school does not have to be identified until July 15, 2026. *See* Ex. 4 at 2; Ex. 5 at 2. The TEFA program staff is focusing its personnel resources on the most essential program tasks. Non-public schools are still applying for participation in the TEFA program.

It would be fundamentally unfair to throw off the lottery system timeline, disrupt the educational plans of hundreds of thousands of parents, so that some parents, who have voluntarily chosen to ignore the Comptroller's express guidance, may have an extended period to apply. It is even more unfair when one considers that there are no guarantees that an extension of the deadline will inspire these parents to change their mind and submit an application. *See e.g., Simon,* 426 U.S. at 41–42 ("In other words, the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from *the independent action of some third party* not before the court." (emphasis added)). Here, redressability of the harm does not rest with the Comptroller, but rather with hypothetical parents who have determined to manufacture harm to the School Plaintiffs by refraining from applying. The Comptroller cannot require these parents to submit applications; nor could the Court rightly rule that hundreds of thousands of timely-filed applications from parents must wait upon some non-party parents to be persuaded that the Comptroller will, in fact, act in good faith. The Comptroller has released information about what

these parents should do: apply and preserve their spot in the lottery. Ex. 4 at 2; Ex. 5 at 2; *supra TEFA Accounts Pass 160,000,* (Mar. 9, 2026).

In addition to showing a likelihood of success on the merits, a plaintiff seeking preliminary injunctive relief must show "that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). An injunction that prevents the Comptroller from properly reviewing applications prior to approval will burden Texas. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). When compared to the irreparable harm the State of Texas will suffer if it is prevented from enforcing its laws, Plaintiffs' speculative injuries do not outweigh those of Defendants, especially considering the deadline to submit an application has not yet passed, and HQA Spring's application has not been denied. In light of Plaintiffs' low likelihood of success on the merits and allegations of only speculative harm, the balance of equities weighs against granting status quo-altering temporary injunctive relief.

It is noteworthy that, as the day turns over to 12:00 a.m. on Wednesday, March 18, neither Parent Plaintiffs nor School Plaintiffs will suddenly begin to experience harm. Their posture in the TEFA program will be the exact same. The Parent Plaintiffs will all still be eligible for the lottery and be able to direct funds to an approved school of their choice at a later date if they are selected in the lottery. School Plaintiffs will still presumably be under review by the Comptroller.

## **PRAYER**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Application for Temporary Restraining Order, (ECF 7), in its entirety and grant Defendants such other and further relief to which they may be justly entitled.

Dated: March 17, 2026

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

Respectfully submitted,

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel
Texas State Bar No. 24116957
S.D. Tex. 3688738
zachary.rhines@oag.texas.gov

**ALI M. THORBURN**
Special Counsel
Texas State Bar No. 24125064
S.D. Tex. No. 3874024
Direct: (512) 936-2275
ali.thorburn@oag.texas.gov

**GREY W. JOHNSTON**
Special Counsel
Texas State Bar No. 24149107
S.D. Tex. No. 3942849
grey.johnston@oag.texas.gov

**COUNSEL FOR STATE DEFENDANTS**

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on March 17, 2026, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

*/s/ Zachary L. Rhines*
ZACHARY L. RHINES