IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BAYAAN ACADEMY, INC.; ISLAMIC SERVICES FOUNDATION; THE EAGLE INSTITUTE; LAYLA DAOUDI; MUNA HAMADAH; FARHANA QUERISHI; ZUBAIR ULHAQ. | § § § § § § | |
| *Plaintiffs*, | § § | CIVIL NO. 4:26-CV-1960 |
| v. | § § § | |
| KELLY HANCOCK, in his official capacity as Acting Comptroller of Public Accounts; THE OFFICE OF THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS; MARY KATHERINE STOUT, in her official capacity as Program Director over the Education Savings Accounts Program, | § § § § § § § § § § | |
| | § | JURY TRIAL DEMANDED |
| *Defendants*. | | |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY, TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF**

**TO THE HONORABLE JUDGE OF THIS COURT:**

COME NOW, Plaintiffs BAYAAN ACADEMY INC., ISLAMIC SERVICES FOUNDATION, THE EAGLE INSTITUTE, LAYLA DAOUDI, MUNA HAMADAH, FARHANA QUERISHI, and ZUBAIR ULHAQ (collectively, "Plaintiffs"), on behalf of themselves and all persons and entities similarly situated ("Plaintiff Class"), by and through their undersigned counsel, and file this First Amended Complaint against (i) KELLY HANCOCK, in his official capacity as the Acting Comptroller of the State of Texas; (ii) MARY KATHERINE STOUT, in her official capacity as Program Director over the Education Savings Accounts Program; and (iii) THE OFFICE OF THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS (collectively, the "Defendants"), and in support thereof respectfully show the Court as follows:

*Plaintiffs' First Amended Complaint*                                                               1

The Constitution does not permit the State to open a public benefit program to private schools and then close the door when Muslim schools seek to enter. Government may not deny a generally available benefit because of a school's religious character, because of the faith it teaches, or because public officials disfavor the religious community seeking equal treatment. That is precisely what Defendants have done here. Plaintiffs do not challenge a neutral rule, a lawful eligibility standard, or a reasoned finding of noncompliance. They challenge religious discrimination: the State's unexplained exclusion of otherwise qualified Islamic schools from a program that remains open to thousands of other private schools, including schools affiliated with other faith traditions.

Texas created the Texas Education Freedom Accounts Program ("TEFA" or the "Program") to give parents the ability to direct their children's education, including by enrolling them in private schools of their choice. The Program's statutory design is simple: when a private school, even a religious one, meets the objective requirements of Texas Education Code Section 29.358(b), the Comptroller "**shall approve**" that school as an education service provider. Criteria to include a school in the TEFA program are faith-neutral, such that religious schools are on equal footing with secular schools. The statute leaves no discretion to deny preapproval once the criteria are satisfied, and it contemplates no waiting period or secondary review at that point, either.

But Defendants have failed to abide by their statutory duty. Defendants have refused to approve Islamic schools for inclusion despite their eligibility. They have removed approved Islamic schools without notice or explanation. Defendants have created a system where Muslim families cannot even select their schools in the application portal, while thousands of non-Islamic

private schools remain approved and eligible. The Constitution forbids such denominational line-drawing. A state cannot proclaim equal access in theory while administering exclusion in practice.

Plaintiffs are otherwise qualified Islamic schools and parents who seek to participate in TEFA on the same terms as all other schools and families, representative of broader classes of schools and parents who have been discriminated against in the start of the TEFA Program. What makes the exclusion especially grave is that it is not tied to any adjudicated wrongdoing, any statutory disqualification, or any neutral enforcement process. Defendants refused to let K through 12 Islamic schools through the door to TEFA participation, while holding the door open to thousands of other similarly situated private schools across Texas. Parent applications are contingent on choosing from a preapproved list. But that list conspicuously omits all eligible K through 12 Islamic schools, including School Plaintiffs. Parents cannot complete applications for Islamic schools absent those schools' presence on the list. When the parent application deadline passes, the exclusion of Islamic schools becomes outcome-determinative for the year.

The injury is immediate and concrete. Parents who seek an Islamic education for their children are forced to choose between their faith and a public benefit that the State offers to others on equal terms. Islamic schools and students are denied the same opportunity afforded to their religious and secular peers. Unless this Court intervenes, the State will cement that discrimination through the Program's deadline and lottery process, keeping Muslim families out of the inaugural year of this general program solely because a public official singled out their faith. That is unconstitutional. The Free Exercise Clause forbids the government from imposing special disabilities on the basis of religious status. The Establishment Clause forbids government hostility and denominational preference. And the Equal Protection Clause forbids singling out one religious community for disfavored treatment under a facially neutral public program.

This action challenges ongoing and systemic conduct by Defendants in the administration of TEFA, including conduct that continues to affect the timing, conditions, and fairness of participation in the Program. Defendants' actions are not limited to any single decision or moment in time, but instead shape the operation of TEFA on a continuing basis.

Defendants' post-TRO conduct confirms rather than cures the constitutional violations. After this Court's temporary restraining order, Defendants sent links to Islamic schools allowing them apply—but simultaneously characterized those approvals as "temporary"; effectively admitted they had done no investigation in deciding to withhold applications from these schools; asked the Attorney General to strip a school of its corporate charter, *on the basis of its Islamic faith*; and threatened to administer the Program disproportionately to ensure no funds flowed to Islamic schools. Tellingly, Defendants have in the past removed otherwise-approved and eligible Islamic schools from the list, simply on the basis of the schools' ideology. There is a critical and continuing need for court intervention.

Accordingly, Plaintiffs challenge Defendants' ongoing administration of TEFA and seek prospective relief necessary to ensure equal access to the Program on a neutral and nondiscriminatory basis.

## I.    PARTIES

1.    Plaintiff Bayaan Academy Inc. ("Bayaan") is a for-profit corporation organized under Maryland law and registered as a foreign corporation in Texas with a principal place of business in Galveston County. Bayaan may be contacted through undersigned counsel.

2.    Plaintiff Islamic Services Foundation ("ISF") is a non-profit corporation organized under Texas law with a principal place of business in Dallas County. ISF may be contacted through undersigned counsel.

3.      Plaintiff The Eagle Institute d/b/a Excellence Academy ("Excellence Academy") is a non-profit corporation organized under Texas law with a principal place of business in Collin County. Excellence Academy may be contacted through undersigned counsel. Bayaan, ISF, and Excellence Academy are together referred to herein as the "School Plaintiffs."

4.      Plaintiff Layla Daoudi is a natural person and a Texas citizen who resides in Harris County, Texas. She may be contacted through undersigned counsel.

5.      Plaintiff Muna Hamadah is a natural person and a Texas resident who resides in Dallas County, Texas. She may be contacted through undersigned counsel.

6.      Plaintiff Farhana Querishi is a natural person and a Texas resident who resides in Collin County, Texas. She may be contacted through undersigned counsel.

7.      Plaintiff Zubair Ulhaq is a natural person and a Texas resident who resides in Harris County, Texas. He has applied and been found eligible for TEFA. He has a special needs child who will attend Islamic school and another child. Ulhaq's children, if allowed to participate, will be in Tier 1 of the proposed lottery for the TEFA program. He may be contacted through undersigned counsel.

8.      Dr. Daoudi, Ms. Hamadah, Ms. Querishi and Mr. Ulhaq are collectively referred to herein as the "Parent Plaintiffs."

9.      Defendant Kelly Hancock is named in his official capacity as the Acting Comptroller of the State of Texas (the "Comptroller") and may be served with process at the LBJ Building, 111 E. 17th Street, Austin, Texas 78774.

10.     Defendant Mary Katherine Stout is named in her official capacity as Program Director over the Education Savings Accounts Program (the "Program Director") and may be served with process at the LBJ Building, 111 E. 17th Street, Austin, Texas 78774.

11.     Defendant Office of the Texas Comptroller of Public Accounts is a Texas agency with its principal office located at the LBJ Building, 111 E. 17th Street, Austin, Texas 78774.

## II.    JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States, including claims brought under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United States Constitution. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4), which confer jurisdiction over civil actions brought to redress the deprivation, under color of state law, of rights secured by the Constitution and federal law and to secure equitable relief under federal civil-rights statutes. Plaintiffs further seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Defendants the Comptroller and the Program Director are state officials sued in their official capacities for prospective and injunctive relief to remedy ongoing violations of federal law. Sovereign immunity does not bar Plaintiffs' claims under 42 U.S.C. § 1983 seeking prospective injunctive, declaratory, and individual capacity relief against the Comptroller or the Program Director in their official capacities. *See Ex parte Young*, 209 U.S. 123 (1908); *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

14.     At all relevant times, Defendants acted under color of state law in administering and implementing the TEFA Program. The Comptroller and the Program Director each have a specific statutory duty to administer, implement, and enforce the Program, including receiving, reviewing, approving or denying applications for participating schools, and administering the Program's funding and participation requirements. Each Defendant therefore has a direct connection to, and responsibility for, the enforcement and administration of the provisions and practices challenged in this lawsuit. Because Plaintiffs seek prospective relief to prevent ongoing

violations of federal law in the administration of the Program, these claims fall squarely within the doctrine of *Ex parte Young*.

15.    Plaintiffs' injuries are ongoing. School Plaintiffs continue to be subject to Defendants' discretionary authority over approval, processing, and participation in TEFA. Parent Plaintiffs continue to face unequal conditions in evaluating and accessing TEFA benefits. Plaintiffs also face a substantial likelihood, without this Court's intervention, that they will suffer additional injuries in the near future, including economic injuries affecting both School Plaintiffs and Parent Plaintiffs when Defendants follow through on their representation they will prevent funds from flowing to Islamic schools.

16.    This case is not rendered moot by any voluntary, partial, or discretionary actions taken by Defendants. Defendants retain the authority to reimpose, modify, or continue the challenged conduct; have arbitrarily removed Islamic schools in the past; evince a bare intent to administer the Program in a discriminatory manner, the effects of which color operation of the Program.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and resulting injuries giving rise to Plaintiffs' claims occurred in this district. Plaintiff Layla Dauodi resides in the Houston Division of the Southern District of Texas and intends to enroll her children at Houston Quran Academy - Katy. Plaintiffs Layla Daoudi and Zubair Ulhaq also intend to use funds from the Texas Education Freedom Account Program to pay for that education if the relevant school is approved to participate in the Program. Defendants' refusal to process or approve Islamic schools prevents Plaintiffs Layla Daoudi and Zubair Ulhaq from using the Program to fund their children's enrollment at the school of their respective choice and forces Plaintiffs Layla Daoudi and Zubair Ulhaq to choose between forgoing the Program's

benefits or abandoning the religious educational option they seek for their children. The resulting injury is concrete, immediate, and suffered by Plaintiffs Layla Daoudi and Zubair Ulhaq in this district.

18.     Additionally, Plaintiff Bayaan Academy Inc.'s school is based in this district (namely in Galveston County, Texas).

### III.     CLASS ACTION ALLEGATIONS

19.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a) and Rule 23(b)(2) on behalf of themselves and all others similarly situated.

20.     Plaintiffs seek certification of two subclasses:

**1. School Subclass:**

All current and future private schools in Texas that provide Islamic faith-based education, satisfy the statutory criteria for TEFA participation, and have applied, sought to apply, or will apply to participate in TEFA but are not approved, are delayed, removed, or otherwise excluded or burdened in participation ("School Class").

**2. Parent Subclass:**

All current and future parents or guardians in Texas who seek to use TEFA funds for a child to attend a private school providing Islamic education but are unable to do so on equal terms due to the exclusion of those schools from the Program ("Parent Class").

21.     **Numerosity:** The members of the subclasses are so numerous that joinder of all members is impracticable. Defendants' challenged conduct arises from the statewide administration of TEFA and uniformly affects Islamic schools and families across Texas. On information and belief, more than 25 Islamic schools—including the School Plaintiffs—have applied or sought to apply for participation and have been excluded, scrutinized, delayed, or denied without explanation, while 2,000+ private schools had been approved without delay and without

scrutiny. Likewise, thousands of families across the State—including the Parent Plaintiffs—seek to use TEFA funds for Islamic education but are unable to do so because Islamic schools are absent from the Program's preapproved provider list and cannot be selected in the application portal.

22.     The subclasses are inherently fluid and include both current and future members. TEFA operates through a time-limited application window, a fixed deadline, and a lottery system that determines participation. Because applicants exceed the amount of awards that can be granted, Defendants have announced they will hold a lottery system to determine which parents get funding, meaning there is no way to determine at this moment which applicants will receive TEFA funds. As alleged above, Defendants' exclusion of Islamic schools from the approved-provider list during the application period is already affecting which families apply, which schools are considered, and the composition of the applicant pool. Future applicants will be prejudiced; the Program prioritizes giving grants to siblings of those already accepted in future terms. This inaugural year will shape the administration of this Fund for years to come. The full extent of subclass membership therefore cannot be precisely identified at this stage.

23.     The impracticality of individually joining such a large class of plaintiffs is further emphasized by the nature of this litigation, too, which is based in the Defendants' religious and very overt, public discrimination of Plaintiffs. Putative class members are hesitant to seek relief from this Court individually for fear of retaliation. Indeed, Defendants have already singled out one Islamic school that was merely tangentially connected to this litigation before today—Houston Quran Academy—and attacked its reputation while advocating for the revocation of its charter. This specter of retaliation hangs over any potential joinder of potential class members.

24.     **Commonality:** Commonality is satisfied because this action presents common questions of law and fact capable of class-wide resolution and generating common answers central

to the validity of each claim. Defendants have publicly and precisely targeted only Islamic schools. specifically, refusing to process or approve Islamic schools, excluding them from the Program's approved-provider list, and thereby preventing parents from selecting those schools in the application portal.

25.    Common questions include:

(a) whether Defendants maintain or implement a policy or practice of excluding or refusing to process applications from Islamic schools;

(b) whether Defendants' administration of TEFA is neutral and generally applicable with respect to religion;

(c) whether Defendants' refusal to approve schools that satisfy statutory criteria violates the Free Exercise Clause, Establishment Clause, and Equal Protection Clause;

(d) whether Defendants have imposed extra-statutory criteria or engaged in selective non-enforcement of the statutory "shall approve" mandate;

(e) whether excluding Islamic schools from the approved-provider list distorts the application process and denies parents an equal opportunity to compete for Program benefits; and

(f) whether class-wide declaratory and injunctive relief can remedy these harms.

26.    These questions are capable of common proof, including Defendants' administration of the TEFA application portal, the approved-provider list, communications (or lack thereof) regarding school approvals, and the prolonged absence of Islamic schools from the Program despite their satisfaction of statutory criteria. Resolution of these questions will generate common answers that drive the outcome of the litigation for all subclass members. To the extent Defendants exercise discretion, that discretion is applied through uniform policies and practices, and it is that common mode of exercising discretion that is subject to class-wide determination.

27.    **Typicality:** Typicality is satisfied because the claims of the named Plaintiffs arise from the same course of conduct and are based on the same legal theories as those of the subclasses.

Each School Plaintiff submitted or attempted to submit an application and was excluded, delayed, or denied without explanation despite satisfying statutory criteria. Each Parent Plaintiff seeks to use TEFA funds for Islamic education but has been unable to do so because Islamic schools are not available for selection in the application portal. These injuries—exclusion from a generally available benefit, unequal conditions of participation, and distortion of the application process—are identical in nature to those suffered by subclass members and arise from the same uniform conduct by Defendants.

28.     Any differences in timing, procedural posture, or degree of harm do not defeat typicality. All claims are rooted in Defendants' statewide exclusion of Islamic schools from TEFA and the resulting denial of equal access to the Program. The legal theories and constitutional violations are common across the subclasses.

29.     **Adequacy:** Adequacy is satisfied because the named Plaintiffs will fairly and adequately protect the interests of the subclasses. Plaintiffs' interests are fully aligned with those of all subclass members: to secure equal access to TEFA, to eliminate Defendants' discriminatory exclusion of Islamic schools, and to restore a fair and neutral application process. Plaintiffs seek uniform declaratory and injunctive relief and do not seek individualized monetary damages that could create conflicts among class members.

30.     The School and Parent Subclasses share a common interest in the same relief. Schools seek approval and participation; parents seek the ability to select those schools using TEFA funds. Both injuries arise from the same conduct—the exclusion of Islamic schools from the Program—and both are remedied by the same class-wide relief.

31.     **Rule 23(b)(2):** Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds generally applicable to the subclasses. Defendants' uniform

refusal to process or approve Islamic schools and their exclusion of those schools from the approved-provider list applies equally to all subclass members.

32.    The relief sought is prospective, uniform, and indivisible. A single injunction requiring Defendants to administer TEFA in a neutral and nondiscriminatory manner—including processing and approving qualified Islamic schools, including them in the approved-provider list, and ultimately allocating TEFA funds in a manner that does not discriminate against Muslim families or Islamic schools—would provide relief to each subclass member at once by restoring equal access to the Program and eliminating the distortion of the application process.

33.    Plaintiffs do not seek individualized monetary relief. Instead, this action challenges a uniform course of conduct and seeks class-wide declaratory and injunctive relief that will resolve the legality of Defendants' actions in one stroke.

34.    **Common issues predominate:** Common issues of law and fact predominate because Defendants' liability turns on a common mode of conduct applied uniformly to all class members. Plaintiffs do not challenge individualized decisions, but rather Defendants' standardized administration of TEFA, including the exclusion of Islamic schools from the approved-provider list and the resulting inability of parents to select those schools in the application process.

35.    These issues are capable of common proof and will produce common answers central to the validity of each claim, including whether Defendants' conduct violates the Free Exercise Clause, Establishment Clause, and Equal Protection Clause, and whether Defendants have unlawfully refused to perform their ministerial duty to approve qualified schools. Any individualized issues are minimal and do not predominate.

36.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendants' challenged conduct arises from the uniform,

statewide administration of TEFA and affects all subclass members in the same manner—through the exclusion of Islamic schools from the approved-provider list and the resulting inability of parents to select those schools in the application process.

37.     Absent class certification, multiple individual actions would risk inconsistent rulings regarding the legality of Defendants' conduct and would impose unnecessary burdens on the Court and the parties. Individual class members—particularly parents facing time-sensitive application decisions—lack a practical ability to obtain complete and timely relief on their own.

38.     A single class action will promote judicial economy, ensure consistent adjudication of common constitutional questions, and provide comprehensive relief that resolves the legality of Defendants' conduct for all affected schools and families at once. The requested relief—requiring Defendants to administer TEFA in a neutral and nondiscriminatory manner—can be implemented through a single order that applies equally to all class members.

39.     **Manageability**: This action is readily manageable as a class action. Plaintiffs' claims arise from Defendants' uniform policies and practices governing the administration of TEFA, including the operation of the application portal and the approved-provider list. Liability will be established through common evidence applicable to all subclass members, including Defendants' policies, directives, and course of conduct.

40.     Because Plaintiffs seek declaratory and injunctive relief under Rule 23(b)(2), the case does not require individualized determinations of damages or liability. A single, classwide injunction or declaratory judgment will resolve the claims of all subclass members in one proceeding.

41.     Accordingly, this action can be efficiently litigated and resolved on a classwide basis without the need for individualized inquiries.

42.    **Notice:** Notice to the class is not required at this stage because Plaintiffs seek certification under Rule 23(b)(2) for declaratory and injunctive relief. Nevertheless, to the extent the Court determines that notice is appropriate, it can be accomplished through reasonable and efficient means, including electronic notice, publication, or direct communication through available school and parent networks.

43.    Because Defendants' conduct is uniform and the relief sought is classwide and indivisible, any notice program can be administered in a manner that is practical and proportional to the nature of the claims and the relief requested.

## IV.    STATUTORY BACKGROUND

44.    In 2025, the Legislature enacted Senate Bill 2 creating the Education Savings Account Program—also known as Texas Education Freedom Accounts (TEFA)—to expand educational choice for Texas families and to provide public funds for approved education-related expenses for participating children. *See* TEX. EDUC. CODE §§ 29.352–.359 (codified from S.B. 2).

45.    The Comptroller must "establish and administer a program to provide funding for approved education-related expenses of children participating in the program." TEX. EDUC. CODE § 29.352(a). The Comptroller must accept parent applications, administer accounts, and preapprove schools as "education service providers." *Id.* §§ 29.356–.358.

46.    The Comptroller "shall approve" an education service provider if the school: (i) is accredited by an organization recognized by the Texas Private School Accreditation Commission or Texas Education Agency; (ii) if serving grades 3–12, annually administers a nationally norm-referenced assessment or a Chapter 39, subchapter B test; and (iii) has operated at least two school years before seeking approval. TEX. EDUC. CODE § 29.358(b)(2); *see also* 34 TEX. ADMIN. CODE § 16.404(a). The provider must be in Texas. TEX. EDUC. CODE § 29.358(c). The statutory "shall approve" directive imposes a purely ministerial duty where the criteria are met.

*Plaintiffs' First Amended Complaint*                                                              14

47.     After preapproval, participation continues unless the school no longer meets the requirements or violates the subchapter or other relevant law, in which case the Comptroller may suspend participation, with notice and a 30-day opportunity to respond and take corrective action. TEX. EDUC. CODE §§ 29.358(h), 29.3585(a), 29.3585(c); *see also* 34 TEX. ADMIN. CODE § 16.405. Preapproval is mandatory when criteria are satisfied; post-approval suspension is the locus for any compliance action.

48.     In September 2025, the Comptroller appointed Mary Katherine Stout as the Program Director over the TEFA Program.

49.     Acting Comptroller Kelly Hancock has emphasized that TEFA is "about empowering families, expanding opportunity and making sure every child can learn in the environment that works best for them."[1]

50.     The Program operates through a limited pool of state funds. If the number of eligible applicants exceeds available Program capacity, the Comptroller must allocate participation through a lottery among eligible applicants, subject to statutory priority categories. *See* TEX. EDUC. CODE § 29.357. Parents seeking to participate in the Program must therefore submit an application identifying the education service provider their child intends to attend.

51.     The statute requires the Comptroller to set the deadline for parents applying to the Program, functionally beginning the Program's generally available public benefit but otherwise does not set any specific requirements about this deadline. TEX. EDUC. CODE § 29.356(a). The Comptroller has announced that the Program will begin operating for the upcoming school year beginning March 17, 2026, at which time parent applications will be processed and participation

---

[1]     *See* https://www.texastribune.org/2025/10/06/texas-school-vouchers-odyssey/.

determined. Schools must be preapproved as education service providers in order for parents to identify and select those schools as part of the Program application process.

52. Although parents may identify or finalize their child's selected education service provider after participation is awarded, parents must decide now whether to apply for the Program and how to plan their child's education for the upcoming school year. Because Defendants have refused to process or approve applications from Islamic schools, parents who wish to enroll their children in those Islamic schools reasonably understand that those schools are not available within the Program. As a result, some parents are choosing not to apply for the Program at all, others are altering their enrollment decisions and considering non-Islamic schools that may participate in the Program, and others are being forced to choose between pursuing Islamic education for their children and seeking TEFA funding. When the application window closes, the lottery will be conducted using only the applications already submitted, and families who declined to apply because their preferred Islamic schools were excluded will not be included in the applicant pool. Defendants' actions therefore distort parents' application and enrollment decisions and impose pressure on parents to forgo their preferred religious educational choices in order to participate in the Program.

## V. FACTUAL BACKGROUND

### A. Bayaan Academy

53. Plaintiff Bayaan Academy Inc. is a for-profit corporation organized under Maryland law, registered to do business in Texas, and managed by a board of directors composed entirely of American citizens who reside in Texas.

54. Founded in 2017 in Maryland, Bayaan relocated to Texas in 2022. It provides education for grades 3–12 and currently educates approximately 1,200 students.

55. Among 110 twelfth-grade completers, graduates have attended Columbia, NYU, Illinois Institute of Technology, University of Houston, George Mason, Worcester Polytechnic Institute, and University of Miami; alumni work across many fields.

56. Bayaan annually administers the nationally recognized DORA (Diagnostic Online Reading Assessment) Test and provides opportunities for civic and community engagement for its students.

57. Bayaan is accredited by Middle States Association and Cognia, both recognized by the Texas Private School Accreditation Commission, and it has operated for more than two school years.

58. On or about January 10, 2026, Bayaan submitted a preapproval application through the Comptroller's online Google form that was made available to certain schools for submission. On January 11, 2026, Bayaan's application was marked as approved in Defendants' online portal. On February 4, 2026, the Houston Chronicle published a story identifying Bayaan Academy as one of only three Islamic schools approved to participate in the program. On that same day, and without notice, Defendants removed Bayaan as an approved school and blocked Bayaan's access to the portal.

59. Bayaan's application provided all requested information and shows compliance with Section 29.358. Neither Bayaan nor its school is owned or controlled by any foreign entity, and it does not raise funds from foreign entities, foreign political organizations, or organizations designated as foreign terrorist organizations. Funding is through tuition and/or capital contributions by its ownership. Plaintiff Bayaan's school exists solely for educational purposes in Texas.

60.     Despite satisfying the criteria, Defendants did not re-instate Bayaan to the approved provider list until after the temporary restraining order issued by this Court. Bayaan received no notice of deficiency or request for additional documentation. The delay impaired and is continuing to harm Bayaan's reputation, planning for the 2026–27 year, and enrollment opportunities that cannot be remedied by money damages.

**B.      Islamic Services Foundation, Brighter Horizons, and Little Horizons**

61.     Plaintiff Islamic Services Foundation (ISF) is a Texas non-profit corporation governed by a board of directors composed entirely of American citizens who reside in Texas.

62.     ISF operates two accredited private schools: Brighter Horizons Academy (grades 1–12) and Little Horizons Academy (pre-K and kindergarten). Both schools are accredited by organizations recognized by the Texas Private School Accreditation Commission and have been in operation for more than two school years.

63.     Brighter Horizons serves more than 1,000 students, has been recognized as an AP Honor School with a dual-credit partnership with Dallas College, and maintains a 100% graduation rate, with graduates attending universities including Yale, Duke, Rice, MIT, Case Western Reserve, SMU, Baylor, Texas A&M, and UT Austin.

64.     Brighter Horizons annually administers the NWEA MAP Test, a nationally norm-referenced assessment instrument; Little Horizons serves pre-K and kindergarten students. The schools comply with the Education Code's objective criteria and applicable law.

65.     Neither ISF nor its schools are owned or controlled by any foreign entity. They do not raise funds from foreign entities, foreign political organizations, or any organization designated as a foreign terrorist organization. Operations are funded through tuition, grants, and local community donations; all revenue is used for educational purposes (teacher salaries, academics, financial aid, facilities, safety).

66.    ISF's schools exist solely for educational and charitable purposes in Texas.

67.    On December 9, 2025, ISF submitted applications to preapprove both schools. ISF provided all requested information and satisfies § 29.358's criteria.

68.    Despite satisfying the criteria, ISF's schools were not placed on the preapproved list until after the temporary restraining order issued by this Court. Throughout the time in which its application was pending but unapproved, ISF received no notice of deficiency or request for additional documentation. The delay impaired and is continuing to harm ISF and its schools' reputations, planning for the 2026–27 year, and enrollment opportunities that cannot be remedied by money damages.

**C.    Plaintiff Excellence Academy**

69.    Plaintiff The Eagle Institute d/b/a Excellence Academy is a Texas non-profit corporation governed by a board of directors composed entirely of American citizens who reside in Texas (and one director in the State of Illinois).

70.    Founded in 2008 in Texas, Excellence Academy opened up its school in McKinney, Texas in 2012. It provides education for grades pre-K to 12 and currently educates approximately 150 students.

71.    This year, Excellence Academy will be graduating its first class of seniors. Alumni of the school will attend The University of Texas at Austin and the University of Texas at Dallas, among other higher education institutions.

72.    Excellence Academy has administered (and will administer in the upcoming school year) the IXL LevelUp Diagnostic Test, a nationally norm-referenced assessment instrument. The school provides opportunities for civic and community engagement for its students.

73.    Excellence Academy is accredited by Cognia, which is recognized by the Texas Private School Accreditation Commission, and it has operated for more than two school years.

74. Excellence Academy exists solely for educational and charitable purposes in Texas.

75. Despite repeated requests to Defendants and their agent Odyssey, Excellence Academy was not allowed to apply to the TEFA Program or submit its application.

76. Despite satisfying the criteria for approval, Excellence Academy was not permitted to apply to participate in TEFA until after this Court issued its temporary restraining order. Throughout the time in which Excellence Academy requested, without response, the ability to apply for the TEFA Program, Excellence Academy received no notice of deficiency or request for additional documentation. The delay impaired and continues to harm Excellence Academy's reputation, planning for the 2026–27 year, and enrollment opportunities that cannot be remedied by money damages.

**D. Parent Plaintiffs Layla Daoudi, Muna Hamadah, Farhana Querishi and Zubair Ulhaq**

77. Plaintiff Layla Daoudi is a Texas citizen residing in Harris County. Her children attend Houston Quran Academy - Katy, and she wishes to use TEFA funds at her children's school for the upcoming academic year. Houston Quran Academy – Katy timely submitted an application to participate in the TEFA program, but its application was not approved until after this Court issued its temporary restraining order.

78. Plaintiff Muna Hamadah is a Texas citizen residing in Dallas County. Her children attend ISF's schools, and she wishes to use TEFA funds at her children's schools for the upcoming academic year.

79. Plaintiff Farhana Querishi is a Texas citizen residing in Collin County. Her children attend Excellence Academy in McKinney, Texas, and she wishes to use TEFA funds at her children's school for the upcoming academic year. Excellence Academy timely requested to apply

to participate in the TEFA program, but its application was not accepted or approved until after this Court's temporary restraining order.

80.    Plaintiff Zubair Ulhaq is a Texas citizen residing in Harris County. Texas. He has a special needs child and another child who will attend Islamic school in Harris County. His children's preferred Islamic school is eligible to receive TEFA funds.

81.    Daoudi, Hamadah, Querishi and Ulhaq—and similarly situated parents—depend on the preapproved list to complete the parent application. If a desired school is not selectable, parents cannot submit an application consistent with the Program's design.

82.    Defendants have announced March 17, 2026 as the parent-application deadline. This Court extended the deadline by two weeks, to March 31, but the Comptroller has publicly announced that the lottery will begin in April.  Once the lottery begins, the applicant pool is fixed. Exclusion of Islamic schools and deterrence of Muslim applicants prior to the deadline effectively precludes parents from selecting them for the year.

83.    Adding to the injury, the TEFA program automatically benefits siblings of applicants who are successful in the lottery—meaning that the impacts will reverberate well beyond year one of the program.

84.    As a practical matter, families, including the Parent Plaintiffs, who intend to enroll their children in Islamic schools are responding to the State's exclusion of those schools from the approved-provider list by choosing not to apply for the program at all during the current application window. Because the application portal requires parents to identify an approved education service provider when submitting their application, parents who intend for their children to remain at those schools understand that they cannot direct program funds to those schools if they apply. Rather

than apply for funding tied to a school their children will not attend, many parents are simply refraining from submitting applications before the deadline.

85.     Parents who intend to keep their children enrolled at Islamic schools are therefore faced with a practical dilemma during the application window. Despite the extension of the March 17, 2026 deadline by this Court, many parents still must anticipate attending a school from the State's approved-provider list even though they do not intend to enroll their children there. If they decline to apply because their preferred Islamic schools are excluded, their children will not be included in the applicant pool used to allocate TEFA accounts through the statutory lottery.

86.     Those parental decisions directly affect the composition of the applicant pool that will be used to allocate program benefits. Once the application window closes, the State conducts a lottery among the applications that were submitted. Because families intending to enroll their children in Islamic schools are refraining from applying while those schools remain excluded from the approved-provider list, those families will not be included in the lottery. The result is that the pool of applicants from which program participants are selected will already exclude many families who prefer Islamic schools, including the families of the Parent Plaintiffs.

87.     Once the lottery occurs, the program's participants and waiting list for that school year will be fixed based on the applications received during the window. At that point, even if the State later adds or restores Islamic schools to the approved-provider list, the families who declined to apply during the application period because their choice of school was not listed as an approved provider will not be included in the lottery pool and will have effectively lost their opportunity to compete for program funding during that cycle. Once the lottery occurs, the program's participants and waiting list for that school year will be fixed based on the applications submitted during the window. Families who declined to apply because their preferred Islamic schools were excluded

will not be included in that pool, and their opportunity to compete for TEFA funding for that cycle will be lost.

88.     What is more, Defendants have made public statements indicating an intent to avoid allocating any TEFA funds to Islamic schools, including the School Plaintiffs—an intent that can be achieved only by rigging the lottery or reversing the approvals of those Islamic schools approved so far. Among other such statements, in a letter to Attorney General Ken Paxton dated March 24, 2026, which letter was made publicly available, Defendant the Comptroller, while lamenting the Court's temporary restraining order, emphasized (i) that this Court "did not, however, order any state funds to flow to the plaintiff schools; and (ii) that pursuant to the temporary restraining order, "the court has [only] *temporarily* allowed" Islamic schools to participate in TEFA (emphasis added). The same letter asked that the Attorney General provide Defendant the Comptroller with the "details about the terror ties of Houston Quran Academy— and any such ties for other plaintiff schools as you may uncover through diligent investigation," openly admitting that Defendants' failure to approve Islamic schools for TEFA participation was neither the produce of innocent administrative delay nor supported by any actual evidence (much less a hearing consistent with due process).

**E.     Defendants' implementation of TEFA and exclusion of Islamic schools**

89.     The parent application requires selecting a school from a preapproved drop-down list. As of March 11, the day this suit was filed, over 2,000 private schools had been approved,

including hundreds of schools affiliated with other religious traditions,[2] but until this Court's temporary restraining order, no K through 12 Islamic schools appeared on the list.

90.     Defendants have provided no explanation, no notice of deficiency, and no process for challenging denial or removal (as with Bayaan's unexplained removal). The School Plaintiffs are not listed on any federal or state divestment list. No School Plaintiff has been notified of any deficiency in the information provided; nor have they received any request for additional documentation. This lack of transparency in the face of the School Plaintiffs' repeated efforts to obtain approval, combined with the complete absence of any Islamic school from the Program until the Court issued its temporary restraining order (which Defendants opposed), supports an inference that the School Plaintiffs have been excluded because of their Islamic religious identity. too does the contrast between the position Defendants took before this Court in connection with the TRO proceeding—namely, that Islamic schools had not been approved for reasons related to good-faith, non-discriminatory administrative procedures.

91.     But there is more than an inference here. The discriminatory intent is express. Since the filing of this suit, Defendants have made plain and public their intent to discriminate against these schools on the basis of their Islamic faith, and to utilize the machinery of the state to do so. On March 24, 2026, Defendant Kelly Hancock sent a letter to Attorney General Kenneth Paxton requesting General Paxton to create evidence where Hancock had none and and search for nonexistent "ties to terrorism" that Hancock could use to justify his actions to this Court.

---

[2] For instance, the TEFA website (Schoolfinder) reflects that, as of March 11, 2026, in the Houston and Dallas-Fort Worth areas alone, 128 schools with the word "Christian" in their name and another 67 with the word "Catholic" in their name have been approved for the program.

92.     Defendants' exclusion of Islamic schools during the operative application period materially altered the conditions under which parents evaluated TEFA participation. Parents were forced to make decisions regarding enrollment, applications, and educational planning without access to Islamic school options. Schools suffered ongoing and concrete reputational harm due to their prolonged and unexplained exclusion.

93.     Even if Defendants now purport to grant access or approval to Islamic schools, such late-stage actions do not restore the lost opportunity for parents to evaluate and select schools on equal terms within the original timeline of the Program.

94.     Parents rely on timely and accurate public information regarding approved schools, application deadlines, and program conditions in deciding whether and how to participate in TEFA.

95.     Defendants' conduct created confusion and uncertainty regarding the availability of Islamic schools, and any late-stage correction—without sufficient time for dissemination and response—fails to cure that informational injury.

96.     The composition of the TEFA applicant pool—including which families applied, when they applied, and what options they considered—has already been shaped by Defendants' prior exclusionary conduct. That distortion cannot be undone after the fact without court intervention.

97.     Defendants' conduct therefore affects not only whether Plaintiffs may participate in TEFA, but whether they may participate on equal footing within the Program itself.

98.     The unexplained silence is also damaging School Plaintiffs' reputations, interfering with decision-making for the upcoming school year, and causing immediate loss of enrollment opportunities that cannot be adequately remedied through monetary damages. Defendants' refusal

to perform this ministerial duty to approve the School Plaintiffs and other Islamic Schools is also harming the hundreds of Texas families (including the Parent Plaintiffs) who should have their religious choices and practices respected by the government and who need to know whether their choice to enroll their children in an Islamic school will be honored by Defendants.

99.     The recent and current posture suggests alignment with recent rhetoric linking all Islamic organizations to "terrorism." In November 2025, the Governor issued public statements announcing that he was "designating" the Council on American-Islamic Relations ("CAIR") as a foreign terrorist organization. Shortly thereafter, the Comptroller asked the Texas Attorney General for guidance on providing funds to (unnamed) schools "with ties to a foreign terrorist organization, a transnational criminal network, or any adversarial foreign government," citing in that same letter the Governor's November 2025 designation of CAIR. The Comptroller subsequently announced in his campaign for re-election that he successfully "excluded schools with terrorist ties from Texas Education Freedom," again citing CAIR, and stated that "[n]o Texas tax dollars will be funneled to bad actors that are hostile to our country, undermine our values, or seek to do us harm." The Comptroller provided no evidence, and cited no finding consistent with due process, that the School Plaintiffs are "hostile to our country, undermine our values, or seek to do us harm." No such evidence or finding exists.

100.    On March 24, 2026, the Defendant Hancock sent a letter to General Paxton, asking Paxton to investigate an Islamic school so Hancock could use the fruits of his investigation to exclude the school. But even if the search turned up nothing, presumably like Hancock's own, Hancock asked Paxton to strip the Islamic school of its corporate charter: "The question is not

whether these schools should be able to participate in TEFA, it is why they were able to operate in Texas in the first place."[3]

101.    These statements, coupled with the uniform exclusion of Islamic schools, support a reasonable inference that Defendants' actions are motivated by disapproval of Islamic religious identity and practice.

102.    The combined effect is to deny otherwise qualified Islamic schools access to a generally available public program and to prevent parents from choosing those schools, causing immediate and irreparable harm to reputation, enrollment, and the exercise of religious education choices. Parents who seek to enroll their children in Islamic schools are also being denied access to generally available public funds based on their faith-based choices.

103.    Once that deadline to apply passes, the lottery begins and the applicant pool is fixed. Exclusion of Islamic schools prior to the deadline effectively precludes parents from selecting them for the year and effectively begins a program that unconstitutionally discriminates against Islamic entities and individuals.

104.    The Defendants' failure to approve the School Plaintiffs' applications (and those of other Islamic schools that meet the objective criteria) was not a mere administrative delay—it was, in practical effect, a denial. The statute imposes no waiting period, no secondary review, and no discretion once the objective criteria are satisfied. A failure to approve that extends past the operative deadline is therefore not mere delay of a pending application. It is completed exclusion accomplished through inaction—inaction that conspicuously targets Islamic schools, but not other faith-based schools.

---

[3] https://perma.cc/6D7C-8BBC

*Plaintiffs' First Amended Complaint*                                                                 27

105.    Defendants have asserted and exercised discretion to delay, condition, or revisit approvals, even though the governing statute imposes a mandatory, ministerial duty to approve qualifying schools.

106.    Any recent approvals or access provided to Islamic schools are not accompanied by binding policy changes or enforceable limitations on Defendants' authority, and therefore remain discretionary and subject to reversal. The Defendant Comptroller's March 24 letter calls the approvals of certain Islamic schools following the temporary restraining order merely "temporary," a recognition not only of Defendants' ability to reverse those and other approvals but of Defendants' apparent intent to do so.

107.    There is no secular, non-discriminatory criterion that would explain the blanket exclusion of every eligible Islamic school generally, or the School Plaintiffs particularly, while schools of other religious affiliations have been approved through the same process, under the same statutory criteria. This uniform exclusion of schools sharing a single religious identity, and only that identity, is an unconstitutional preference towards non-Islamic religions, standing alone. It further gives rise to a reasonable inference that Defendants' refusal to approve the School Plaintiffs and other Islamic schools is based on their Islamic religious affiliation.

108.    The resulting harm is real and immediate. Private schools compete with one another for the same limited pool of teachers and other educational resources. In that market, teacher compensation represents one of the largest operating expenses for most private schools, including the School Plaintiffs.

109.    When public funding is introduced into a private market, it often affects the price of shared inputs within that market. Schools receiving new public funding can increase salaries, expand facilities, or invest additional resources in their programs. Schools that do not receive the

same funding nevertheless compete in the same labor market for teachers and staff and must respond to those increased costs in order to retain employees.

110.    TEFA will introduce new public funding into the Texas private school market. Schools that participate in the program will receive substantial additional revenue through program accounts used to pay tuition and related educational expenses. Those schools can use that revenue to increase teacher compensation and make other investments designed to attract students and staff. Schools that do not receive TEFA funds, including the School Plaintiffs, will continue to compete with those participating schools for teachers and other personnel in the same labor market.

111.    As a result, increases in teacher compensation or other costs driven by TEFA-funded schools will affect the entire private school market. Schools that do not receive TEFA funding must either increase salaries and operating expenditures without receiving additional revenue or risk losing teachers and staff to schools that do receive those funds.

112.    These effects are already understood by families and school administrators in the private school community. Parents and school officials recognize that TEFA funding will influence tuition levels, teacher compensation, and other costs across the private school market, including at schools that do not receive TEFA funds. Plaintiffs therefore bring this action to remedy Defendants' unlawful refusal to process and approve the School Plaintiffs' applications and the general exclusion of Islamic schools from the Program.

113.    Defendants' conduct violates the constitutional guarantees of religious neutrality, equal treatment, and freedom of worship secured by the First and Fourteenth Amendments to the United States Constitution. By refusing to process or approve the School Plaintiffs' and other Islamic schools' applications while administering a generally available public program,

Defendants are discriminating against Islamic schools and the parents who seek to enroll their children in them on the basis of religion.

## VI.   DEFENDANTS' POST-TRO CONDUCT DOES NOT MOOT PLAINTIFFS' CLAIMS

114.   Defendants cannot moot this case through voluntary cessation or by providing selective or temporary relief to individual Plaintiffs. The challenged conduct arises from Defendants' ongoing administration of a statewide program and is capable of repetition at any time during the application process and in future program cycles. Defendants retain authority over approval, processing, and participation decisions and have not made any binding commitment that the exclusion of Islamic schools will not recur. Defendants removed Plaintiff Schools from the approved list in the past with no evidence, notice or justification. After the commencement of this suit, Defendant Hancock made public and bare statements showing an ongoing intent to discriminate on the basis of Plaintiffs' religious beliefs. Any late-stage or partial approvals would not eliminate the ongoing effects of Defendants' conduct, including distortion of the application process, exclusion from the applicant pool, and denial of equal opportunity to compete for program benefits. Plaintiffs' claims are also capable of repetition yet evading review, given the time-limited nature of TEFA application windows and the Program's recurring structure. Accordingly, this case presents a live controversy.

## VII. CAUSES OF ACTION

### COUNT I
**Violation of the First Amendment to the United States Constitution**
**(42 U.S.C. § 1983 – Free Exercise – Lack of Neutrality)**
**(All Defendants)**

115.   Plaintiffs incorporate by reference the preceding paragraphs.

116.   The Free Exercise Clause requires that government action be neutral toward religion.

117.    Defendants have acted in a manner that is not neutral by excluding Islamic schools from the Program based on their religious identity and practices.

118.    Defendants' conduct reflects intolerance toward Islamic religious beliefs and practices, including selective refusal to process or approve applications submitted by Islamic schools.

119.    Defendants' statements, policies, and practices demonstrate hostility toward religion and cast doubt on the neutrality of the Program's administration.

120.    Because Defendants' conduct is not neutral, it is subject to strict scrutiny.

121.    Defendants cannot satisfy that standard.

122.    Defendants' actions violate the Free Exercise Clause. Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the First Amendment.

## COUNT II
### Violation of the First Amendment to the United States Constitution
### (42 U.S.C. § 1983 – Free Exercise – Not Generally Applicable)
### (All Defendants)

123.    Plaintiffs incorporate by reference the preceding paragraphs.

124.    Government action burdening religious exercise must be generally applicable.

125.    Defendants have applied TEFA in a manner that is not generally applicable by approving or processing applications from other similarly situated education providers while excluding Islamic schools.

126.    Defendants have exercised discretion to treat religious applicants less favorably than comparable secular or non-targeted applicants.

127.    Because Defendants' conduct is not generally applicable, it is subject to strict scrutiny.

*Plaintiffs' First Amended Complaint*                                                                           31

128.   Defendants cannot demonstrate that their conduct is narrowly tailored to serve a compelling governmental interest.

129.   Defendants' actions violate the Free Exercise Clause.

130.   Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the First Amendment.

**COUNT III**
**Violation of the First Amendment to the United States Constitution**
**(42 U.S.C. § 1983 – Free Exercise – Religious Status and Use Discrimination)**
**(All Defendants)**

131.   Plaintiffs incorporate by reference the preceding paragraphs.

132.   The Free Exercise Clause prohibits exclusion from a generally available public benefit based on religious status or religious exercise.

133.   Defendants have excluded Islamic schools from TEFA because they are religious and because they provide religious education grounded in the Islamic faith.

134.   This exclusion penalizes Plaintiffs for both their religious identity and their religious conduct.

135.   Defendants have therefore imposed a categorical exclusion based on religion.

136.   Such discrimination is subject to strict scrutiny and cannot be justified.

137.   Defendants' actions violate the Free Exercise Clause.

138.   Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the First Amendment.

**COUNT IV**
**Violation of the First Amendment to the United States Constitution**
**(42 U.S.C. § 1983 – Establishment Clause – Denominational Preference)**
**(All Defendants)**

139.    Plaintiffs incorporate by reference the preceding paragraphs.

140.    The Establishment Clause mandates governmental neutrality among religions and prohibits denominational preference.

141.    Defendants have imposed a denominational preference by excluding Islamic schools from TEFA while permitting participation by other schools, including other religious or non-Islamic institutions.

142.    Defendants have differentiated among religions based solely on theological lines.

143.    Such denominational discrimination is subject to strict scrutiny and is presumptively unconstitutional.

144.    Defendants' actions violate the Establishment Clause.

145.    Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the First Amendment.

**COUNT V**
**Violation of the First Amendment to the United States Constitution**
**(42 U.S.C. § 1983 – Freedom of Association)**
**(All Defendants)**

146.    Plaintiffs incorporate by reference the preceding paragraphs.

147.    The First Amendment protects the right of individuals to associate for the purpose of engaging in religious exercise.

148.    Parent Plaintiffs seek to associate with Islamic schools for the purpose of educating their children in accordance with their religious beliefs.

149. Defendants' exclusion of Islamic schools from TEFA prevents that association and burdens Plaintiffs' ability to engage in collective religious exercise.

150. This interference is subject to strict scrutiny and cannot be justified.

151. Defendants' actions violate Plaintiffs' rights of association under the First Amendment.

152. Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the First Amendment.

**COUNT VI**
**Violation of the First Amendment to the United States Constitution**
**(42 U.S.C. § 1983 – Free Exercise Clause – Unconstitutional Conditions)**
**(All Defendants)**

153. Plaintiffs incorporate by reference the preceding paragraphs.

154. The government may not condition access to a public benefit on the surrender of constitutional rights.

155. Defendants have conditioned participation in TEFA on Plaintiffs' willingness to forgo or alter their religious character and practices.

156. Plaintiffs cannot participate in TEFA without compromising their religious beliefs and mission.

157. This constitutes an unconstitutional condition on the exercise of religion.

158. Defendants' actions violate the Free Exercise Clause.

159. Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the First Amendment.

**COUNT VII**

*Plaintiffs' First Amended Complaint*　　　　　　　　　　　　　　　　　　　　34

**Violation of the Fourteenth Amendment to the United States Constitution**
**(42 U.S.C. § 1983 – Equal Protection Clause – Religious Discrimination)**
**(All Defendants)**

160. Plaintiffs incorporate by reference the preceding paragraphs.

161. The Equal Protection Clause prohibits discrimination on the basis of religion.

162. Plaintiffs are similarly situated to other schools and applicants participating in TEFA.

163. Defendants have treated Plaintiffs differently by excluding them from the Program based on their religious affiliation and practices.

164. This differential treatment is not supported by any compelling governmental interest.

165. Defendants' actions violate the Equal Protection Clause.

166. Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the First Amendment.

## COUNT VIII
**Violation of the Fourteenth Amendment to the United States Constitution**
**(42 U.S.C. § 1983 – Procedural Due Process)**
**(All Defendants)**

167. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

168. The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law.

169. The Texas Education Freedom Account Program establishes objective statutory criteria governing the approval of schools as "education service providers." Under the governing

statute, the Comptroller must approve an education service provider that satisfies the statutory eligibility requirements.

170. Because the statutory framework mandates approval when those criteria are met, it creates a legitimate claim of entitlement for schools that satisfy the statutory requirements and apply for participation in the Program.

171. The School Plaintiffs, and the additional schools in which certain Parent Plaintiffs desire to enroll their children, submitted completed applications seeking approval as education service providers under the Program and satisfied the statutory criteria for approval.

172. Defendants have refused to process or approve those applications and have failed to provide notice of any alleged deficiency, explanation for the refusal to approve, or opportunity to respond.

173. By refusing to process or approve the School Plaintiffs' applications and by failing to provide notice and an opportunity to respond, Defendants have deprived Plaintiffs of a protected property interest created by state law without due process of law.

174. Defendants' actions also deprive the Parent Plaintiffs of the ability to participate in the Program on equal terms by using Program funds for the education of their children at Islamic schools.

175. Defendants' unconstitutional conduct is ongoing and will continue to deprive Plaintiffs of their due process rights unless enjoined by this Court.

176. Pursuant to 42 U.S.C. § 1983, Plaintiffs seek declaratory and prospective injunctive relief prohibiting Defendants from refusing to process or approve the School Plaintiffs' applications without providing the procedural protections required by the Fourteenth Amendment.

177.    Plaintiffs therefore request declaratory relief and temporary, preliminary, and permanent injunctive relief requiring Defendants to administer the Program in a manner consistent with the Due Process Clause of the Fourteenth Amendment.

**COUNT IX**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
**(42 U.S.C. § 1983)**
**(All Defendants)**

178.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

179.    The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny any person within its jurisdiction the equal protection of the laws.

180.    Defendants administer the Texas Education Freedom Account Program and are responsible for receiving, reviewing, and approving applications from private schools seeking to participate in the Program as education service providers.

181.    The statutory framework governing the Program establishes objective criteria for approval of private schools seeking to participate as education service providers.

182.    The School Plaintiffs and the additional Islamic schools in which the Parent Plaintiffs intend to enroll their children satisfy the statutory requirements for approval, including accreditation by a recognized accrediting organization, operation for the required period of time, and administration of the required assessments for applicable grade levels.

183.    These schools are therefore similarly situated to other private schools that satisfy the statutory requirements for approval as education service providers under the Program.

184.    Defendants have approved, processed, or otherwise allowed participation by other private schools—including other religious schools—that satisfy the statutory requirements for participation in the Program.

185.    Defendants have refused to process or approve the School Plaintiffs' applications, or the applications of other Islamic Schools in which the Parent Plaintiffs intend to enroll their children, while allowing similarly situated private schools, including other religious schools, to participate in the Program.

186.    Defendants' refusal to approve or process these applications is based on the religious character of the applying schools and the fact that they provide Islamic faith-based education.

187.    By treating Islamic schools differently from other similarly situated private schools seeking participation in the Program, Defendants have created and applied a classification based on religion.

188.    Classifications based on religion are inherently suspect and are subject to the most exacting scrutiny under the Equal Protection Clause. A State may not treat similarly situated entities differently on the basis of religion unless the classification is narrowly tailored to serve a compelling governmental interest.

189.    Defendants' exclusion of the School Plaintiffs and other Islamic schools from participation in the Program cannot satisfy that constitutional standard. This disparate treatment is not supported by any compelling governmental interest and is not narrowly tailored to serve any legitimate governmental objective.

190.    As a result of Defendants' discriminatory conduct, the School Plaintiffs have been excluded from participation in the Program, and the Parent Plaintiffs have been denied the opportunity to use Program funds for their children's education at Islamic schools.

191.    Defendants' unconstitutional conduct is ongoing and will continue to deny Plaintiffs equal protection of the laws unless enjoined by this Court.

192.　Pursuant to 42 U.S.C. § 1983, Plaintiffs seek declaratory and prospective injunctive relief prohibiting Defendants from discriminating against the School Plaintiffs and the Parent Plaintiffs on the basis of religion in the administration of the Program.

## VII.　REQUESTS FOR TEMPORARY RELIEF (TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION)

193.　The TEFA Program was enacted to expand educational opportunities for Texas families by allowing parents to direct public education funds to schools that meet the Program's statutory requirements. But as the Program approaches its initial implementation, Defendants have refused to process or approve applications submitted by Islamic schools that satisfy every statutory criterion for participation.

194.　This refusal has immediate consequences. Parents who wish to enroll their children in those schools must now decide whether to apply for TEFA benefits while the schools remain excluded from the Program, to abandon the religious educational choices they would otherwise make for their children, or to forgo applying for the benefits of the Program altogether. As a result, Defendants' conduct is already distorting parental application decisions and pressuring families to choose between accessing a generally available public benefit and pursuing Islamic education for their children.

195.　Without emergency relief, the Program's initial implementation will proceed while Islamic schools remain excluded. Once the application deadline passes and participation decisions are made, the effects of Defendants' unlawful exclusion will be fixed in the Program's first year before this Court can determine the legality of Defendants' actions.

196.　The Constitution does not permit the State to administer a generally available public program in a manner that discriminates on the basis of religion or burdens the free exercise of religious belief. Plaintiffs therefore respectfully request that the Court enter a temporary restraining

order preserving the status quo until the Court can hear and decide Plaintiffs' request for a preliminary injunction.

197.    Plaintiffs seek a temporary restraining order preventing enforcement of the application deadline for parent applications and preventing any determinations regarding participation, funding status, or allocation of benefits under TEFA until the Court rules on Plaintiffs' request for a preliminary injunction.

198.    Plaintiffs further seek a preliminary injunction enjoining Defendants from implementing or enforcing the Program—including enforcement of the parent application deadline, any determinations regarding participation or funding status, and any allocation or disbursement of Program funds—until this litigation is resolved or until Defendants cease excluding the School Plaintiffs, and the additional Islamic Schools in which the Plaintiff Parents intend to enroll their children, from participation in the Program.

199.    Emergency relief is necessary to prevent the TEFA Program from being implemented in a manner that unlawfully excludes Islamic schools and the families who wish to attend them before this Court can review the legality of Defendants' conduct. Without immediate judicial intervention, the Program's initial implementation will occur while Islamic schools, including the School Plaintiffs and other schools in which the Parent Plaintiffs intend to enroll their children, remain excluded from participation, distorting parental application decisions and imposing ongoing constitutional injury.

**LEGAL STANDARD**

200.    The standard for issuing a temporary restraining order is the same as the standard governing preliminary injunctions. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). Under Federal Rule of Civil Procedure 65, a plaintiff must demonstrate (1) a substantial likelihood

of success on the merits; (2) a substantial threat of irreparable injury absent relief; (3) that the threatened injury outweighs any harm the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

### PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

201.    Plaintiffs are likely to succeed on the merits because Defendants are administering a generally available public program in a manner that discriminates on the basis of religion and burdens Plaintiffs' free exercise of religion. The School Plaintiffs and the additional Islamic Schools in which the Parent Plaintiffs intend to enroll their children satisfy all statutory requirements for participation in the Program, yet Defendants have refused to process or approve their applications while allowing other schools—including other religious schools—to participate.

202.    By excluding Islamic schools from a generally available public benefit and thereby pressuring parents to abandon their preferred religious educational choices in order to participate in the Program, Defendants are violating the First and Fourteenth Amendments to the United States Constitution and federal law.

### PLAINTIFFS FACE IMMEDIATE AND IRREPARABLE HARM

203.    Plaintiffs will suffer immediate and irreparable harm absent temporary relief. Defendants' refusal to process or approve Islamic schools' applications is already distorting parental decision-making. Parents, including the Parent Plaintiffs, who wish to enroll their children in the Islamic schools, including the School Plaintiffs, are being forced to decide whether to apply for TEFA benefits while those schools remain excluded, or to abandon their preferred religious educational choices in order to pursue Program funding. This irreparably harms Islamic schools'

reputation as well. Not to mention, being forced into this quandary against their faith irreparably harms all Plaintiffs' rights under the Constitution.

204.    Once the application deadline passes and the Program proceeds to determine participation and allocate benefits, the effects of Defendants' unlawful exclusion will be fixed in the Program's initial implementation. At that point, the constitutional injuries inflicted on Plaintiffs cannot be fully remedied after the fact.

205.    Because the lottery will be conducted using only the applications submitted before the deadline, the exclusion of Islamic schools during the application window is already shaping the composition of the applicant pool. Parents who refrain from applying because their preferred Islamic schools are not listed as approved providers will be excluded from the lottery altogether. Once the lottery occurs, the resulting allocation of TEFA accounts and waiting list for the upcoming school year will be fixed based on that distorted applicant pool.

206.    Violations of constitutional rights—including the free exercise of religion and equal protection of the laws—constitute irreparable injury as a matter of law. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)). The U.S. Supreme Court reiterated this principle just three weeks ago. *See Mirabelli v. Bonta*, No. 25A810, 2026 WL 575049, at *3 (U.S. Mar. 2, 2026) (citing *Roman Catholic Diocese*, 592 U.S. at 19) ("The denial of plaintiffs' constitutional rights during the potentially protracted appellate process constitutes irreparable harm.").

### THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR RELIEF

207.    The balance of equities strongly favors temporary relief. Preserving the status quo while this Court considers the legality of Defendants' conduct will impose no meaningful burden

on Defendants, especially since the upcoming parent-application deadline is not mandated by law at any specific date. By contrast, allowing the Program to proceed while Islamic schools remain excluded will impose immediate constitutional injury on Plaintiffs.

208.    The public interest likewise favors relief. The public has a strong interest in the neutral administration of generally available public programs and in ensuring that government officials do not discriminate on the basis of religion in the distribution of public benefits.

209.    Plaintiffs are prepared to post security in an amount determined by the Court. Because the requested relief will merely preserve the status quo and will not impose financial harm on Defendants, Plaintiffs respectfully request that the Court set the bond at a nominal amount.

## VIII.    JURY DEMAND

210.    Plaintiffs demand a jury on all issues so triable.

## IX.    CONCLUSION AND REQUESTS FOR RELIEF

211.    For the foregoing reasons, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

### A.  Class Certification Relief

1.  Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a);

2.  Appoint Plaintiffs as representatives of the School Subclass and Parent Subclass;

3.  Appoint undersigned counsel as class counsel pursuant to Rule 23(g).

### B.  Temporary Relief

1.  Continue the Temporary Restraining Order preventing enforcement of the March 17, 2026 deadline for parent applications and preventing any determinations regarding participation, funding status, or allocation of

benefits under the Texas Education Freedom Account Program until the Court rules on Plaintiffs' request for preliminary injunctive relief.

2. After notice and hearing, issue a Preliminary Injunction requiring Defendants to administer the Program in a manner consistent with the United States Constitution and federal law, including by:

    i. enjoining enforcement of parent application deadline and any determinations regarding participation, funding status, or allocation or disbursement of Program funds;

    ii. prohibiting Defendants from excluding the School Plaintiffs and the additional schools in which the Parent Plaintiffs intend to enroll their children from participation in the Program on the basis of religion, pending final resolution of this litigation.

## C. Final Relief

1. After trial on the merits, enter a Declaratory Judgment declaring that Defendants' actions and policies described herein violate the United States Constitution and federal law.

2. Issue a Permanent Injunction prohibiting Defendants from administering the Texas Education Freedom Account Program in a manner that discriminates on the basis of religion or excludes Islamic schools or Muslim families from participation in the Program on grounds other than those that are statutorily enumerated.

3. Issue a Permanent Injunction requiring Defendants to process and evaluate the School Plaintiffs' applications for participation in the Program, and the

applications of those additional schools in which the Parent Plaintiffs intend to enroll their children, in accordance with the statutory criteria and the procedural protections required by the Due Process Clause of the Fourteenth Amendment.

4. Declare that Defendants have a mandatory duty under Texas Education Code § 29.358(b) to approve education service providers that satisfy the statutory criteria.

## C. Fees and Costs

1. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law.

## D. Other Relief

1. Grant such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

**Dated:** March 30, 2026.

### ARAMBULA TERRAZAS PLLC

By: /s/ *Eric A. Hudson*
Eric A. Hudson
**Attorney-in-Charge**
State Bar No. 24059977; Fed. Id. No. 1000759
ehudson@atlawpllc.com
Cole P. Wilson
State Bar No. 24122856; Fed. Id. No. 3864133
cwilson@atlawpllc.com
1001 S. Capital of Texas Highway, Bldg. L, Suite 250
Austin, Texas 78746
512.904.0200

*Plaintiffs' First Amended Complaint*                                          45

**ATTORNEYS FOR PLAINTIFFS
ISLAMIC SERVICES FOUNDATION
AND BAYAAN ACADEMY INC.**

*Additional Counsel listed on following page*


**CERTIFICATE OF SERVICE**

I certify that on March 30, 2026, a true and correct copy of the foregoing instrument was served on all counsel of record via the Court's electronic filing system. All Defendants have been served with the Amended Complaint.

By: /s/ *Eric A. Hudson*
Eric A. Hudson

| WRIGHT, CLOSE, BARGER & GUZMAN LLP | EDWARDS SUTARWALLA SAMANI LLP |
|---|---|
| **By:** */s/ Maha Ghyas (w/ permission)* <br> Maha Ghyas <br> State Bar No. 24138115; Fed. ID 3863190 <br> mghyas@wcbglaw.com <br> Bradley W. Snead <br> State Bar No. 24049825; Fed ID1127744 <br> bsnead@wcbglaw.com <br> Michael Adams-Hurta <br> State Bar No. 24097860; Fed. ID 3290975 <br> adams-hurta@wcbglaw.com <br> One Riverway Dr., Suite 2200 <br> Houston, TX 77056 <br><br> **ATTORNEYS FOR PLAINTIFFS ISLAMIC SERVICES FOUNDATION, BAYAAN ACADEMY INC. AND MUNA HAMADAH** | By:  */s/ Murtaza F. Sutarwalla  (w/ permission)* <br> Murtaza F. Sutarwalla <br> State Bar No. 24056398; Fed. ID 2589991 <br> Mansoor Broachwala <br> Illinois State Bar No. 6326633; Fed. ID 3943228 <br> 602 Sawyer St., Suite 490 <br> Houston, Texas 77007 <br> Phone: (713) 565-1353 <br> Email: murtaza@esslawpartners.com <br> Email: mansoor@esslawpartners.com <br><br> **ATTORNEYS FOR PLAINTIFFS BAYAAN ACADEMY INC., THE EAGLE INSTITUTE, FARHANA QUERISHI, LAYLA DAOUDI, AND ZUBAIR ULHAQ** |
| **GIBBS & BRUNS, LLP** <br><br> By: */s/ Ayesha Najam (with permission)* <br> Ayesha Najam <br> **Attorney-in-Charge for Below Plaintiffs** <br> State Bar No. 24046507; Fed. ID 605948 <br> anajam@gibbsbruns.com <br> Michael Davis <br> State Bar No. 24109793; Fed. ID 3588027 <br> mdavis@gibbsbruns.com <br> Gibbs & Bruns LLP <br> 1100 Louisiana, Suite 5300 <br> Houston, Texas 77002 <br> Tel.: (713) 650-8805 <br> Fax: (713) 750-0903 <br><br> **ATTORNEYS FOR PLAINTIFFS THE EAGLE INSTITUTE, FARHANA QUERISHI, AND LAYLA DAOUDI** | **LAW OFFICES OF OMAR KHAWAJA PLLC** <br><br> By: */s/ Omar Khawaja (with permission)* <br> Omar Khawaja <br> State Bar No: 24072181; Fed. ID 3521501 <br> omar@attorneyomar.com <br> Abdul Rahman Farukhi <br> State Bar No. 24065220; Fed. ID 3291830 <br> abdul@attorneyomar.com <br> 5177 Richmond Ave., Suite 1065 <br> Houston, Texas 77056 <br> Telephone: (281) 888-2339 <br> Fax: (281) 888-2421 <br><br> **ATTORNEYS FOR PLAINTIFFS BAYAAN ACADEMY INC., THE EAGLE INSTITUTE, FARHANA QUERISHI, LAYLA DAOUDI, AND ZUBAIR ULHAQ** |