**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **BAYAAN ACADEMY, INC.**, et al.,<br><br> *Plaintiffs*,<br><br>v.<br><br>**KELLY HANCOCK**, et al.,<br><br> *Defendants*. | CIVIL ACTION NO. 4:26-CV-1960<br>*Lead*<br><br><br>NO. 4:26-cv-1675<br>*Consolidated* |

**DEFENDANTS KELLY HANCOCK, OFFICE OF THE TEXAS COMPTROLLER OF
PUBLIC ACCOUNTS, AND MARY KATHERINE STOUT'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Defendants, Kelly Hancock, the Office of the Texas Comptroller of Public Accounts, and Mary Katherine Stout ("CPA Defendants") respond to Plaintiff's motion to compel (ECF 28), respectfully stating:

**Procedural History**

On March 17, 2026, this Court issued a Temporary Restraining Order ("TRO") that directed, inter alia, Defendants to provide the Plaintiff schools with the means necessary to submit TEFA applications within twenty-four hours, and to thereafter permit those applications to be received and processed in the ordinary course of the TEFA program (ECF 17 at 1-2).

On March 18, Plaintiffs submitted five requests for production ("RFPs") (ECF 28-2). Plaintiffs demanded responses within seven days (ECF 28-2 at 1). Plaintiffs also requested dates for a corporate representative deposition on 24 topics (ECF 28-3).

On March 20, Defendants advised they had complied with the TRO and expected the Plaintiff schools would be admitted within the next few weeks (ECF 28-4 at 13).

1

On March 23, Defendants proposed an April 6 due date for the RFPs and an April 9 or 10 date for the deposition (ECF 28-4 at 11).

On March 24, Plaintiffs proposed an April 3 due date for the RFPs and agreed to the proposed deposition dates (ECF 28-4 at 7-8).  Later, it appears there were discussions about an April 8 date for the deposition (ECF 28-4 at 4).

On or before April 2, Defendants' counsel advised that Defendants were seeking alternative counsel and would not be able to respond to the RPFs on April 3 (see ECF 28-4 at 1).

On Sunday evening, April 5, Plaintiffs filed a motion to compel requesting that the Court make the RFPs due on April 7 and make the date for the deposition April 10 (ECF 28).

On Monday, April 6, the undersigned concluded terms of engagement, contacted Plaintiffs' counsel and reached agreement that the RFPs would be due on April 8 and that the deposition would take place on April 13 (understanding this resolved the motion to compel), and filed a motion to substitute as counsel that noted such agreement (ECF 29).

On April 8, Defendants responded to the RFPs and made a production of documents (Ex. A).  But, the Plaintiffs did not withdraw the motion to compel.

Meanwhile, on April 8, the Court set the motion to compel for hearing on April 10 (ECF 31), but then later observed the agreement reflected in the motion to substitute and inquired of counsel as to whether the motion to compel was moot.  The undersigned indicated the belief that it was, but it appears Plaintiffs' counsel did not respond to the Court.

At 11:41 on the evening of April 8, Plaintiffs sent an email making five demands not contained in the motion to compel (Ex. B).  Specifically, Plaintiffs demanded:

. . . by tomorrow at noon, Defendants must:

- Produce all non-privileged documents sufficient to show how TEFA applications are processed, reviewed, approved, delayed, or denied, including any criteria, workflows, routing, and decision logic;

- Produce all non-privileged documents reflecting the formation of the application pool and any allocation or lottery process;

- Confirm that all relevant custodians and systems—including Odyssey and any platforms used to administer TEFA—have been searched, and identify them;

- Serve a privilege log that permits evaluation of each claim of privilege; and

- Confirm whether Defendants contend their production is complete and, if not, provide a date certain for full compliance.

At 9:00 the next morning, April 9, the undersigned responded asking to confer (Ex. B). Plaintiffs' counsel put off the call to 2:30 in the afternoon (Ex. B). During the call, the undersigned attempted to confer on the five additional requests made the night before, including attempting to explore whether the new demands were actually entirely new requests, whether they could be accommodated even if that was the case, how specifically they might be accommodated, and whether it was necessary to produce certain Odessey communications with applicants. Plaintiffs were unwilling to engage in a constructive discussion. Plaintiffs indicated several times Defendants should expect a "supplemental" motion and that Plaintiffs would proceed with the hearing the next afternoon.

As of close of business on Thursday, no supplemental motion had yet been filed.

As of the opening of business on Friday, no supplemental motion had yet been filed.

Late on Thursday, Mehdi Cherkaoui filed a stipulation dismissing Case No. 4:26-cv-1675 (ECF 33). This was filed because the parties to that case agreed the case was moot.

**<u>Response</u>**

**I.**     **<u>How TEFA applications are processed etc.</u>**

Turning to the first demand, Plaintiffs complain they did not receive "all non-privileged documents sufficient to show how TEFA applications are processed, reviewed, approved, delayed, or denied, including any criteria, workflows, routing, and decision logic".

This appears on its face to be a new request.

In conference, Plaintiffs pointed first to RFP 1, which seeks "Documents and/or data sufficient to identify the schools You have not selected as an approved provider under TEFA, including . . . , and where in the review process each un-approved school is" (Ex. A).

In response to this request, Defendants produced a list of 1,780 schools that has notations as to where in the process each school is.

The new demand seeks documents sufficient to show "how" the process operates.

Even so, the Defendants offered to accommodate this new request by seeing if there was a standard operating procedure that directed how to process, review, approve, delay, or deny TEFA applications.

Plaintiffs rejected this and changed course.

Plaintiffs instead urged Defendants should have produced all communications between the agent processing the applications (Odessey) and any applicants.  Plaintiffs then turned to a contradictory clause in RFP 1 to which Defendants had objected.  That clause provides:

> "Documents and/or data sufficient to identify the schools You have not selected as an approved provider under TEFA, *including all documents concerning why those schools have not been approved or have yet to be approved . . . .*"

(Ex. A).  RFP 1 begins sensibly enough by seeking "documents or data sufficient to show".  But, then it continues to seek "all documents concerning".  Given the context that the list shows why schools have or have not been approved, this clause is confusing and overbroad.

In regard to overbreadth, Defendants pointed out they had objected in their responses to this contradictory "all documents" expansion because the list produced already amounts to a compilation of the reasons why schools had not been approved, which are that (a) the school did not begin to complete an application, (b) the application has been started but not submitted, (c) the application was denied because the applicant did not meet the basic criteria under Tex. Ed. Code 29.358, (d) the application was a duplicate, (e) the school withdraws, closes, or no longer meets the basic criteria, or (f) the account was deleted for some other reason.  There are no documents reflecting that any school is being denied a registration link or that any applications are being held for some other reason.  Given that, the production of "all" documents pertaining to the administration of the program in the ordinary course is not proportional to the needs of this case. (See Ex. A).

Additionally, documents concerning "why" the schools had not been approved would not include the administrative correspondence between Odessey and applicant schools.

Finally, Defendants produced documents on the "why" question in response to RFP 3, as more specifically discussed below.

Plaintiffs did not engage with the foregoing, but next asserted the Attorney General had already collected a "terabyte" of such documents.  The undersigned posited that it was likely any reference in prior counsel discussions to a "terabyte" of data likely did not refer to documents accumulated and provided to counsel, but instead to the likelihood that gathering and producing "all" administrative correspondence would likely involve that size of a production and likely would not provide any additional information.  Subsequent to the call, the undersigned confirmed his understanding was correct regarding the "terabyte" discussion.

As of the submission of this response, Defendants believe they have a reasonable basis to believe that gathering the administrative correspondence that would provide the same information as what is contained in the notations to the list should not be required because, "Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—

which are related by distinct requirements." *Royal Hospitality Corp. v. Underwriters at Lloyd's*, 2022 WL 18436754, at *2 (S.D. Tex. Jan. 4, 2022) (internal quotation marks omitted).

**II.    Documents reflecting the formation of the applicant pool.**

In conference, Defendants also attempted to discern which request sought documents reflecting the original formation of the applicant pool in or about September 2025.

Plaintiffs urged that RFP 3 called for "all Documents reflecting Your consideration of the Subject Schools for approval as education services providers under TEFA, including any Documents reflecting why You withheld links for any of the Subject Schools to register to be approved providers under TEFA".

But, the original formation of the applicant pool included sending links to all schools for which contact information was available through the Texas Private School Accreditation Commission ("TEPSAC").  The decision to later withdraw a set of such links was not made until after Defendants received assertions that the COGNIA subset of this list included schools that were arms of terrorist groups.

Even so, Defendants offered to determine whether this new request could be accommodated.  For example, Defendants offered to search for communications to Odessey in regard to the directive to utilize the TEPSAC database in the first instance.

Plaintiffs rejected this proposal as inadequate and again changed course.

Plaintiffs urged there simply should be more documents responsive to RFP 3.

Defendants explained, however, that there were three categories of documents responsive to RFP 3:  (1) nonprivileged documents located following a reasonable search for responsive documents that Defendants had agreed to produce and did produce; (2) attorney client material pertaining to the question of how the statute should be interpreted where a group met the initial criteria but also would be immediately stricken because it was violating relevant law; and (3) law enforcement privileged material concerning whether any of the COGNIA schools were arms of terrorist groups.

Plaintiffs mocked the notion that the documents produced constituted the universe of nonprivileged responsive documents found following a reasonable search. But, generally, the willingness to produce documents located after a reasonable search is sufficient. *E.g., Cleary v. American Airlines, Inc.*, No. 4:21-cv-00184-O, 2021 WL 12315160, *5 (N.D.Tex. Nov. 9, 2021). In that case, the court handled such a situation as follows:

> In Request No. 3, Plaintiffs seek "[a]ll customer complaints considered in Application Lifecycle Management Defect 18114, including the full PNRs of the complaining customers." ECF No. 69-1 at 9. In responding to this Request, American informed Plaintiffs it would "conduct a reasonable search for any supplemental documents" and produce any that are relevant and non-privileged. *Id.* at 9-10. These documents should be produced, and American has agreed to produce them. Accordingly, Plaintiffs' Motion to Compel Production of Request No. 3 is DENIED due to American's agreement.

*Id.* Similarly, in *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2025 WL 592484 (N.D. Tex. Feb. 24, 2025), the court explained:

> As a general matter, "[i]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility," and "[a] responding party is best situated to preserve, search, and produce its own [electronically stored information]," which "[p]rinciple ... is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel[, and eschewing 'discovery on discovery,'] unless a specific deficiency is shown in a party's production." *Moore v. Westgate Resorts*, No. 3:18-CV-410-DCLC-HBG, 2020 WL 113352, at *12 (E.D. Tenn. Jan. 9, 2020) (cleaned up; quoting [and adding omitted language from] *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018)).

*Id.* at *3. Here, the fact that the decisions as to how to clear COGNIA schools and reactivate links were simply largely addressed largely verbally does not mean that there was not a reasonable search for documents.

Additionally, to a large extent, there was a legal question. As Defendants explained in their objection on the attorney-client privilege:

The term "Defendants object on the basis of attorney client privilege" means the following:  Because several of the Requests seek documents reflecting "why" the CPA Defendants took certain actions, the Requests seek attorney-client privileged analysis and communications to support the provision of legal services on such subjects.  The CPA Defendants object to producing such documents on the grounds of the attorney-client privilege.  To the extent the reasonable search efforts to date have identified specific privileged documents, the CPA Defendants are providing a privilege log herewith.  These documents are representative of additional privileged communications, not all of which have been gathered.  The CPA Defendants submit that the documents set down on the privilege log are sufficient to demonstrate that communications between the CPA Defendants and their lawyers associated with determining the correct legal interpretation of the statutes the CPA Defendants have been charged to administer are protected by the attorney-client privilege, and the CPA Defendants object to listing all such documents that may presently still be in the custody of the involved counsel or may have not yet been gathered from some members of the staff of the Office of the Texas Comptroller of Public Accounts as (a) this is simply not feasible given the limited resources available, the compressed timeframe, and the change of counsel; and (b) this is not proportionate to the needs of the case given that the documents gathered thus far establish the validity of the assertion of privilege.

Finally, there is a question of the law enforcement privilege, as Defendants explained in their objection on that subject:

The term "Defendants object on the basis of the law-enforcement privilege" means the following:  Defendants object to producing documents pertaining to any investigations into whether an educational service provider or vendor of educational products is violating "other relevant law" as described in Section 29.358(h)(2) of the Texas Education Code.  Such documents are subject to the law enforcement privilege recognized in *In re U.S. Department of Homeland Security,* 459 F.3d 565 (5th Cir. 2006).  Defendants have listed on the accompanying privilege log representative documents, which the Defendants are prepared to tender in camera if there is any question regarding the assertion of this privilege.  Moreover, since the Defendants (a) have sent links to the Plaintiffs to facilitate their entry into the program and (b) have not taken any action against the Plaintiffs based upon investigations that are presently ongoing, these documents pertain to controversies that are either moot in the first instance or not ripe in the second.  As such, any requests seeking such documents are not reasonably calculated to lead to the discovery of admissible evidence in this case.

In regard to the privilege questions, Defendants provided a privilege log, and are prepared to submit such documents in camera.

**III.    Discovery on discovery.**

With regard to engaging on the question of whether the search was, in fact, reasonably conducted, the Defendants sought to explore whether and what sort of documents Plaintiffs believed had been overlooked.  Plaintiffs indicated having such documents but being unwilling to share or to describe them.  Defendants believe they have conducted a reasonable search under the circumstances.

**IV.    Privilege Log**

Defendants have provided a privilege log.  The assertions of "attorney-client" and "law enforcement" incorporate the above objections.  The Defendants are prepared to make an in camera submission.  The investigative reports are just that – reports on the results of investigative efforts.

**V.    Whether Production Is Complete**

Defendants advised they expected that, over the course of the case, they expected there would be supplements to the production.  Defendants advised that, as of the present, there were no additional documents they expected to produce before Monday.

Dated: April 10, 2026

Respectfully submitted,

*/s/ Dennis Roossien*
**Randall W. Miller**
State Bar No. 24092838
S.D. Tex. No. 2526902
(214) 855-7539
rwmiller@munsch.com

**Dennis L. Roossien Jr.**
State Bar No. 00784873
S.D. Tex. No. 24036
(214) 855-7535
droossien@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 4000
Dallas, TX 75201

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on April 10, 2026, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

*/s/ Dennis Roossien*
**DENNIS L. ROOSIEN**
