IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BAYAAN ACADEMY, INC., et al.,

v.

KELLY HANCOCK, et al.

CIVIL ACTION NO. 4:26-cv-1960

## DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss this action for lack of subject-matter jurisdiction because this case is either moot or not ripe, respectfully stating:

### I.    INTRODUCTION

Plaintiffs' claims are all based upon the alleged exclusion of the named Plaintiff Schools from the Texas Education Freedom Accounts Program ("TEFA" or the "Program") and the resulting alleged inability of the Plaintiff Parents to apply for Program benefits at those schools. But, Defendants are not excluding the Plaintiff Schools. Because Plaintiffs cannot demonstrate the Article III prerequisites of a concrete, particularized, and redressable injury, this Court lacks subject-matter jurisdiction and must dismiss.

### II.    FACTS

**A.    The Named Plaintiffs' Alleged Injuries.**

The Plaintiffs consist of three school operators and four parents (Doc. 21 "First Am. Compl." ¶¶ 1-8). Plaintiffs' claims all rest on the same factual predicate: Defendants' alleged refusal to process or approve the Plaintiff Schools' applications (First Am. Compl. ¶¶ 117-18, 125-26, 133, 141, 149, 155, 163, 172-73, 185-86, 190), and the resulting alleged prevention of the Plaintiff Parents from using the Program to fund their children's enrollment at the school of their choice (First Am. Compl. ¶¶ 17, 148-49, 156, 174, 185). Specifically, the Plaintiffs allege:

1

- **Count I**: "Defendants have acted in a manner that is not neutral by *excluding* [Plaintiff Schools] from the Program…," First Am. Compl. ¶ 117 (emphasis added);

- **Count II**: "Defendants have applied TEFA in a manner that is not generally applicable by approving or processing applications [for others] *while excluding* [Plaintiff Schools]," First Am. Compl. ¶ 125 (emphasis added);

- **Count III**: "Defendants *have excluded* [Plaintiff Schools] from TEFA…," First Am. Compl. ¶ 133 (emphasis added);

- **Count IV**: "Defendants have imposed a denominational preference *by excluding* [Plaintiff Schools] from TEFA while permitting participation by other schools, including other religious or non-Islamic institutions," First Am. Compl. ¶ 141 (emphasis added);

- **Count V**: "Defendants' *exclusion of* [Plaintiff Schools] from TEFA prevents…association and burdens Plaintiffs' ability to engage in collective religious exercise," First Am. Compl. ¶ 149 (emphasis added);

- **Count VI**: "Defendants have *conditioned participation* in TEFA on Plaintiffs' willingness to forgo or alter their religious character and practices," First Am. Compl. ¶ 155 (emphasis added);

- **Count VII**: "Defendants have treated Plaintiffs differently by *excluding them* from the Program based on their religious affiliation and practices," First Am. Compl. ¶ 163 (emphasis added);

- **Count VIII**: "Defendants have *refused to process or approve* [Plaintiff Schools'] applications…"; "Plaintiffs seek declaratory and prospective injunctive relief prohibiting Defendants from refusing to process or approve the Plaintiff Schools' applications…," First Am. Compl. ¶ 172 (emphasis added);

- **Count IX**: "Defendants have *refused to process or approve* the Plaintiff Schools' applications…" and "[a]s a result of Defendants' discriminatory conduct, the Plaintiff Schools have been *excluded* from participation in the Program, and the Plaintiff Parents have been *denied the opportunity to use the Program funds* for their children's education at Islamic schools," First Am. Compl. ¶¶ 185, 190 (emphasis added).

The sole injury from which the Plaintiffs seek relief is the alleged exclusion of Plaintiffs from TEFA, for which they request the declaratory and injunctive relief of ordering Defendants to process or approve the Plaintiff Schools' applications and likewise permit the Plaintiff Parents the opportunity to use TEFA funds, if selected, for their school of choice (*See* First Am. Compl. ¶¶ 122, 130, 138, 145, 152, 159, 166, 177, 192). The Prayer for Relief seeks an order requiring Defendants to process and approve the Plaintiff Schools' applications (First Am. Compl. ¶

2

211(C)(3)), a permanent injunction against excluding Plaintiff Schools from the Program (First Am. Compl. ¶ 211(C)(2)), and related declaratory relief (First Am. Compl. ¶ 211(C)(1), (4)).

**B.      Subsequent Events and the Current Status.**

On March 31, 2026, the Court denied Plaintiffs' motion to further extend the TRO, finding that the record reflected that "Plaintiff schools, as well as other K-12 Islamic schools, have been registered and approved to participate in TEFA." Dkt. 25 at 1-2.

On April 9, 2026, the previously consolidated case was dismissed voluntarily (Dkt. 32; *see also Cherkaoui v. Paxton*, Case No. 4:26-cv-01675, Doc. 25 (S.D.Tex.)).

At an April 10, 2026, hearing, Plaintiffs' counsel confirmed that the Plaintiff Schools "have been admitted into the TEFA program as approved schools," and the Court observed that "as to the plaintiffs in this case," the parent families "have been allowed to apply for the TEFA program." (Ex. A (Excerpts of Apr. 10, 2026 Hearing Tr.) at 4:7-10; 7:20-24). The Court summarized the resulting posture at the April 10 hearing: "There's nothing else that [Plaintiffs] have been denied as of this moment." (Ex. A (Excerpts of Apr. 10, 2026 Hearing Tr.) at 10:14-15). Plaintiffs have never disputed these facts and have made no allegation (much less any evidentiary showing) that their approvals have been rescinded, limited, or undermined in any respect.

On June 18, 2026, the Plaintiffs gave notice they would not proceed to seek a preliminary injunction (Dkt. 48). This speaks volumes – it is clear Plaintiffs are suffering no adverse action.

In their notice, Plaintiffs indicate they intend to shift their attention to discovery concerning past actions (including as to schools who are not parties to this case) and to standards "governing future action by Defendants" (Dkt. 48 at 1). In other words, Plaintiffs are moving beyond the case as pled into matters for which they lack standing or that are not ripe for want of any present adverse action.

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may challenge subject-matter jurisdiction on the grounds that Article III's case-or-controversy requirement is not satisfied. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (jurisdiction is a threshold issue).

Article III permits federal courts to adjudicate only live disputes, and a dispute is no longer live when the parties lack a legally cognizable interest in the outcome. *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824 (5th Cir. 2023). That requirement must exist through every stage of the litigation, not merely when the complaint is filed. *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824 (5th Cir. 2023).

The burden of establishing subject-matter jurisdiction rests on the party asserting it. *Steel Co.*, 523 U.S. at 94; *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

In considering its own jurisdiction, the Court may consider and weigh evidence.[1] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The Court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161.

---

[1] Because Defendants mount a factual Rule 12(b)(1) challenge, the Court may consider evidence outside the pleadings without converting this motion into one for summary judgment. See *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

Subject-matter jurisdiction no longer exists if the case is moot. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324-25 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Tex.*, 563 U.S. 277 (2011). Mootness "can arise at any stage of litigation." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). A plaintiff who has already obtained the relief requested, or whose claim has been mooted by intervening events, "lack[s] a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam).

Subject-matter jurisdiction does not exist if a claim is not ripe, meaning that "it rests on 'contingent future events that may not occur as anticipated or may not occur at all."' *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

Jurisdiction is also lacking when the alleged violation by the state governmental entity has ceased. To explain, eleventh Amendment sovereign immunity can deprive a federal court of jurisdiction. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); *Hurst v. Tex. Dep't of Assistive & Rehab. Servs.*, 482 F.3d 809, 810-11 (5th Cir. 2007). It is "*an immunity from suit*," not a mere defense. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993) (emphasis in original). The movant need only show it is an arm of the State, *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000). Where, as here, that is undisputed, the plaintiff must establish a recognized exception. *Ramming*, 281 F.3d at 161; *Williamson*, 645 F.2d at 413. The only arguable exception is *Ex parte Young*, 209 U.S. 123 (1908), which permits an official-capacity suit solely for prospective relief against an *ongoing* violation of federal law. *See Papasan v. Allain*, 478 U.S. 265, 277-78 (1986). But once "the violation has ceased," only

retrospective relief remains, which is again "barred by the Eleventh Amendment." 13 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. JURIS. § 3524.6 (3d ed.). The question is whether the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). And it reaches only officials, not the State or its agencies. *Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013). Qualified and absolute immunity are not implicated; they govern individual-capacity damages claims, not the official-capacity claims for prospective relief asserted here, which are "treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).

## IV.    ARGUMENT AND AUTHORITIES

### A.    Plaintiffs' Claims Are Moot Because They Received the Relief They Seek.

Where intervening events provide a plaintiff "all the relief he might have won" through litigation, "a federal court must dismiss the case as moot." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare*, 569 U.S. at 71. And where a change of circumstances removes a plaintiff's "'personal stake in the outcome of the lawsuit,' at any point during litigation," the action must be dismissed as moot. *Id.* at 72.

Applying this standard, the Fifth Circuit held that challenges to the Navy's COVID-19 vaccine policies became moot after the Navy rescinded the mandate and revoked the challenged implementing policies, and the adverse consequences the plaintiffs sought to enjoin were eliminated. *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 672-74 (5th Cir. 2023). Likewise, in *Franciscan Alliance, Inc. v. Becerra*, an APA claim was moot where intervening government action had already given the plaintiff the relief it sought, leaving the court "unable to provide relief beyond what" the plaintiff already possessed. 47 F.4th 368, 376-78 (5th Cir. 2022).

6

There is no live controversy here because the Plaintiffs already possess the very relief their complaint requests. Plaintiffs received not only the initial approval they sought, but also the continuing ability to participate in the Program on the same footing as all other approved providers and families. There is no remaining restriction, collateral disability, or adverse consequence capable of judicial redress. Nor can Plaintiffs preserve jurisdiction by recasting past procedural disputes as ongoing constitutional injuries. Once Plaintiffs received the approvals they sought, no prospective relief remains available. A request for a declaration that past conduct was unlawful is insufficient to maintain Article III jurisdiction. *See Green v. Mansour*, 474 U.S. 64, 67-68 (1985).

Whatever questions existed at the outset of the TEFA application process have been fully resolved.[2] Although Plaintiffs may attempt to characterize their alleged exclusion from TEFA as a merits issue, the question of whether they presently suffer a concrete injury is a *threshold jurisdictional inquiry*, not a determination on the merits. When the alleged constitutional injury is the mere fact of exclusion, and undisputed record evidence establishes that the Plaintiffs have now been admitted and are participating, the jurisdictional question is distinct from any merits question. See *Ramming*, 281 F.3d at 161 (distinguishing jurisdictional factual disputes from merits disputes).

**B.      Class Allegations Do Not Support Jurisdiction.**

Absent certification, Article III's requirements are assessed solely as to the named plaintiffs. *See Genesis HealthCare*, 569 U.S. at 72 ("[A]n action brought on behalf of a class can become moot if the named plaintiff's claim becomes moot before a class is certified." (citation omitted)). As the Supreme Court explained in *Sosna v. Iowa*, it is the act of certification that gives

---

[2] Because Plaintiffs disclaimed individualized monetary relief, no surviving damages claim keeps the controversy alive. *See* First Am. Compl. ¶ 34.

"the class of unnamed persons described in the certification…a legal status separate from the interest asserted by [the named plaintiff]." 419 U.S. 393, 399 (1975).

In *United States v. Sanchez-Gomez*, the Supreme Court held that where the named litigants' claims had become moot and no class had been certified, "the mere presence of allegations that might, if resolved in respondents' favor, benefit other similarly situated individuals cannot save their case from mootness." 584 U.S. 381, 389 (2018). The Court declined to treat the matter as a "functional class action," reaffirming that the mootness-defeating consequence of class status is tied to formal certification under Rule 23. *Id.* at 387-88. Pre-certification mootness of the named plaintiff's claim deprives the court of jurisdiction.

Because the named Plaintiffs' claims are moot, this Court lacks subject-matter jurisdiction over the action. Because mootness is assessed as of the time of the Court's ruling, the question is whether a live controversy exists now—not whether one existed at filing or whether Plaintiffs could remedy mootness by pursuing certification now. *Calderon*, 518 U.S. at 150.

Nor can Plaintiffs invoke the "inherently transitory" exception recognized in *Sosna v. Iowa*, 419 U.S. 393 (1975), and its progeny. That exception permits a court to relate certification back to the filing date only where the named plaintiff's claim is "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Genesis Healthcare*, 569 U.S. at 76 (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)). The doctrine "has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy." *Id.* at 76-77.

Here, the Plaintiffs' claims did not expire due to some inherent time limitation; rather, Defendants afforded Plaintiffs the full relief sought through ordinary administrative processing.

8

**C.     The Court Lacks Jurisdiction to Evaluate TEFA Generally.**

"The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The Supreme Court has recently confirmed that universal injunctions likely exceed the equitable authority that Congress has given to federal courts. *Trump v. CASA, Inc.*, 606 U.S. 831, 840 (2025). The Court held specifically that because the "universal injunction lacks a historical pedigree, it falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id.* at 847. The "complete relief" principle does not justify broader relief; rather, "[i]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Trump v. CASA,* 606 U.S. at 851 ("'Complete relief' is not synonymous with 'universal relief.' It is a narrower concept…long embraced" in the equitable tradition that allows courts to "administer complete relief between the parties."). "Neither declaratory nor injunctive relief…can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs." *Id.* at 844 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). Because the only named Plaintiffs before this Court have received complete relief, any broader injunction would constitute impermissible program-wide relief untethered to a live Article III controversy.

**D.     The Court Lacks Jurisdiction to Consider Future Possibilities.**

Speculative future agency conduct cannot sustain jurisdiction. *See Clapper*, 568 U.S. at 409 (speculative future injury insufficient); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992) (imminence requirement is "stretched beyond the breaking point" when plaintiff alleges "only an injury at some indefinite future time"). Here, Plaintiffs appear to wish to keep the case

9

open against the possibility that something may happen in the future. But, because Plaintiffs disclaimed individualized monetary relief, no surviving damages claim keeps the controversy alive. *See* First Am. Compl. ¶ 34. The only harm Plaintiffs can posit—that the approved schools might someday be suspended or removed—is not the exclusion they challenged but a distinct action requiring written notice, a statement of grounds, a thirty-day opportunity to respond, and a defined administrative disposition. Tex. Educ. Code § 29.364(a)–(d); *see also* Tex. Educ. Code § 29.3585. As Defendants have taken no such action, there is no ripe controversy.

**E.      The Voluntary-Cessation Doctrine Does Not Preserve Jurisdiction.**

Plaintiffs cannot rely on the voluntary-cessation doctrine to avoid dismissal. Under that doctrine, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless "the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). The Fifth Circuit affords "governmental entities…a lighter burden" and "assume[s] that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325; *accord U.S. Navy SEALs 1-26*, 72 F.4th at 673. The voluntary-cessation exception applies against governmental entities only where there is evidence "that the voluntary cessation is a sham for continuing possibly unlawful conduct." *U.S. Navy SEALs 1-26*, 72 F.4th at 673.

Here, mootness arises from the undisputed fact that the Plaintiff Schools were approved through the ordinary administrative process and that process is now complete. This is not a case where a defendant has merely paused challenged conduct while litigation is pending; the named Plaintiffs' applications were fully processed and approved. The challenged action (and Plaintiffs' sole alleged injury) was the failure to approve Plaintiffs for the Program prior to its initiation. The

10

record shows the Plaintiff Schools "have been admitted into the TEFA program as approved schools" (Ex. A (Excerpts of Apr. 10, 2026 Hearing Tr.) at 4:7-10).

In *Sossamon*, the Fifth Circuit concluded that removal of the challenged policy and assurances provided by the State that it was not planning to reverse course were sufficient to show that no exception to mootness applied. 560 F.3d at 324-25. In the absence of evidence to the contrary, the Fifth Circuit "assume[d] that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* at 325. The court was further persuaded by the fact that the government voluntarily gave the plaintiff "that which he did not obtain in the district court," but instead voluntarily changed its policy. *Id.* at 326.

Voluntary cessation by a government actor gives rise to a presumption that the objectionable behavior will not recur because "government actors…in the exercise of their official duties are accorded a presumption of good faith." *Sossamon*, 560 F.3d at 325. The court has repeatedly applied this presumption and lighter standard to find mootness following governmental policy changes. *See DeMoss v. Crain*, 636 F.3d 145, 150-51 (5th Cir. 2011) (applying *Sossamon* in "factually indistinguishable" circumstances); *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) ("The very process of the enactment [of legislation], combined with the presumption of good faith that we accord government actors, overcomes concerns of voluntary cessation."); *Yarls v. Bunton*, 905 F.3d 905, 910-11 (5th Cir. 2018) (treating governmental cessation "with some solicitude" and "not mere litigation posturing"). Defendants readily satisfy this lighter burden: the Plaintiff Schools are approved and participating, and any future suspension is governed by a mandatory statutory process. *See* TEX. EDUC. CODE §§ 29.364, 29.3585.

Here, Plaintiffs' claims are moot because the change of circumstance was not fabricated, it was not a last-minute sham to achieve dismissal, and now that the Program has begun, removal

of the Plaintiffs would require the making of determination as provided for in the applicable statute. This is not a case where the government has 'paused' a challenged policy pending litigation. Plaintiffs' approvals were issued through the same statutorily governed administrative process that applies to all participants. That process creates an objective, rule-bound framework cabining agency discretion, and foreclosing Plaintiffs' attempt to characterize TEFA's implementation as a discretionary policy choice that could be arbitrarily withdrawn. Any future suspension or removal of an approved provider requires (1) a written finding of ineligibility or failure to remain in good standing, (2) immediate notice by first-class mail and email specifying grounds, (3) a 30-day response period, and (4) a final determination within 30 days to remove, conditionally reinstate, or unconditionally reinstate. TEX. EDUC. CODE § 29.3585(a)-(e). So, any controversy over a future determination would be entirely different.

Plaintiffs' speculation that approvals might be reversed—based on public statements or policy discussions—is insufficient to sustain jurisdiction. Even assuming arguendo that public statements expressed a desire to revisit program implementation, such expressions do not constitute evidence of an imminent plan to reverse Plaintiffs' existing approvals. The Fifth Circuit has consistently held that "formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325. And the mere "ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception*." U.S. Navy SEALs* 1-26, 72 F.4th at 674. No Plaintiff School has sought to withdraw from the TEFA program, and no removal proceeding has been initiated. *See U.S. Navy SEALs 1-26*, 72 F.4th at 673-74 (no risk of repeated injury where challenged policies were formally rescinded). Here, there is an observable, concrete change of position: the schools *are* approved and the program *is* proceeding.

Any concerns about voluntary cessation rest on conjecture about future actions. Article III requires concrete, certainly impending injury; speculative future harm does not suffice. *See Clapper*, 568 U.S. at 409 ("'[A]llegations of possible future injury' are not sufficient" (citation omitted)); *Lujan*, 504 U.S. at 564 n.2 (imminence requirement "cannot be stretched beyond its purpose"); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be 'certainly impending' to constitute injury in fact."); *U.S. Navy SEALs 1-26*, 72 F.4th at 675. So, if any future adverse action were taken against the Plaintiffs, the correct course of action would be to challenge such action at that time through the available administrative and judicial processes. Holding this case open based upon the possibility of future action is not proper.

F. **The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply, and Plaintiffs' Speculative Claims About Future Harm Are Not Ripe.**

The narrow capable-of-repetition exception applies only in "exceptional situations" where both (1) "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration," and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (cleaned up). The Court "has never held that a mere physical or theoretical possibility was sufficient to satisfy" this test. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam). Rather, there must be a "reasonable expectation" or a "demonstrated probability" that "the same controversy will recur involving the same complaining party." *Id.* Neither element is satisfied here.

As a threshold matter, the capable-of-repetition exception "is simply inapposite when a plaintiff lacks standing to seek the requested relief." *Johnson v. Moore*, 958 F.2d 92, 95 (5th Cir. 1992). Because the named Plaintiffs have already received the relief they seek—school approvals and the ability to apply—they lack a concrete injury traceable to Defendants' conduct and redressable by a judicial ruling, which forecloses invocation of this exception.

13

Even setting aside the standing threshold, Plaintiffs cannot demonstrate a "reasonable expectation" that they will "be subject to the same action again." *Spell*, 962 F.3d at 180 (quoting *Kingdomware*, 579 U.S. at 170). In *Kingdomware Technologies Inc. v. United States*, the Supreme Court found recurrence likely because the government had a demonstrated, ongoing practice of declining to apply the statutory provision at issue in successive procurement cycles. 579 U.S. at 170. Here, the Plaintiff Schools are approved and remain in the TEFA program. No removal proceedings have been initiated. No named Plaintiff Parent has been denied participation. Defendants identify no present plan or imminent step to remove the approved Plaintiff Schools or to bar the named Plaintiff Parents from participation. Plaintiffs cannot satisfy this exception because they have nothing more than concerns based on conjecture about future actions, which amount to "'[a]llegations of possible future injury'" that "do not satisfy the requirements of Art. III." *Whitmore*, 495 U.S. at 158.

Moreover, any future harm to a now-participating Plaintiff School or Parent would not be "the same action" that Plaintiffs challenged. The injury alleged in the First Amended Complaint was a delay in acceptance into the Program prior to its inception. First Am. Compl. ¶¶ 89-90, 104, 117-118; *see* Sec. II.B., *supra*. By contrast, any alleged future adverse action against an approved school would be a suspension or removal from the Program governed by an entirely different statutory framework—one that requires notice, an opportunity to respond, and a defined administrative process. TEX. EDUC. CODE § 29.3585.

Specifically, for individual participants, Education Code Section 29.364 requires the Acting Comptroller to: (a) notify the participating parent in writing that the child's account has been suspended; (b) specify the grounds for suspension; (c) inform the parent that he or she has 30 days to respond and take any corrective action; and (d) after the response period, either order

14

closure, conditional reinstatement, or full reinstatement of the account. TEX. EDUC. CODE § 29.364(a)-(d). For education service providers and vendors, Education Code Section 29.3585 requires: (a) a finding that the provider or vendor is ineligible or has failed to remain in good standing; (b) immediate notice by first-class mail and email specifying the grounds and providing 30 days to respond; and (c) a determination within 30 days to remove, conditionally reinstate, or unconditionally reinstate the provider or vendor. TEX. EDUC. CODE § 29.3585(a)-(e). Because that hypothetical future action would arise under different procedures and present a different legal question, it cannot satisfy the "same action" requirement.

Pre-removal relief sought from this Court—in advance of any concrete administrative action—is speculative and not ripe for judicial review. *See Clapper*, 568 U.S. at 409 (requiring "*certainly* impending" injury for Article III standing); *Bhandari v. First Nat. Bank of Commerce*, 808 F.2d 1082, 1101-02 (5th Cir. 1987) (rejecting injunctive and declaratory relief where plaintiff was no longer transacting business with defendant, had not alleged any intent to reapply, and had "no more than an ideological interest" in the requested relief).

Finally, any future adverse action—if it were ever taken—would not "evade review." The limited duration of a single application window does not render the underlying questions inherently unreviewable, particularly where the statutory framework affords a defined process for challenging any adverse action. The statutory suspension and removal process requires, at minimum, notice and a 30-day response period before any final determination. TEX. EDUC. CODE §§ 29.3585(a)-(e), 29.364(a)-(d). The challenged action here—unlike a procurement cycle or an expired executive order—is not "in its duration too short to be fully litigated." *See Spell*, 962 F.3d at 180.

**G.      The Eleventh Amendment Independently Bars Plaintiffs' Claims Against the State.**

Dismissal is independently required by the Eleventh Amendment, on a jurisdictional ground distinct from mootness. The Eleventh Amendment bars suits against a State and its

agencies in federal court absent the State's consent or a valid congressional abrogation, regardless of the relief sought. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 100-01. The *Ex parte Young* exception permits certain suits only against state officials; it does not authorize suit against a state agency itself, which remains protected regardless of the relief sought. *See Raj*, 714 F.3d at 328-29. The Office of the Texas Comptroller of Public Accounts is an arm of the State, and 42 U.S.C. § 1983 effected no abrogation of its immunity. The claims against the Office must therefore be dismissed as a discrete, threshold matter.

As to Defendants Hancock and Stout in their official capacities, the *Ex parte Young* exception is available only for prospective relief directed at an ongoing violation of federal law. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 105-06. There are three basic elements of an *Ex parte Young* lawsuit. "The suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

If there is no ongoing violation, the only remedy available would be retrospective and barred by the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008). Because only prospective relief is permitted, an *Ex parte Young* suit must concern an ongoing violation of federal law. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106. The same record that establishes mootness (the Plaintiff Schools' approval, the Plaintiff Parents' participation, and the absence of any continuing exclusion) demonstrates that no ongoing violation of federal law remains to be enjoined. With no ongoing violation to redress, the official-capacity claims revert to claims against the State itself and are barred. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101. Because there is no ongoing enforcement action and no ongoing application of TEFA that burdens them, the *Young* exception does not apply. Plaintiffs' approvals

16

and participation reflect compliance, not violation. Any hypothetical future enforcement action would arise under an entirely separate statutory scheme and cannot bootstrap the present, resolved dispute into an ongoing violation.

The mootness and immunity inquiries are therefore mutually reinforcing: the cessation of the challenged conduct both moots the case and withdraws the *Young* exception, allowing the Court to dismiss on either jurisdictional ground.

## V.    CONCLUSION

For the foregoing reasons, this Court lacks subject-matter jurisdiction over Plaintiffs' claims. The named Plaintiffs have already received the relief their Complaint requests: school approvals, the ability to apply, and eligibility determinations in the ordinary course. No class has been certified so only the named Plaintiffs' claims are relevant, yet the named Plaintiffs' individual claims are moot. The narrow exceptions to mootness do not apply because (1) the voluntary-cessation doctrine is inapplicable where relief was afforded through ordinary administrative processing and no basis exists to anticipate reversal, and (2) the capable-of-repetition exception fails because Plaintiffs identify no concrete, imminent threat of renewed injury and any future adverse action is subject to multi-step statutory review processes.

The Eleventh Amendment also requires dismissal of the claims against the Office of the Texas Comptroller of Public Accounts in their entirety, and (because no ongoing violation of federal law remains) bars the official-capacity claims against Defendants Hancock and Stout.

Defendants respectfully request that the Court dismiss this action in its entirety for lack of subject-matter jurisdiction.

Dated: June 26, 2026

Respectfully submitted,

By: *Dennis L. Roossien*
    Randall W. Miller
    State Bar No. 24092838
    S.D. Tex. No. 2526902
    Dennis L. Roossien Jr.
    State Bar No. 00784873
    S.D. Tex. No. 24036
    Zackery L. Horton
    State Bar No. 24120906
    S.D. Tex. No. 3977925
    MUNSCH HARDT KOPF & HARR, P.C.
    500 N. Akard Street, Suite 4000
    Dallas, Texas 75201
    Tel: (214) 855-7500
    Fax: (214) 855-7584
    Email: rwmiller@munsch.com
    Email: droossien@munsch.com
    Email: zhorton@munsch.com

    *Defendants Kelly Hancock, the Office of the Texas Comptroller of Public Accounts, and Mary Katherine Stout*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on June 18, 2026, I sent an email to Plaintiffs' counsel indicating Defendants' belief that there remains no justiciable controversy and requesting a conference on whether Plaintiffs would oppose a motion to dismiss the case as moot. I received no response. On June 25, 2026, I sent a reminder email, again requesting a conference. Plaintiff's counsel responded indicating the possibility of a conference the next day. On the morning of June 26, 2026, I followed-up suggesting times for a call and indicating flexibility to discuss the matter. I waited until close of business without further response. Because this is a case dispositive motion, and because Plaintiffs are on record indicating their position that the case is not moot even though they themselves have declined to pursue further injunctive relief (Dkt. 48), Defendants are confident this motion will be opposed.

*/s/ Dennis Roossien*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 26, 2026, a true and correct copy of the foregoing was filed on the Court's docket and served on all parties entitled to electronic notice via the Court's ECF system.

*/s/ Dennis Roossien*