# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

BAYAAN ACADEMY, INC., *ET AL.*, §
§
    *Plaintiffs*, §
§    CIVIL ACTION NO. 4:26-CV-01960
v. §
§
KELLY HANCOCK, *ET AL.*, §
§
    *Defendants*. §

## **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

A defendant cannot obtain dismissal by doing under judicial pressure what the complaint sought, while retaining the same authority and control to undo it. Yet that is precisely the mootness argument Defendants advance. They argue that Plaintiffs' claims disappeared the moment the Islamic schools appeared on TEFA's approved-vendor list—omitting that they issued application links only after this Court ordered them to, and that within a week, the Comptroller himself branded the approvals as temporary, accused Plaintiffs of "terror ties" *despite knowing the accusations were unfounded*, and asked the Attorney General to strip their corporate charters altogether.

Evidence also contradicts Defendants' previous representations that they did not know the identities of the Islamic schools, so the exclusion was not intentional. Murl Miller, the Comptroller's corporate representative, confirmed that Defendants identified and isolated 36 Islamic schools before this program began in December 2025. Defendants withheld approval from *all* Islamic schools—and suspended Bayaan Academy after realizing it had slipped through the cracks—on anti-Muslim accusations without any investigation, notice, process or finding.

This case is not moot. Neither Hancock nor a representative from his office has retracted the public accusations against Islamic schools, and Defendants have not formally closed out their

1

investigations into Plaintiffs' eligibility for TEFA. Plaintiffs' injuries are ongoing; the unfounded accusations have caused reputational harm to the schools, created an atmosphere of fear and a need for heightened security on campuses, and raised concerns among parents for the safety and well-being of their children. Defendants express no intent to remedy these harms.

Defendants' motion fails to address most of Plaintiffs' requested relief, misunderstands their own burden, and is unsupported by evidence or the law. Their mootness argument is entirely foreclosed by the authorities they rely on, including *Fikre*. Defendants have not met their "formidable burden" of making it "absolutely clear" their challenged conduct cannot be expected to recur. *FBI v. Fikre*, 601 U.S. 234, 241 (2024); *Friends of the Earth Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Nor are Defendants immune from Plaintiffs' claims. This Court should deny the motion.

BACKGROUND

The Texas Education Code requires the Comptroller to pre-approve all schools that meet the criteria in Section 29.358(b)(2). Defendants had direct control over which schools were pre-approved; schools could not get into the program if they did not receive application links from Defendants. Ex. 1 (Deposition of Murl Miller, Defendants' Corporate Representative), at 61. It is undisputed that Defendants refused to pre-approve the Islamic schools until this case was filed.

On March 11, 2026, Plaintiffs filed suit against Defendants Kelly Hancock, Acting Comptroller of the State of Texas, the Office of the Comptroller, and Mary Stout. Plaintiffs allege Defendants violated their constitutional rights by excluding them from a publicly available program based on their Islamic faith. They bring nine causes of action under 42 U.S.C. § 1983:

I. Violation of Free Exercise: Defendants have administered TEFA in a non-neutral manner by excluding Islamic schools based on their religious identity and practices. Doc. 21 at ¶¶ 115–22.

2

II. Violation of Free Exercise: Defendants have applied TEFA in a manner that is not generally applicable by approving or processing applications from other similarly situated providers while excluding the Islamic schools. Doc. 21 at ¶¶ 123–30.

III. Violation of Free Exercise: Defendants excluded Plaintiffs from a publicly available program based on their religious identity. Doc. 21 at ¶¶ 131–38.

IV. Violation of Establishment Clause: Defendants have imposed a denominational preference by excluding Islamic schools while permitting other religious and non-religious institutions. Doc. 21 at ¶¶ 139–45.

V. Violation of Freedom of Association: Defendants' actions prevented Plaintiff Parents from associating with the Islamic schools and impaired their ability to engage in collective religious exercise. Doc. 21 at ¶¶ 145–52.

VI. Violation of Free Exercise: Defendants conditioned participation in the program on Plaintiffs' willingness to forgo or alter their religious character or practice. Doc. 21 at ¶¶ 153–59.

VII. Violation of Equal Protection Clause: Defendants treated Plaintiffs differently from similarly situated providers by excluding them from the program based on their religious identity. Doc. 21 at ¶¶ 160–66.

VIII. Violation of Procedural Due Process: Despite neutral statutory criteria, Defendants have refused to process School Plaintiffs' applications without notice, explanation, or opportunity to respond. Doc. 21 at ¶¶ 167–77.

IX. Violation of Equal Protection: Defendants have refused to process School Plaintiffs' applications based on their religious character and the fact they provide Islamic-based education while approving other similarly situated schools. Doc. 21 at ¶¶ 178–92.

Each count seeks declaratory and prospective injunctive relief. E.g., ¶¶ 176, 192.

## 1. Defendants used accusation-driven screening outside the statutory criteria.

At the TRO hearing on March 17, Defendants' counsel insisted to this Court that Defendants did not know the identities of the Islamic schools. Ex. 2 (Transcript TRO Hearing).

It was undisputed that as of March 17, 2026, not a single Islamic school appeared on the list of approved schools. Ex. 2, at 52. Counsel argued that the delay was because of issues with Cognia's accreditation process and insisted that the exclusion was not intentional but rather a statistical anomaly—although over 2,200 schools had been approved, the "30 or so" Islamic schools just happened to fall within the remaining 100 unapproved schools. Ex. 2, at 39, 44.

3

Evidence has shown these representations were not true.

Defendants had identified and isolated 36 Islamic schools for investigation *before* the program even began on December 9, 2025. Ex. 1, at 32–33, 98, 163, 167.[1] Hancock received "accusations" about the schools from sources like Amy Mek of the RAIR Foundation and Representative Ellen Troxclair while he was campaigning. Ex. 1, at 52, 164–65.[2] The decision to withhold pre-approval was based on those accusations alone, without any investigation, finding, notice, or process. Ex. 1, at 102. Defendants have not disclosed the "accusations" they received prior to December 9, 2025. The only allegations Defendants have produced come from an unpublished, unverified draft document titled "Review of Cognia-Accredited Islamist Schools in Texas" sent by Sam Westrop in January 2026,[3] which named only 17 schools. Ex. 14, Ex. 16.

Nor was the issue with Cognia's accreditation. In fact it was *because* Defendants realized before December 9 that the majority of Islamic schools were Cognia accredited that Defendants decided to withhold application links from *all* Cognia schools. Ex. 1, at 18, 45. They asked Cognia for help investigating the schools and pre-approved non-Cognia accredited schools without a second look. Ex. 3 (letter from Cognia); Ex. 1, at 262–63.

---

[1] Despite repeat requests for this information in court-ordered discovery, Defendants have not produced any documentation related to the identification of these Islamic schools before January 2026. As of the date of this response, Defendants have produced reports for only 5 schools.

[2] No information has been produced on what these sources alleged, despite repeat requests for this court-ordered discovery.

[3] Westrop (the Middle East Forum) has been found liable for defamation for falsely accusing a political activist of being a terrorist. *See Harrath v. Stand for Peace Ltd.*, [2017] EWHC 653 (QB) (Judgment) [Ex. 4]. It is unclear how Westrop determined that the Islamic schools were Cognia accredited. By the time he published this story on his blog, he had changed the title to "The Islamist Schools Industry in Texas." Miller also named Amy Mek and Representative Ellen Troxclair as sources of information. Ex. 1 at 52, 164.

**2. Defendants engage in post hoc investigations untethered to any statutory eligibility criteria, rule, policy, or regulation.**

In January 2026, almost all Islamic schools remained screened out of the program by the Cognia hold. Ex. 1, at 102. However, Bayaan Academy had slipped through the cracks because it was dual-accredited. Ex. 5. Two hours after receiving Westrop's article on January 20, again without investigation or notice or process, Mary Stout ordered Odyssey to suspend Bayaan's account. *Id*. The next day, Stout laid out Defendants' investigative procedure:

> The process will look like this for each school on the Cognia list:
> - Google search name of school and terms like CAIR (per OAG letter) and Muslim Brotherhood (per GGA EO from November) to determine whether there is any possible relationship
> - Look at school website to evaluate any business interest/relationships with an owner/parent company that is a foreign adversary or connected to the CCP in particular
> - Compare to the information that we've been provided about possible affiliations of specific schools/school leaders with connections to FTOs or foreign adversaries

Ex. 6. Defendants did not first attempt to determine whether the allegations themselves could, legally, constitute grounds for removal. Ex. 1, at 272. They looked solely at the schools' affiliations. Ex. 6.[4] However, no statute, policy, rule, or regulation allowed the Comptroller to suspend, disable, or exclude schools based on an affiliation. Ex. 1, at 71. Defendants had no definitions, written policies, or rules to determine of what kind of relationship constituted an "affiliation," "association," or "tie." Ex. 1, at 70–72.

**3. Post-TRO, Defendants characterize Plaintiffs' inclusion in TEFA as "temporary."**

Defendants issued application links on March 17 to comply with this Court's order. Ex. 15. In the following days, several Islamic schools appeared to be accepted to the program, including Plaintiffs and putative plaintiff Houston Quran Academy. In many instances, the approvals were

---

[4] Defendants agreed that, as a matter of law, association with CAIR could not serve as a basis to deny approval. Ex. 1, at 65.

instantaneous, suggesting that there was no review process once applications were completed.

A week later, on March 24, Hancock leaked to the media a letter intended for his then-counsel Attorney General Ken Paxton. Ex. 7. Hancock was "angry" that Paxton had not presented certain "evidence" at the TRO hearing. Ex. 1, at 194; Ex. 7. Hancock wrote "the court has temporarily allowed" Plaintiffs into the program, but was clear "[t]he district court did not, however, order any state funds to flow to the plaintiff schools." Ex. 7, at 1.

In the letter, Hancock accused Houston Quran Academy and its principal of having "terror ties." Ex. 7, at 1. He asked the Attorney General to "take immediate steps" to strip **all** the Islamic schools' corporate charters. Ex. 7, at 2 ("The question is not whether these schools should be able to participate in TEFA, it is why they were able to operate in Texas in the first place."). Hancock wanted to ensure TEFA funds did not flow to Plaintiffs: "I am hopeful that with this additional information, the court will not take the drastic step of ordering Texas to fund schools with ties to terrorism." Ex. 7, at 2.

At his deposition a few weeks later, Miller disclaimed Hancock's letter as having "lots of mistakes and misstatements" and "inaccuracies." Ex. 1, at 191.[5] Miller testified that as of March 24, the day Hancock sent that letter, Defendants had already ended their investigations and concluded that the allegations were unfounded. Ex. 1, at 192. Hancock "was responding to the allegations which we had determined were not accurate." Ex. 1, at 191–93. But discovery contradicts Miller's testimony.

Miller testified that, at some point, Defendants had hired "terrorism experts," Reuben Katz

---

[5] Curiously, Miller refused to concede Kelly Hancock was properly appointed to his role or was in charge of the Comptroller's Office. Ex. 1, at 192. Regardless, he agreed that Hancock had the authority to remove a school from the program. Ex. 1, at 195.

and Lara Burns, to surveil and investigate the schools. Ex. 1, at 30.[6] Burns and Katz wrote reports assessing each of the schools' affiliations and their impact on TEFA eligibility. Ex. 1, at 32–33.[7] Regarding this litigation, the reports conclude: "The federal TRO resolved a procedural due process question—it did not adjudicate, and had no bearing on the substantive question of whether [the schools' associations] should disqualify [them] from receiving public funds." Ex. 8, at 10 (Report Excellence Academy); Ex. 9, at 7 (Report Brighter Horizons Academy) ("The substantive national security and public policy questions about whether TEFA funds should flow to an organization with documented ties to the HLF Hamas financing network remains open[.]"); Ex. 10, at 12 (Report Bayaan Academy) ("The January 11, 2026 approval and same-day removal of Bayaan Academy creates a factual record for First Amendment litigation. . . . The legal question— whether procedural due process was followed—is distinct from the substantive question of whether Bayaan's documented network connections warrant exclusion on national security grounds.").

Defendants also produced a document titled "TEFA Program Next Steps," dated March 20, 2026. Pending tasks as of March 20 included: "Contact author of Middle East Forum article to see if they will provide underlying evidence showing ties between schools, vendors, and foreign terrorist organizations, transnational criminal organizations, foreign adversaries, gangs, or federal or state criminal activity," and "[m]ake a determination on suspension from the TEFA program. If suspension is warranted, initiate process for suspension and removal of participating providers or

---

[6] It is unclear when Defendants hired these "experts." Miller testified that investigations into the schools started before December 9, 2025 but had concluded by the time each school was sent its link or by March 24. Ex. 1, at 55. He also testified that the experts did work for Defendants before they were hired through contracts. Ex. 1, at 273.

[7] Despite repeat requests, all reports have not been produced.

vendors as needed under Tex. Ed. Code 29.3585 and Rule 16.045." Ex. 17, at 1–2.

At no point—not in a sworn declaration, not in an official statement, not in a rule or policy, not even in Defendants' own internal files—has anyone with authority stated that Plaintiffs are members of the program in good standing and will face no further adverse action. Defendants have produced no official statement, documentation, rule, or policy to support Miller's testimony that the investigations have concluded. Ex. 1, at 78. Miller testified that Defendants had not written a closing letter or otherwise formally noted the end of the investigations in their own files either. Ex. 1, at 78. Defendants have produced nothing supporting Miller's testimony that the investigations have concluded.

Hancock has not retracted any portion of his March 24 letter. Ex. 1, at 197. The Office of the Comptroller has not issued a public statement disclaiming Hancock's public letter as incorrect or inaccurate. Ex. 1, at 204. Defendants have made no affirmative statement retracting their accusations against Houston Quran Academy or the other Islamic schools. Ex. 1, at 204. Miller testified that Defendants had no intent to make any public statement announcing that the schools had been cleared of wrongdoing. Ex. 1, at 206.

### 4. Funds will not be completely disbursed to schools until February 2027.

Schools appear on the list, but the funds have not yet been fully disbursed. Parent accounts are only partially funded, and the money will not be fully disbursed to schools until February 2027. Ex. 11. Parents will not be able to use money to pay for their children's education if the school is removed from the program. Ex. 1, at 226. If a school is removed, it is responsible for returning *all* TEFA funds received—and children would have to transfer schools to use the money. *Id.*

As the public official in charge of this program, Hancock has been clear that he does not intend to allow TEFA funds to flow to the Islamic schools. Ex. 7, at 1. Acquiescence with a court

order does not mean acceptance; Hancock wrote in his March 24 letter that this Court's order did not require him to disburse funds to the schools. Ex. 7, at 1. His soon-to-be-appointed successor, Don Huffines, has publicly called the schools' exclusion "good policy" and is campaigning on a promise to ensure tax dollars do not flow to Islamic schools. Exs. 12, 13.

As the program continues, the Comptroller retains discretion to "immediately" suspend and remove schools if they are in violation of "other relevant law," but Defendants can offer no guidance on what "other relevant law" could mean, or even what standard of proof will be used to conclude whether laws were violated. Ex. 1, at 139–40, 143–44, 217. Defendants do not have a rule or policy to determine whether and how suspension will result from accusations. Ex. 1, at 134, 135, 142–45 (have not yet "gotten to [that] point," as they are "building a 747 in flight"). Schools and parents have no way of determining whether they are under investigation or have been accused of violating law. Currently, notice comes *after* suspension. Ex. 1, at 221.

### STANDARD OF REVIEW

Defendants mistake their burden. Plaintiffs do not have a burden to show this case is *not* moot; that "stringent" burden rests on Defendants alone. *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). A defendant cannot moot a case, and deprive this Court of jurisdiction, simply by stopping the challenged conduct after it is sued. *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

To the contrary, when a defendant asserts mootness based on its own alleged voluntary cessation, *that* defendant bears the "formidable burden" of making it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190. This is a "formidable burden" because "[w]ere the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off[.]" *FBI*

9

*v. Fikre*, 601 U.S. 234, 241 (2024). Nor are Defendants entitled to any presumption of good faith or a "lighter burden"; the Supreme Court has affirmed "[t]his standard holds for governmental defendants no less than for private ones." *Id.*

Plaintiffs do not concede that the resolution of jurisdiction is proper in this 12(b)(1) motion. "[R]esolution of the jurisdictional issue on a 12(b)(1) motion is improper where the jurisdictional attack is intertwined with the merits of the claim." *Pickett v. Texas Tech Univ. Health Sciences Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022) (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004)). Defendants mount a factual attack on Plaintiffs' claims, Doc. 50, at n.1, but their attack implicates the *merits* of Plaintiffs' claims. Whether discriminatory exclusion "cannot be reasonably expected to recur" is intertwined with whether Defendants discriminated—the core merits question raised. However, should this Court proceed to resolution, this Court "may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction." *Turner Indus. Group, LLC v. Int'l Union of Operating Eng'rs, Local 450*, 8 F.Supp.3d 875, 884 (S.D. Tex. 2014).

ARGUMENT

**I.    Plaintiffs' "temporary" inclusion in TEFA does not render this case moot.**

In any event, even were the Court to weigh evidence under the ordinary Rule 12(b)(1) standard, the undisputed record—court-ordered links, the un-retracted March 24 letter, and the post-TRO reports declaring Plaintiffs' eligibility an open question—defeats mootness.

Defendants' main argument is that this case is moot because they voluntarily ceased their unconstitutional actions and allowed Plaintiffs to appear (for now) as approved vendors in TEFA. Doc. 50 at 7 (citing *Fikre*, 601 U.S. at 241). Because Defendants claim mootness from their own voluntary cessation, they bear the "stringent burden" of showing that "subsequent events made it

10

absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189; *see Speech First, Inc. v. McCall*, 138 F.4th 219, 223–24 (5th Cir. 2025) (explaining that a dispute with a governmental entity is not moot in absent a "controlling statement of future intention," especially given the "suspicious timing" and the "continued . . . defense of the challenged policies"). Defendants cannot make that showing. Nor do they seriously try.

### A. Defendants did not voluntarily allow Plaintiffs to apply to TEFA—they were ordered to by this Court.

Defendants did not *voluntarily* stop withholding application links from Plaintiffs—they were ordered to extend the links by this Court. Hancock was "requir[ed] to provide the Plaintiff schools with the means necessary to submit TEFA applications, including any required registration access." Ex. 7, at 1. Stout ordered Odyssey to release the links because "Judge Bennett directed us to send application links to Plaintiff schools within 24 hours." Ex. 15, at 4. This is not voluntary cessation. *Speech First, Inc. v. McCall*, 138 F.4th 219, 223–24 (5th Cir. 2025).

In *Speech First*, plaintiffs brought a challenge to the defendant university's "harassment policy" that prohibited "unwelcome verbal" or "written conduct." *Id.* at 221. Though it was clear that the university was "going to lose" on the merits, the district court refused to enter a preliminary injunction or order and instead verbally "pressured Texas State officials to amend the policy." *Id.* School officials continued to defend their policy, but ultimately caved to the court's pressure and amended it. *Id.* Applying a three-factor test, the panel held that the case was not moot because (1) the university provided no sworn statement or any other evidence to support its representation that it would not revert to its old policy; (2) the amendment came only in response to verbal "judicial pressure"; and (3) the university continued to defend its original policy. *Id.* at 223–24.

The same conduct exists here and on even stronger grounds because the cessation here was

court-ordered, no policy amendments have occurred, and none are intended. Defendants have provided no evidence to support their representations that they will not resume the challenged conduct—to the contrary, evidence shows that conduct is still ongoing. It is undisputed that Defendants issued links only after they were ordered to by this Court. And Defendants continue to defend their actions, as evinced by Miller's testimony and Hancock's letter. Defendants did not voluntarily cease their discriminatory conduct. Extending the links to the Islamic schools was not voluntary; it was compelled. This alone is dispositive to show Plaintiffs' claims are not moot.

## B. Defendants cannot show that future discrimination and removal are not likely to recur.

In addition to showing they voluntarily ceased the challenged conduct, Defendants had to also show there was no reasonable probability that future discrimination would occur. *Fikre*, 601 U.S. at 241. The Supreme Court recently considered a government defendant's burden to show voluntary cessation in *Fikre*. There, Fikre sued after the federal government placed him on the No Fly List without notice of his addition or a reason for his listing, and with no appropriate way to challenge his inclusion. 601 U.S. at 238–39. While his suit was pending, the government notified Fikre it had removed him from the list—providing no explanation for the reversal—and argued that its decision rendered the case moot. *Id.* at 239. In court, the government also offered a sworn declaration from the official in charge of the No Fly List, which promised that Fikre "will not be placed on the No Fly List in the future based on the currently available information." *Id.* at 240.

A unanimous Supreme Court held that the government's voluntary de-listing of Fikre and its sworn declaration were not sufficient to carry its burden to show that Fikre's case was moot. *Id.* at 242. Fikre had alleged that the government had placed him on the list because of his religious beliefs. *Id.* The government's declaration that it would not re-list him in the future for Fikre's past

conduct did not "speak[] to whether the government might relist him if he does the same or similar things in the future[.]" *Id.*

Here, Defendants offer far less than the government offered in *Fikre*: no sworn declaration, no official statement or policy supports Defendants' assertions their conduct will not recur. Instead, Defendants' post-TRO public statements and "expert" reports show a continuing intent to violate Plaintiffs' First Amendment rights and prevent Plaintiffs from being able to access publicly available benefits. Defendants' post-TRO "expert" reports state Plaintiffs' eligibility for TEFA remain undecided. Defendants' un-retracted public "accusations" against Plaintiffs continue to implicate their right to freedom of religious expression and their freedom of association. Defendants have not met their "formidable burden" to show their conduct is not likely to recur.

Defendants argue they are entitled to a lighter burden and a presumption of good faith. First, the Supreme Court has not recognized a "presumption of good faith" and instead emphasized in *Fikre* that the government's burden is to show that the challenged actions are not likely to recur are as onerous as any private party's. 601 U.S. at 241. Second, even under the Fifth Circuit's framework, the good faith presumption applies to "formally announced changes to official government policy." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009). There is no formally announced policy change here at all, so the presumption does not attach even under Defendants' own authority.

Moreover, evidence directly rebuts any presumption of good faith. After being ordered to issue application links, the Comptroller released a public letter accusing the schools of having terrorist ties and asking the Attorney General to strip the schools' corporate charters. The Comptroller's own representative testified the letter was full of "mistakes and misstatements" and came *after* Defendants learned the accusations were unfounded. The letter continues to injure

13

Plaintiffs' reputation and has not been retracted.

Defendants find no support in their cited case law, all of which pre-dates *Fikre*. Each case involved a formal, binding change to the challenged policy itself:

- *U.S. Navy SEALS 1-26 v. Biden*, 72 F.4th 666, 669 (5th Cir. 2023): a law rescinding the Navy's challenged mandatory vaccination policy went into effect, the Navy rescinded the policy *and* formally announced it would not enforce the policy;
- *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022): plaintiffs' APA challenge was moot because the government formally revoked the complained-of rule and enacted a new rule granting the "precise relief" sought by plaintiffs;
- *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020): Legislature passed a law exempting plaintiffs from the restriction they challenged—the very relief they sought;
- *Sossamon*, 560 F.3d at 325: the agency's director in charge of enforcing the challenged policy offered a sworn statement that "formally announced changes" and "ended" implementation of the challenged policy statewide; and
- *DeMoss v. Crain*, 636 F.3d 145, 150–51 (5th Cir. 2011): same.

No binding statement, sworn declaration, official policy statement, or rule protects Plaintiffs here. Or even an *informal, internal* statement or policy—as one admittedly does not exist: instead, Defendants are "building a 747 in flight" and have not even determined what standards they will use to determine what laws may have been violated by a school, if (when) another "tip" comes in. Instead, the evidence shows that Defendants issued application links only after being ordered to by this Court, and then immediately branded the approvals as "temporary." Defendants have failed to meet their burden to show this case is moot.

**C. Plaintiffs continue to suffer ongoing injuries that can only be remedied by prospective injunctive relief.**

Defendants assert this case is moot because "no remaining restriction, collateral disability, or adverse consequence" persists. That is not the test. Under *Fikre* and *Laidlaw*, the question is not whether Plaintiffs can identify a present restriction, but whether Defendants have made it "absolutely clear" that their challenged conduct cannot reasonably be expected to recur. *Fikre*, 601 U.S. at 241. Again, Defendants misunderstand their burden. Plaintiffs need not show any

remaining injury to defeat Defendants' motion; Defendants must disprove the prospect of recurrence, and they have not. But even if ongoing injury were required, Plaintiffs would prevail: they continue to suffer concrete, ongoing injuries as a result of Defendants' conduct.

Plaintiffs have alleged that unlike other similarly situated schools, they were investigated, excluded, and removed from the Program on the basis of their Islamic faith. Doc. 21 at ¶ 185. The record evidence shows those allegations are true: Defendants identified and excluded Islamic schools before this program even began. They surveilled and investigated the schools without considering what accusations were credible or whether the accusations alone could, as a matter of law, even warrant removal. Ex. 1, at 272. Plaintiffs need permanent injunctive relief to prevent similar violations in the future.

Plaintiffs ask this Court to remedy the reputational harm caused by their prolonged and unexplained exclusion. Doc. 21, at ¶ 102. Since the commencement of this suit, that reputational harm has only grown more tangible. Hancock's March 24 letter linking the schools to terrorism has created an atmosphere of fear and danger for students and teachers attending these schools. Schools have had to expend resources to hire extra security and introduce protective measures at their campuses. Parents have expressed concern for the well-being and safety of their children. And Hancock's call to strip the schools of their charter has caused a loss of reputation and goodwill. In this litigation, Defendants disclaim that letter as full of "mistakes and misstatements" but voice no intent to retract the letter or otherwise mitigate the harm they have caused to Plaintiffs' reputations. These injuries remain ongoing and Defendants voice no intent to remedy them.

Plaintiffs also alleged that the systemic and prolonged exclusion of Islamic schools from the program distorted the lottery pool used to determine award recipients for this term. Doc. 21 at ¶ 114. That distortion is now concrete—the lottery has run and awards have been made. Under the

statute's scheme, that distortion will propagate in future terms because this year's recipients are given priority in future terms. Doc. 21, at ¶ 83. Denying Plaintiffs an equal opportunity to compete for public funds this year will continue to severely prejudice their ability to do so for years to come. Defendants do not now refute that injury or rebut those allegations.

These ongoing injuries are not merely independent grounds to deny the motion: they are affirmative evidence that Defendants' conduct is not only possible, but likely to recur, which is fatal to Defendants' burden under *Fikre*.

**D. Plaintiffs' class action claims relate back to the filing of the complaint.**

Because Plaintiffs continue to hold justiciable claims, the putative class claims are also not moot. Typically, a putative class action becomes moot when the personal claims of all plaintiffs are satisfied and no class has been certified. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1045 (5th Cir. 1981). To preserve the viability of class actions where, as here, the plaintiffs' claims are transitory and defendants hold the power to moot plaintiffs' claims, federal courts recognize an exception that allows allegations to relate back to the filing of the complaint. *Murray v. Fidelity Nat. Financial, Inc.*, 594 F.3d 419, 422 (5th Cir. 2010). This exception "ensures plaintiffs have a reasonable opportunity to move for class certification without being picked off by defendants employing [an offer of complete relief] as a sword." *Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196, 203 (S.D. Tex. 2011).

Here, as alleged, Plaintiffs' claims are inherently transitory given the short cycle of the program. The timeline for this initial year is even more compressed: eligibility and awards were determined within a period of a few months. School applications opened in December 2025; parent applications opened in February and closed a month later in March 2026. Award recipients were announced in May, and as of the date of this motion, funds have been partially disbursed. Ex. 11.

16

The cycle repeats yearly. And of course, as shown, Defendants have the ability to allow Plaintiffs into the program but continue to retain total discretion in conditioning future participation.

Nor do Plaintiffs have to "rush to the courthouse" and file a premature motion for class certification to preserve their complaint. *Mabary*, 276 F.R.D. at 203. The Fifth Circuit does not require a class certification motion to be pending as a prerequisite to the relation back doctrine. *Id.* at 206. So long as Plaintiffs timely file and diligently pursue their motion for class certification, that motion relates back to the date of Plaintiffs' complaint. *Id.*

Again, the authorities Defendants cite do not support their argument or are easily distinguished. For example, plaintiffs in *Sanchez-Gomez* did not bring a class action under Rule 23 and their case "involved [*no*] formal mechanism for aggregating claims," which is why the Supreme Court held their cases challenging defendants' pretrial detention physical-restraint policies became moot when the individual plaintiffs' criminal cases ended. 584 U.S. at 389. *Genesis Healthcare v. Symczyk* involved a collective Fair Labor Standards Act action and held that the analysis above did not apply because "Rule 23 actions are fundamentally different from collective actions under the FLSA," which "do not produce a class with an independent legal status, or join additional parties to the action." 569 U.S. 66, 74–75 (2013). Neither case is applicable. Here, Plaintiffs have pleaded a Rule 23 class action and are in the process of seeking class discovery from Defendants.

### E. Plaintiffs do not ask this Court to evaluate TEFA generally.

Plaintiffs do not ask this Court to "evaluate TEFA generally"—they ask this Court to adjudicate whether Defendants have unconstitutionally excluded them from the benefits of a public program based on their religious ideology. They bring a class complaint under Rule 23 on behalf of similarly situated Islamic schools and parents. Defendants' cited authority, *Trump v. CASA,*

*Inc.*, confirms that Rule 23 class actions are the proper vehicle to seek the relief Plaintiffs seek here. 606 U.S. 831, 849 (2025).

**F. Given the short, cyclical nature of the Program, Plaintiffs' claims are inherently transitory.**

Plaintiffs need not invoke the "capable of repetition, yet evading review" exception to defeat Defendants' motion. That exception exists for cases mooted by the natural expiration of the challenged conduct—an election that passes, a contract fully performed. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016). This case involves no expiration. If anything mooted Plaintiffs' claims, it was Defendants' own purported change in conduct, and that scenario is governed by the voluntary-cessation doctrine of *Fikre* and *Laidlaw*—under which Defendants, not Plaintiffs, bear the formidable burden they have failed to carry.

But even if this were an evading-review case, this case is exactly the sort of controversy to which the "capable of repetition, yet evading review" exception to mootness applies. *Kingdomware*, 579 U.S. at 170. In *Kingdomware*, the Supreme Court applied that exception to contracts that were fully performed in less than two years—the Court held "a period of two years is too short to complete judicial review." *Id.* There, the Court retained jurisdiction "because the same legal issue in this case is likely to recur in future controversies between the same parties in circumstances where the period of contract performance is too short to allow full judicial review before performance is complete." *Id.*

Both prongs of *Kingdomware*'s test are satisfied here. The Program runs in a one-year cycle, corresponding to the academic year and with parallel tracks for parents and schools. Parents are awarded funds, which are disbursed periodically over the course of the school year. For parents, this initial year's program will conclude in February 2027 with the disbursement of the final award.

For schools, this term is indeterminate because a school can be removed at any time during the cycle, including after the final disbursement, and be required to pay back program funds. The trial for this case has been scheduled for July 2027, but the final disbursement for this first year's awardees will be made in February 2027. The merits of Plaintiffs' claims—whether Defendants violated their constitutional rights in the administration of this program—will not be determined by the time the first year has concluded.

Defendants conflate two different theories of subject matter jurisdiction: standing and mootness. Doc. 50 at 13. They argue that Plaintiffs no longer have standing because they have already received relief. This argument is entirely foreclosed by *Laidlaw*, in which the Supreme Court held that standing must exist as of the time of filing and mootness arises after. 528 U.S. at 189–91. Here, it is undisputed Plaintiffs had standing at the filing of this suit—Defendants themselves conceded at the TRO that not a single Islamic school had been allowed into the program. Standing has been established and to show mootness, Defendants bear the "formidable burden" of proving the challenged conduct is not likely to recur. *Fikre*, 601 U.S. at 241. Again, Defendants' authorities do not provide support for their argument. In *Johnson v. Moore*, the plaintiff lacked standing from the beginning of the litigation. 958 F.2d 92, 95 (5th Cir. 1992). Likewise, *Whitmore*, *Clapper*, and *Lujan* are all initial standing cases; none address a defendant's burden to show mootness after a suit is filed.

Nor is the harm Plaintiffs allege speculative. Doc. 50, at 9–10. Defendants' reliance on Texas Education Code §§ 29.364, 29.3585 prove too much. Those provisions govern suspension and removal of recipients and providers and require a finding, immediate notice stating the grounds, an opportunity to respond, and a defined disposition. Tex. Educ. Code §§ 29.364(a)-(d), 29.3585(a)–(e). But Bayaan had completed its application and appeared on the platform when

Stout directed Odyssey to "temporarily remov[e]" it based on the outside draft report. Ex. 5. The record does not show that Defendants made the statutory finding or supplied the notice and response process they now say makes recurrence impossible.

The statute existed when Bayaan was disabled. Its mere existence did not prevent the challenged action then, and Defendants identify no new rule or binding directive that will ensure compliance now. Nor is a later suspension a different controversy. The Complaint expressly challenges removal of an approved school without statutory criteria or process and seeks prospective relief requiring constitutional administration of the Program. Doc. 21 ¶¶ 114, 167–77, 211(C)(2)–(3). *Fikre* asks whether Defendants can repeat the same or similar conduct, not whether they can assign it a different procedural label. 601 U.S. at 242–43.

## II.     Defendants are not immune from Plaintiffs' claims.

Plaintiffs bring claims against Defendants Kelly Hancock and Mary Stout, in their official capacities. They allege that Defendants have administered a public program in a way that discriminates against them on the basis of their faith, and ask this Court to enjoin Defendants from doing so in the future. *See Ex parte Young*, 209 U.S. 123, 159 (1908) (allowing federal courts to enter prospective injunctive relief against state public officials for violations of federal law).[8] At this stage, this Court "need only conduct a straightforward inquiry into whether the complaint *alleges* an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (emphasis added). That inquiry "does not include an analysis of the merits of the claim." *Id.* at 646.

---

[8] Plaintiffs intend to move for dismissal of their claims against Defendant The Office of the Texas Comptroller of Public Accounts but expressly preserve all claims against remaining Defendants Kelly Hancock and Mary Stout in their official capacities.

Plaintiffs alleged that Defendants excluded them from TEFA based on their religious faith and by denying them process and equal protection under the law. Those allegations have borne out to be true. Evidence shows that Plaintiffs' inclusion into TEFA is not guaranteed; the same practices they challenged remain in place and have not been retracted or remedied. And most importantly, Plaintiffs continue to suffer harm and injuries as a result of Defendants' conduct. Plaintiffs need prospective relief to enjoin future discrimination and denial of process.

Defendants' remaining arguments—that the record proves no ongoing violation remains to be enjoined—is a merits argument dressed as immunity. This goes beyond the "straightforward inquiry" this Court must engage in at this point to determine whether the complaint alleges an ongoing violation of federal law. *Id.* at 636–37. Again, Defendants' cases offer no help. In *Green v. Mansour*, the plaintiffs' claims were rendered moot by the passage of a federal law. 474 U.S. 64, 67–68 (1985). No prospective relief could be granted, the petitioners conceded the law rendered their case moot and claimed no ongoing violation of their rights. *Id.* at 68–69. In *Nelson*, the Fifth Circuit held that a claim for reinstatement was an acceptable form of prospective relief that survived *Ex parte Young*. 535 F.3d 318, 322 (5th Cir. 2008). So, too, here: the type of prospective relief Plaintiffs seek is precisely the type *Ex parte Young* allows.

CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion.

Respectfully submitted,

**ARAMBULA TERRAZAS PLLC**

By: /s/ *Eric A. Hudson*
Eric A. Hudson
State Bar No. 24059977
Fed. Id. No. 1000759
ehudson@atlawpllc.com
Cole P. Wilson
State Bar No. 24122856
Fed. Id. No. 3864133
cwilson@atlawpllc.com
1001 S. Capital of Texas Highway, Bldg. L,
Suite 250 Austin, Texas 78746
512.904.0200

**Attorney-in Charge**


**EDWARDS SUTARWALLA SAMANI LLP**
By: /s/ *Murtaza Sutarwalla*
Murtaza F. Sutarwalla
State Bar No. 24056398
Fed. Id. No. 2589991
Mansoor Broachwala
Illinois State Bar No. 6326633
Fed. Id. No. 3943228602
Sawyer St., Suite 490
Houston, Texas 77007

**WRIGHT, CLOSE, BARGER & GUZMAN LLP**

**By:** /s/ *Maha Ghyas*
Maha Ghyas
State Bar No. 24138115
Fed. Id. No. 3863190
mghyas@wcbglaw.com
Bradley W. Snead
State Bar No. 24049825
Fed. Id. No. 1127744
bsnead@wcbglaw.com
Michael Adams-Hurta
adams-hurta@wcbglaw.com
State Bar No. 24097860
Fed. Id. No. 3290975
300 Louisiana St., Suite 3000
Houston, TX 77002


**GIBBS & BRUNS LLP**
/s/ *Ayesha Najam*
Ayesha Najam
State Bar No. 24046507
Federal ID: 605948
anajam@gibbsbruns.com
Michael Davis
Federal ID: 3588027
mdavis@gibbsbruns.com
Gibbs & Bruns LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002


<u>**CERTIFICATE OF SERVICE**</u>


I hereby certify that on July 17, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas.

*/s/ Maha Ghyas*

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BAYAAN ACADEMY, INC., *ET AL.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NOS. 4:26-CV-01960 |
| v. | § | |
| | § | |
| KELLY HANCOCK, *ET AL.*, | § | |
| | § | |
| *Defendants*. | § | |

## **INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Deposition of Murl Miller, May 19 2026 |
| 2 | Transcript March 17 Hearing |
| 3 | Cognia Letter |
| 4 | Westrup Judgment |
| 5 | Stout email directing removal of Bayaan |
| 6 | Stout email detailing investigation process |
| 7 | Hancock March 24 Letter |
| 8 | Report Excellence Academy |
| 9 | Report Brighter Horizons Academy |
| 10 | Report Bayaan Academy |
| 11 | Funding Timelines and Installments - Texas Education Freedom Accounts |
| 12 | Don Huffines for Texas Comptroller Campaign Website |
| 13 | Houston Chronicle: "Don Huffines says he wouldn't change voucher program." |
| 14 | Westrup Draft |
| 15 | Stout email Re: School links |
| 16 | Westrup Email to Stout |
| 17 | Defendants' TEFA Next Steps |